

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2024 DEC -6 ₱ 2: 44

CAROL L. MICH
CLERK

**SEALED**

**FELONY**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SUPERSEDING INDICTMENT FOR CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD, MAIL FRAUD, OBSTRUCTION OF JUSTICE, WITNESS TAMPERING, MAKING FALSE STATEMENTS, WITNESS TAMPERING THROUGH MURDER, RETALIATION AGAINST A WITNESS THROUGH MURDER, AND VIOLATION OF <u>THE FEDERAL GUN CONTROL ACT</u>**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 24-105** |
| **v.** | * | **SECTION: "D"(1)** |
| **RYAN J. HARRIS** | * | **VIOLATIONS:** |
|     a/k/a "Red" | | 18 U.S.C. § 1349 |
| **SEAN D. ALFORTISH** | * | 18 U.S.C. § 1341 |
| **VANESSA MOTTA** | | 18 U.S.C. § 1503 |
| **MOTTA LAW, LLC** | * | 18 U.S.C. § 1512 |
| **JASON F. GILES** | | 18 U.S.C. § 1513 |
| **THE KING FIRM, LLC** | * | 18 U.S.C. § 1001 |
| **LEON M. PARKER** | | 18 U.S.C. § 924 |
|     a/k/a "Chunky" | * | 18 U.S.C. § 2 |
| **DIAMINIKE F. STALBERT** | | |
| **CARL G. MORGAN** | * | |
| **TIMARA N. LAWRENCE** | | |
| | * | |

            *      *      *

The Grand Jury charges that:

_____ Fee _____
_____ Process _____
__X__ Dktd _____
_____ CtRmDep _____
_____ Doc. No. _____

**COUNT 1**

(Conspiracy to Commit Mail and Wire Fraud)

A.    **AT ALL TIMES MATERIAL HEREIN:**

1.    Defendant **RYAN J. HARRIS, a/k/a "Red," ("HARRIS")** was a resident of the New Orleans area and owned an automobile repair shop.

2.    Defendant **SEAN D. ALFORTISH ("ALFORTISH")** was a resident of the New Orleans area and a disbarred attorney.

3.    Defendant **VANESSA MOTTA ("MOTTA")** was the principal attorney at **MOTTA LAW, LLC ("MOTTA LAW")**. **MOTTA LAW** had offices in the New Orleans area. **MOTTA** resided in the New Orleans area and was in a romantic relationship with **ALFORTISH**.

4.    Defendant **JASON F. GILES ("GILES")** was an attorney and partner at **THE KING FIRM, LLC ("THE KING FIRM")**. **THE KING FIRM** had an office in New Orleans. **GILES** resided in the New Orleans area.

5.    Defendant **LEON M. PARKER, a/k/a "Chunky," ("PARKER")**, was an associate of **HARRIS's** family and resided in the New Orleans area.

6.    Defendant **DIAMINIKE F. STALBERT ("STALBERT")** resided in the New Orleans area.

7.    Defendant **CARL G. MORGAN ("MORGAN")** was a member of **HARRIS's** family and resided in the New Orleans area.

8.    Defendant **TIMARA N. LAWRENCE ("LAWRENCE")** was in a romantic relationship with **HARRIS** and resided in the New Orleans area.

2

9.      Danny Patrick Keating ("Keating"), Attorney C, Attorney D, Attorney E, and Attorney F were attorneys who worked in the New Orleans area.

10.     Cornelius Garrison, a/k/a "Poonie," a/k/a "Slim," ("Garrison"), Damian Labeaud ("Labeaud"), Roderick Hickman ("Hickman"), Slammer G, Slammer H, and Slammer I were residents of the New Orleans area. In or around October 2019, Garrison began covertly cooperating with the federal government concerning staged automobile collisions.

**B.      CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD:**

Beginning at a time unknown, but as early as approximately December 12, 2011, and continuing to the date of this Superseding Indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **RYAN J. HARRIS, a/k/a "Red," SEAN D. ALFORTISH**, **VANESSA MOTTA**, **MOTTA LAW, LLC**, **JASON F. GILES**, **THE KING FIRM, LLC**, **LEON M. PARKER, a/k/a "Chunky," DIAMINIKE F. STALBERT**, **CARL G. MORGAN**, **TIMARA N. LAWRENCE**, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree:

a.      to devise a scheme and artifice to defraud and to obtain money and property from insurance companies and commercial vehicle companies by means of materially false and fraudulent pretenses, representations, and promises, and cause mail matter to be delivered by the United States Postal Service and by any private or commercial interstate carrier for the purpose of executing or attempting to execute the scheme to defraud, in violation of Title 18, United States Code, Section 1341; and

3

b.      to devise a scheme and artifice to defraud and to obtain money and property from

insurance companies and commercial vehicle companies by means of materially

false and fraudulent pretenses, representations, and promises, and cause signals

and sounds to be transmitted by means of wire communication in interstate

commerce for the purpose of executing or attempting to execute the scheme to

defraud, in violation of Title 18, United States Code, Section 1343.

**C.      MEMBERS OF THE CONSPIRACY:**

1.      The conspiracy included individuals who rode in automobiles as passengers
knowing they would be part of staged collisions. Those individuals later lied as part of fraudulent
insurance claims and fraudulent lawsuits based on the staged collisions.

2.      Additionally, the conspiracy included individuals who drove automobiles and
intentionally collided with 18-wheeler tractor-trailers and other commercial vehicles in order to
stage collisions, also known as "slammers."

3.      Additionally, the conspiracy included individuals who drove automobiles to
search for 18-wheeler tractor-trailers and other commercial vehicles to be part of staged
collisions, also known as "spotters." At various points, the slammers also served as spotters.

4.      Additionally, the conspiracy included individuals who fraudulently used the
names and personal identification information of other people to file false insurance claims based
on staged collisions.

5.      Additionally, the conspiracy included law firms, attorneys, and others associated
with the law firms and attorneys who pursued fraudulent lawsuits knowing they were based on
staged collisions.

4

6.    **THE KING FIRM** pursued fraudulent lawsuits knowing they were based on staged collisions.

7.    **GILES** knowingly pursued fraudulent lawsuits based on staged collisions. **GILES** paid slammers for staged collisions.

8.    **MOTTA LAW** pursued fraudulent lawsuits knowing they were based on staged collisions.

9.    **MOTTA** knowingly pursued fraudulent lawsuits based on staged collisions. **MOTTA** paid slammers for staged collisions.

10.   **ALFORTISH**, although he was a disbarred attorney, worked with **MOTTA** at **MOTTA LAW**. **ALFORTISH** paid slammers for staged collisions.

11.   **HARRIS** was a slammer who drove automobiles and intentionally collided with 18-wheeler tractor-trailers and other commercial vehicles in order to stage collisions. **HARRIS** staged collisions for **ALFORTISH**, **MOTTA**, and **MOTTA LAW**.

12.   **PARKER** was involved in at least three staged collisions. **GILES** and **THE KING FIRM** represented **PARKER** in a fraudulent lawsuit that resulted from one of **PARKER's** staged collisions. Additionally, **MOTTA** and **MOTTA LAW** represented **PARKER** in filing a fraudulent insurance claim that resulted from one of **PARKER's** staged collisions.

13.   **STALBERT** was involved in at least two staged collisions. **STALBERT** also recruited others to participate in staged collisions.

14.   **MORGAN** was involved in at least one staged collision.

15.    **LAWRENCE**, as part of the staged collision scheme, provided stolen personal identifying information to **HARRIS**.

16.    Keating knowingly pursued fraudulent lawsuits based on staged collisions. Keating paid Labeaud and Hickman for staged collisions.

17.    Attorney C knowingly pursued fraudulent lawsuits based on staged collisions. Attorney C litigated fraudulent lawsuits with **GILES**, **THE KING FIRM**, **MOTTA**, and **MOTTA LAW**.

18.    Attorney D knowingly pursued fraudulent lawsuits based on staged collisions. Attorney D litigated fraudulent lawsuits with **GILES**, **THE KING FIRM**, **MOTTA**, and **MOTTA LAW**.

19.    Attorney E knowingly pursued fraudulent lawsuits based on staged collisions.

20.    Attorney F knowingly pursued fraudulent lawsuits based on staged collisions.

21.    Garrison was a slammer who staged collisions for **GILES**, **THE KING FIRM**, **ALFORTISH**, **MOTTA**, **MOTTA LAW**, Attorney D, Attorney E, Attorney F, and others. In or around October 2019, Garrison began covertly cooperating with the federal government concerning staged automobile collisions.

22.    Labeaud was a slammer who staged collisions for **GILES**, **THE KING FIRM**, and Keating.

23.    Hickman was a slammer who worked with Labeaud to stage collisions for **GILES**, **THE KING FIRM**, and Keating.

24.    Slammer G was a slammer who worked with Garrison to stage collisions.

25.    Slammer H was a slammer who worked with Garrison to stage collisions.

26.     Slammer I was a slammer who worked with Garrison to stage collisions.

**D.     MANNER AND MEANS:**

1.     It was part of the conspiracy that the defendants intentionally staged automobile collisions, including with 18-wheeler tractor-trailers, for the purpose of filing fraudulent insurance claims or lawsuits.

2.     It was further part of the conspiracy that the defendants recruited other individuals to participate in staged collisions.

3.     It was further part of the conspiracy that the defendants utilized the mail and interstate wirings to file and pursue fraudulent insurance claims and lawsuits based on staged collisions.

4.     It was further part of the conspiracy that the defendants exploited or attempted to exploit the state and federal judicial systems by pursuing fraudulent lawsuits based on staged automobile collisions and causing witnesses to provide false testimony.

5.     It was further part of the conspiracy that the defendants committed the following acts in the Eastern District of Louisiana and elsewhere:

*Labeaud and Hickman*

6.     Beginning in approximately 2011, Labeaud and Hickman began staging automobile collisions for **GILES**. When staging collisions for **GILES**, Labeaud and Hickman worked as both slammers and spotters. When they worked as slammers, Labeaud and Hickman intentionally caused collisions with tractor-trailers before exiting their vehicles and fleeing the scene. When they worked as spotters, Labeaud and Hickman followed the slammers in separate vehicles before picking up the slammers after they caused the collisions. **GILES** knew the

7

collisions involving Labeaud and Hickman were staged.

7.     In or around 2015, **GILES** left his prior law firm, and he and other attorneys founded **THE KING FIRM**. Labeaud and Hickman staged collisions for **GILES** and **THE KING FIRM**.

8.     In addition to staging collisions, Labeaud and Hickman worked as illegal "runners" for **GILES** and **THE KING FIRM**. As runners, Labeaud and Hickman referred individuals involved in automobile collisions to **GILES** and **THE KING FIRM** for money.

9.     **GILES** and **THE KING FIRM** knew that Labeaud and Hickman were staging collisions. For example, Labeaud and **GILES** sometimes communicated through coded language, including fishing terms, to refer to staged collisions.

10.     Labeaud and Hickman frequently visited **THE KING FIRM** and met with attorneys there. Additionally, Labeaud and Hickman became well-acquainted with **GILES** and others at **THE KING FIRM**. For example, Labeaud purchased jewelry for **GILES** and another attorney at **THE KING FIRM**, and, on at least one occasion, **GILES** shared intimate personal information with Labeaud.

11.     **GILES** and **THE KING FIRM** paid Labeaud and Hickman via cash and checks for bringing them staged collisions. **GILES** and **THE KING FIRM** paid Labeaud and Hickman approximately $1,000 per passenger for collisions that involved tractor-trailers. To conceal their payments to Labeaud and Hickman, **GILES** and **THE KING FIRM** often made payments as "loans" or "advances" on future settlements.

12.     On a date unknown but not later than 2017, Labeaud met with Keating and told him about Labeaud and Hickman's staged collision scheme with **GILES** and **THE KING**

**FIRM**. Keating agreed to pay Labeaud the same amount Labeaud received from **GILES** and **THE KING FIRM**: approximately $1,000 per passenger for collisions that involved tractor-trailers. Labeaud and Hickman then began staging collisions for Keating.

13.    Similar to the arrangement with **GILES** and **THE KING FIRM**, Labeaud sometimes discussed staged collisions with Keating, including through coded language that involved fishing terms. Keating paid Labeaud and Hickman via cash and checks for bringing him collisions. Keating also advanced money to Labeaud and Hickman, and he instructed Labeaud and Hickman that they owed Keating a certain number of collisions based on the amount of money Keating advanced.

14.    From approximately 2011 through approximately 2017, Labeaud, Hickman, and others staged numerous collisions for **GILES**, **THE KING FIRM**, Keating, and others. Those collisions included:

> a.    On or about December 12, 2011, Labeaud and others staged a collision involving a tractor-trailer and a Mercedes-Benz C280. **GILES**, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.
>
> b.    On or about September 1, 2015, Labeaud staged a collision involving a tractor-trailer and an Infiniti FX35. **GILES**, **THE KING FIRM**, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.
>
> c.    On or about October 13, 2015, Labeaud, Hickman, and others staged a collision involving a tractor-trailer and a Chevrolet Tahoe. **GILES**, **THE KING**

9

**FIRM**, Attorney D, Labeaud, Hickman, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

d.      On or about December 4, 2015, Labeaud and another individual staged a collision involving a tractor-trailer and a Chevrolet Camaro. **GILES**, **THE KING FIRM**, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

e.      On or about June 8, 2016, Labeaud and others staged a collision involving a tractor-trailer and a Mazda MZ3. **GILES**, **THE KING FIRM**, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

f.      On or about March 27, 2017, Labeaud, Hickman, and others staged a collision involving a tractor-trailer and a Mercury Mountaineer. **GILES**, **THE KING FIRM**, Keating, Labeaud, Hickman, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

g.      On or about May 11, 2017, Labeaud and others staged a collision involving a tractor-trailer and a Ford Expedition. **GILES**, **THE KING FIRM**, Keating, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

h.      On or about May 24, 2017, **STALBERT**, Labeaud, and others staged a collision involving a tractor-trailer and a Toyota Corolla. **STALBERT**, Attorney E, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

10

i. On or about June 6, 2017, Labeaud and others staged a collision involving a tractor-trailer and a Chevrolet Avalanche. Keating, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

j. On or about June 12, 2017, Labeaud and others staged a collision involving a tractor-trailer and a Chevrolet Trailblazer. Keating, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

k. On or about June 28, 2017, Labeaud, Hickman, and others staged a collision involving a tractor-trailer and a Chevrolet Impala. **GILES**, **THE KING FIRM**, Keating, Attorney C, Labeaud, Hickman, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

15. In or around 2017, insurance defense attorneys representing companies targeted by the staged collision scheme began raising the defense of fraud in lawsuits involving **GILES** and **THE KING FIRM**. Among other things, the defense attorneys pointed to evidence that Labeaud had communicated with passengers in the collisions. After the insurance defense attorneys began raising the defense of fraud, **GILES** and **THE KING FIRM** committed various acts of obstruction of justice and witness tampering. **GILES** and **THE KING FIRM** did this as part of a cover-up scheme to obstruct investigations into their conduct.

16. On or about November 16, 2017, **GILES** and **THE KING FIRM** manipulated Labeaud into stating that the collisions he and Hickman staged were legitimate. **GILES** and **THE KING FIRM** secretly recorded Labeaud's manipulated statement without Labeaud's knowledge.

11

17.    In or around 2019, **GILES**, **THE KING FIRM**, and Keating became aware of the federal criminal investigation into the staged collision scheme. Around this same time, **GILES**, **THE KING FIRM**, and Keating began sharing phone records in order to identify clients whose phone numbers appeared on Labeaud's phone records.

18.    In or around February 2019, **GILES** provided a document called "Verification of Facts" to Keating. During a meeting around this time, **GILES** and Keating discussed the federal criminal investigation into the staged collisions, and **GILES** suggested that they use the Verification of Facts as a cover to protect themselves from prosecution. During this meeting, **GILES** also suggested having Labeaud leave town for a period of time while there was increased attention on the staged collisions.

19.    After **GILES** met with Keating, **GILES** and **THE KING FIRM** convinced passengers in the staged collisions to sign Verification of Facts documents. **GILES** and **THE KING FIRM** knew that the Verification of Facts documents were false because the documents failed to disclose that the collisions were staged.

20.    On or about October 19, 2020, **GILES** and **THE KING FIRM** manipulated Hickman into stating that the collisions he and Labeaud staged were legitimate. **GILES** and **THE KING FIRM** secretly recorded Hickman's manipulated statement without Hickman's knowledge. At the time of the recording, **GILES** and **THE KING FIRM** were aware that Hickman was a defendant in a federal criminal case involving the staged collision scheme. **GILES** and **THE KING FIRM** were also aware that Hickman was represented by a criminal defense attorney. Regardless, **GILES** and **THE KING FIRM** elicited statements from Hickman about the collisions he and Labeaud staged without Hickman's criminal defense attorney present.

12

*Garrison and Harris*

21.     Beginning at a time unknown, Slammer H taught Garrison how to stage collisions with other vehicles. From approximately 2015 to approximately 2017, Garrison and Slammer H staged collisions for **GILES** and **THE KING FIRM**.

22.     At a time unknown, Slammer H introduced Garrison to **ALFORTISH**. Although **ALFORTISH** had been disbarred from the practice of law, he led others to believe he was an attorney, and he played an active role in staged collision cases that were handled by **MOTTA** and **MOTTA LAW**. Garrison directed passengers in staged collisions to **ALFORTISH**, **MOTTA**, and **MOTTA LAW** for representation in fraudulent lawsuits. Passengers in collisions staged by Garrison were also directed to Attorney C, Attorney D, Attorney E, and Attorney F for representation in fraudulent lawsuits.

23.     Beginning at a time unknown and continuing to in or around 2017, **HARRIS** worked with Garrison to learn how to be a slammer. Eventually, **HARRIS** stopped working with Garrison and began staging collisions with other individuals.

24.     Similar to Garrison, **HARRIS** staged collisions and directed passengers to **ALFORTISH**, **MOTTA**, and **MOTTA LAW** for representation in fraudulent lawsuits. **ALFORTISH**, **MOTTA**, and **MOTTA LAW** knew that **HARRIS** and Garrison were staging collisions.

25.     **ALFORTISH**, **MOTTA**, and **MOTTA LAW** paid **HARRIS**, Garrison, and other slammers via cash and checks for bringing them staged collisions. To conceal the true nature of the payments to **HARRIS** and Garrison, that is, remuneration for the staged collisions, **ALFORTISH**, **MOTTA**, and **MOTTA LAW** often categorized the payments to **HARRIS** and

Garrison as "loans" or "advances" on future settlements. Payments to **HARRIS** and Garrison were also concealed as "professional fees." These payments were funneled through entities controlled by **ALFORTISH**. **ALFORTISH**, **MOTTA**, and **MOTTA LAW** instructed Garrison that, if he were ever questioned about why **ALFORTISH**, **MOTTA**, and **MOTTA LAW** were paying him, he should lie and say that the payments were for a reason unrelated to the staged collisions, including to compensate Garrison for "construction."

26.    From approximately 2015 through approximately 2022, **HARRIS**, Garrison, and others staged collisions for **ALFORTISH**, **MOTTA**, **MOTTA LAW**, Attorney C, Attorney D, Attorney E, and Attorney F. Additionally, **HARRIS** and others staged collisions for the purpose of making fraudulent insurance claims. Those collisions included:

> a.    On or about October 15, 2015, Garrison and others staged a collision involving a Hotard bus and a Dodge Avenger. **ALFORTISH**, **MOTTA**, **MOTTA LAW**, Attorney D, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.
>
> b.    On or about January 17, 2016, **PARKER**, Garrison, and others staged a collision involving a tractor-trailer and a Dodge Charger. **GILES**, **THE KING FIRM**, **PARKER**, Attorney C, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.
>
> c.    On or about January 10, 2017, **HARRIS**, **PARKER**, and others staged a collision involving a Dodge Challenger and an Audi A4. **HARRIS**, **PARKER**, and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

14

d.      On or about April 12, 2017, **MORGAN**, Garrison and others staged a collision involving a tractor-trailer and a Lincoln Town Car. **ALFORTISH**, **MOTTA**, **MOTTA LAW**, **MORGAN**, Attorney C, Garrison, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

e.      On or about April 24, 2017, **HARRIS**, Garrison, and others staged a collision involving a tractor-trailer and a Nissan Sentra. **ALFORTISH**, **MOTTA**, **MOTTA LAW**, **HARRIS**, Attorney C, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

f.      On or about September 6, 2017, **STALBERT**, Garrison and others staged a collision involving a tractor-trailer and a Toyota RAV4. **STALBERT**, Attorney E, Garrison, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

g.      On or about November 13, 2017, **HARRIS** and others staged a collision involving a tractor-trailer and a Chevrolet Impala. **ALFORTISH**, **MOTTA**, **MOTTA LAW**, **HARRIS**, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

h.      On or about August 27, 2020, **HARRIS**, **LAWRENCE**, and others staged a collision involving a Buick Envision and a Ford Taurus. As part of the staged collision scheme, **LAWRENCE** provided **HARRIS** with stolen personal

15

identifying information. **HARRIS**, **LAWRENCE**, and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

    i.      On or about September 21, 2021, **HARRIS** and others staged a collision involving a Mercedes-Benz GLB 250 and a Toyota Corolla. **HARRIS** and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

    j.      On or about December 22, 2021, **HARRIS**, **PARKER**, and others staged a collision involving a Genesis G80 and a Toyota Corolla. **ALFORTISH, MOTTA, MOTTA LAW, HARRIS, PARKER**, and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

    k.      On or about May 1, 2022, **HARRIS** and others staged a collision involving an Infiniti Q60 and a BMW X1. **HARRIS** and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

27.     In or around 2018, insurance defense attorneys representing companies targeted by the staged collision scheme began raising the defense of fraud in lawsuits involving **ALFORTISH**, **MOTTA**, and **MOTTA LAW**. In or around 2019, **ALFORTISH**, **MOTTA**, and **MOTTA LAW** became aware of the federal criminal investigation into the staged collision scheme. Similar to **GILES** and **THE KING FIRM**, to distance themselves from the fraudulent lawsuits, **ALFORTISH**, **MOTTA**, and **MOTTA LAW** committed various acts of obstruction of justice and witness tampering. **ALFORTISH**, **MOTTA**, and **MOTTA LAW** did this as part of a cover-up scheme to obstruct investigations into their conduct.

16

28.     In or around February and March 2019, **ALFORTISH**, **MOTTA**, and **MOTTA LAW** conspired to manipulate Individual 1 into making false statements about the staged collision scheme.

29.     After Garrison began covertly cooperating with the federal government concerning staged automobile collisions in October 2019, but no later than on or about January 9, 2020, **ALFORTISH**, **MOTTA**, and **MOTTA LAW** conspired to offer Garrison payment and to move Garrison outside of the United States if Garrison agreed not to cooperate with the federal criminal investigation into the staged collision scheme.

30.     In or around January 2020, Garrison received a subpoena for a deposition in a civil case related to an 18-wheeler tractor-trailer collision. **ALFORTISH**, **MOTTA**, and **MOTTA LAW** conspired to obstruct Garrison's participation in the deposition.

31.     In or around November 2020, **HARRIS** received a subpoena for a deposition in a civil case related to an 18-wheeler tractor-trailer collision. **ALFORTISH**, **MOTTA**, and **MOTTA LAW** conspired to obstruct **HARRIS's** participation in the deposition.

All in violation of Title 18, United States Code, Section 1349.

### COUNT 2
(Mail Fraud)

**A.     AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Count 1 of this Superseding Indictment are hereby realleged and incorporated herein by reference.

**B.     THE OFFENSE:**

On or about July 10, 2020, in the Eastern District of Louisiana and elsewhere, the defendants, **JASON F. GILES** and **THE KING FIRM, LLC**, for the purpose of executing or

17

attempting to execute the above-described scheme and artifice to defraud, and to obtain money and property by materially false and fraudulent pretenses, did knowingly cause to be delivered by private and commercial interstate carrier, according to the directions thereon, an envelope containing a settlement check in the amount of $50,000, in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT 3
(Obstruction of Justice)

### A.    AT ALL TIMES MATERIAL HEREIN:

The allegations contained in Count 1 of this Superseding Indictment are hereby realleged and incorporated herein by reference.

### B.    THE OFFENSE:

On or about January 9, 2020, in the Eastern District of Louisiana, the defendants,

**SEAN D. ALFORTISH, VANESSA MOTTA,** and **MOTTA LAW, LLC**, did corruptly influence, obstruct, and impede, and did endeavor to influence, obstruct and impede, the due administration of justice in the Grand Jury's investigation into the staged collision scheme by offering Garrison payment and to move Garrison outside of the United States if Garrison agreed not to cooperate with the federal criminal investigation into the staged collision scheme, in violation of Title 18, United States Code, Sections 1503(a) and 2.

## COUNT 4
(Witness Tampering)

### A.    AT ALL TIMES MATERIAL HEREIN:

The allegations contained in Count 1 of this Superseding Indictment are hereby realleged and incorporated herein by reference.

18

**B.    THE OFFENSE:**

On or about January 9, 2020, in the Eastern District of Louisiana, the defendants, **SEAN D. ALFORTISH, VANESSA MOTTA,** and **MOTTA LAW, LLC**, did knowingly corruptly persuade, and attempt to corruptly persuade, Cornelius Garrison with the intent to influence, delay, and prevent Garrison's testimony in an official proceeding, to wit, the Grand Jury's investigation into the staged collision scheme, in violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

## COUNT 5
(Obstruction of Justice)

**A.    AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Count 1 of this Superseding Indictment are hereby realleged and incorporated herein by reference.

**B.    THE OFFENSE:**

On or about October 19, 2020, in the Eastern District of Louisiana, the defendants, **JASON F. GILES** and **THE KING FIRM, LLC**, did corruptly influence, obstruct, and impede, and did endeavor to influence, obstruct and impede, the due administration of justice in the Grand Jury's investigation into the staged collision scheme by secretly recording Roderick Hickman and manipulating him into falsely stating that the collisions Hickman and Labeaud staged were legitimate, in violation of Title 18, United States Code, Section 1503(a) and 2.

## COUNT 6
(Witness Tampering)

### A.    AT ALL TIMES MATERIAL HEREIN:

The allegations contained in Count 1 of this Superseding Indictment are hereby realleged and incorporated herein by reference.

### B.    THE OFFENSE:

On or about October 19, 2020, in the Eastern District of Louisiana, the defendants,

**JASON F. GILES** and **THE KING FIRM, LLC**, did knowingly corruptly persuade and engage in misleading conduct toward, and attempt to corruptly persuade and engage in misleading conduct toward, Roderick Hickman with the intent to influence, delay, and prevent Hickman's testimony in an official proceeding, to wit, the Grand Jury's investigation into the staged collision scheme, in violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

## COUNT 7
(False Statements to Federal Agents)

### A.    AT ALL TIMES MATERIAL HEREIN:

The allegations contained in Count 1 of this Superseding Indictment are hereby realleged and incorporated herein by reference.

### B.    THE OFFENSE:

On or about May 28, 2020, in the Eastern District of Louisiana, the defendant,

**DIAMINIKE F. STALBERT**, did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations to Special Agents with the Federal Bureau of Investigation in a matter within the jurisdiction of the executive branch of the government of the United States. Specifically, **STALBERT** stated that she had never taken part in a staged

automobile collision; that she did not recognize anyone in a video of a staged collision on September 7, 2017; and that she never used a certain phone number ending in 4996; in violation of Title 18, United States Code, Section 1001(a)(2).

### COUNT 8
(Witness Tampering Through Murder)

**A.    AT ALL TIMES MATERIAL HEREIN:**

1.    The allegations contained in Count 1 of this Superseding Indictment are hereby realleged and incorporated herein by reference.

2.    In or around October 2019, Garrison began covertly cooperating with the federal government concerning the staged collision scheme.

3.    On or about September 18, 2020, Garrison was charged in an indictment in the Eastern District of Louisiana with conspiracy to commit mail fraud and other offenses related to staged collisions. Garrison's indictment contained information that he provided over the course of his cooperation in the federal criminal investigation.

4.    On or about September 22, 2020, **RYAN J. HARRIS, a/k/a "Red,"** caused Garrison to be shot multiple times and killed as part of a scheme to prevent Garrison from further cooperating with the federal government and exposing the scheme to stage collisions.

**B.    THE OFFENSE:**

On or about September 22, 2020, in the Eastern District of Louisiana, the defendant, **RYAN J. HARRIS, a/k/a "Red,"** did kill, and aid and abet the killing of, Cornelius Garrison, such killing constituting first-degree murder under Title 18, United States Code, Section 1111(a), with the intent to prevent communications by Garrison to a law enforcement officer or judge of

the United States of information relating to the commission or possible commission of a federal offense, in violation of Title 18, United States Code, Sections 1512(a)(1)(C), 1512(a)(3)(A), and 2.

**COUNT 9**
(Retaliation Against a Witness Through Murder)

### A.    **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Counts 1 and 8 of this Superseding Indictment are hereby realleged and incorporated herein by reference.

### B.    **THE OFFENSE:**

On or about September 22, 2020, in the Eastern District of Louisiana, the defendant **RYAN J. HARRIS, a/k/a "Red,"** did kill, and aid and abet the killing of, Cornelius Garrison, such killing constituting first-degree murder under Title 18, United States Code, Section 1111(a), with the intent to retaliate against Garrison for providing information to a law enforcement officer relating to the commission of a federal offense, in violation of Title 18, United States Code, Sections 1513(a)(1)(B), 1513(a)(2)(A), and 2.

**COUNT 10**
(Causing Death Through Use of a Firearm)

### A.    **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Counts 1 and 8 of this Superseding Indictment are hereby realleged and incorporated herein by reference.

### B.    **THE OFFENSE:**

On or about September 22, 2020, in the Eastern District of Louisiana, the defendant **RYAN J. HARRIS, a/k/a "Red,"** did knowingly use and carry, and aid and abet the use and

carrying of, a firearm during and in relation to a crime of violence, to wit, the witness tampering

through murder charged in Count 8 of this Superseding Indictment, and in the course thereof

caused the death of Cornelius Garrison through the use of a firearm, whose death constituted

murder as defined in Title 18, United States Code, Section 1111, in that **HARRIS** willfully,

deliberately, maliciously, and with malice aforethought, unlawfully killed and caused the death

of Garrison; all in violation of Title 18, United States Code, Sections 924(j)(1) and 2.

### NOTICE OF FORFEITURE

1.      The allegations contained in Counts 1-6 and 8-10 of this Superseding Indictment

are hereby realleged and incorporated by reference as though set forth fully herein for the

purpose of alleging forfeiture to the United States.

2.      As a result of the offenses alleged in Counts 1-6 and 8-10, the defendants, **RYAN**

**J. HARRIS, a/k/a "Red," SEAN D. ALFORTISH, VANESSA MOTTA, MOTTA LAW,**

**LLC, JASON F. GILES, THE KING FIRM, LLC, LEON M. PARKER, a/k/a "Chunky,"**

**DIAMINIKE F. STALBERT, CARL G. MORGAN, TIMARA N. LAWRENCE,** shall

forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and

Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes

or is derived from proceeds traceable to the offenses.

3.      As a result of the offense alleged in Count 10, the defendant, **RYAN HARRIS,**

**a/k/a "Red,"** shall forfeit to the United States pursuant to Title 18, United States Code, Section

924(d)(1), made applicable through Title 28, United States Code, Section 2461, any firearm or

ammunition, which was involved in or used in the commission of said offense.

4.      If any of the property described above, as a result of any act or omission

of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or has been commingled with

other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

18, United States Code, Section 853(p).

A TRUE BILL:



MICHAEL M. SIMPSON
Attorney for the United States
Acting Under Authority Conferred
By 28 U.S.C. § 515

MATTHEW R. PAYNE
Assistant United States Attorney

BRIAN M. KLEBBA
Assistant United States Attorney

MARGARET A. MOESER
CHIEF, MONEY LAUNDERING & ASSET RECOVERY SECTION
Criminal Division, U.S. Department of Justice

J. RYAN McLAREN
Trial Attorney

New Orleans, Louisiana
December 6, 2024

25

No. 24-105 "D" (1)

## UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

_____ Criminal _____ Division

## THE UNITED STATES OF AMERICA

vs.

| | |
|---|---|
| **RYAN J. HARRIS** | **THE KING FIRM, LLC** |
| a/k/a "Red" | **LEON M. PARKER** |
| **SEAN D. ALFORTISH** | a/k/a "Chunky" |
| **VANESSA MOTTA** | **DIAMINKE F. STALBERT** |
| **MOTTA LAW, LLC** | **CARL G. MORGAN** |
| **JASON F. GILES** | **TIMARA N. LAWRENCE** |

SUPERSEDING INDICTMENT FOR CONSPIRACY TO
COMMIT MAIL AND WIRE FRAUD, MAIL FRAUD,
OBSTRUCTION OF JUSTICE, WITNESS TAMPERING,
MAKING FALSE STATEMENTS, WITNESS TAMPERING
THROUGH MURDER, RETALIATION AGAINST A
WITNESS THROUGH MURDER, AND VIOLATION OF
THE FEDERAL GUN CONTROL ACT

| VIOLATIONS: | 18 U.S.C. § 2 | 18 U.S.C. § 1349 |
|---|---|---|
| | 18 U.S.C. § 924 | 18 U.S.C. § 1503 |
| | 18 U.S.C. § 1001 | 18 U.S.C. § 1512 |
| | 18 U.S.C. § 1341 | 21 U.S.C. § 1513 |

A true bi

_____ | _____

Filed in open court this _____ day of _____ A.D. 2024.

_____
Clerk

Bail, $ _____

MATTHEW R. PAYNE
Assistant United States Attorney