**From:** ▨▨▨ <▨▨▨@kinginjuryfirm.com>
**To:** ▨▨▨ <▨▨▨@kinginjuryfirm.com>, Jason Giles <jgiles@kinginjuryfirm.com>, ▨▨▨ <▨▨▨@kinginjuryfirm.com>
**Subject:** Fwd: Litigation case
**Date:** Wed, 17 Oct 2018 14:49:55 +0000

---

Interesting read. Start at the bottom.

▨▨▨
Attorney
The King Firm
2912 Canal Street
New Orleans, LA 70119
Main: ▨▨▨
Fax: 800-901-6470
▨▨▨@kinginjuryfirm.com

---------- Forwarded message ---------
From: **Vanessa Motta** <vanessa@mottalaw.com>
Date: Tue, Oct 16, 2018 at 4:23 PM
Subject: Re: Litigation case
To: ▨▨▨ <▨▨▨@kinginjuryfirm.com>

▨▨▨

Per our discussion, please see the correspondence with ▨▨▨ and me.

Thank you,

Vanessa Motta
Attorney at Law
Motta Law, LLC
525 Clay St.
Kenner, LA 70062
PH: 504-670-9490
Facsimile: 504-513-3122

Email: Vanessa@Mottalaw.com
Website: www.mottalaw.com

**GOVERNMENT EXHIBIT B**

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may contain attorney-client materials and/or attorney work product, legally privileged and protected from disclosure. This e-mail is intended only for the addressee named above. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it and any and all copies of it. Thank you.

Begin forwarded message:

**From:** 
**Subject: RE: Claim No. 178026216**
**Date:** October 16, 2018 at 1:52:19 PM CDT
**To:** Vanessa Motta <vanessa@mottalaw.com>
**Cc:** 

Vanessa,

I am not moving forward with negotiations/discussion on the ▅▅ claim until I discuss this with our client and ▅▅ ▅▅. I wil be in touch afterwards.

Thanks,

▅▅ | Litigation Consultant
▅▅ Inc.
▅▅
▅▅
CELL: ▅▅
OFFICE ▅▅
FAX: ▅▅
EMAIL: ▅▅
▅▅ |The leader in innovative claims and productivity management solutions

---

**From:** Vanessa Motta [mailto:vanessa@mottalaw.com]
**Sent:** Monday, October 15, 2018 6:36 PM
**To:** ▅▅
**Cc:** ▅▅
**Subject:** Re: Claim No. 17826216

▅▅,

 Good afternoon, please give me a call at your earliest convenience. We keep playing phone tag and I would like to have this resolved. I was a bit thrown off by your prior email. Please note, that the King Firm has no connection to me as either the allegations that have been made by the case below. Moreover, we have already been in agreement with all the other claimants, this is a 50/50 liability, and delaying this any further will only increase our demand offer for our client. The allegation of fraud has been spread around on a constant basis, and today in front of Judge Africk in federal court, he was not listening to it one bit. Fraud, is a SERIOUS allegation, and it needs to carry specificity not using the words "possible." Multiple bar complaints have been issued and are continuing to be issued, and defense firms have backed off because of the nonsense allegations and the disgrace it has caused our legal system.

 The case you have below has no connection, and want to know what does that case have to do with this current case? I would highly take the time to read the law in regards to billing and if you like, I am happy to send you a copy of my win against the defense firms trying to attack the billing companies. Please look up in CDC, *Cornelius Garrison vs. Hotard*, which was in connection to Ascendant. I won on the Motion in Limine and Motion for Summary Judgment on the bills and the amounts owed. The law is very clear, the HCFA is what is owed. I have no contracts with these attorneys or any negotiations with them either. What the doctors sell has

no discount on any case. Doctors don't like to wait and that is why they sell the paper, nevertheless, I am still owing the full amount of the HCFA to the finance company. Please read the current law in *Hoffman and Gwendolyn Hollywood Trucks*. Unless you are insinuating collusion on my doctors, which I will assume you are not, your copy and paste about a case has no bearing or connection to the case at hand. My other clients were treating with the same physicians and specialists and MRI locations, and you have settled without a comment of this incorrect and far fetched allegation. This is no different. I cannot state in court what the settlement amount was, but in front of a judge, I am sure your defense attorney knows this, but the judge will ask if other claimants had settled and if they were seeing the same physicians.

Now, we have one client left and Ms. ▇▇▇ and I had an agreement of settlements being the same or near the same and it was a 50/50 liability. If you are implying to bring in discovery and depositions for one client when everyone has been paid and settled out, then we will be asking a whole lot more and include court costs, fees, and interest. I have no problem taking this case in front of a Judge with a client who had a RFA and is a very young, which is worth well over $100,000.00 in CDC. If you want to bring in a defense to pay a difference of $32,000.00, then have at it, but please note, we will be asking for all costs associated now on this case and we will go full value on the quantum of a RFA which my client has never had prior. You are talking about specials, but are neglecting the value of a RFA (generals). If this proceeds to the next level and not settle as what was previously agreed upon, We will also be discussing future life care plans and my client is only 26 years old, so that would be a RFA every 9-12 months for at least 7 years and then doctor's visits and prescription, etc. My client is still in pain and we made an effort to settle so she stopped treatment. I can have her continue treatment as well.

I would also go back and see the arrangement that was set forth prior to all these settlements arose. Finally, the prior offer that was made was BEFORE the addendum MRI report was sent which is why co counsel was offering $50,000.00 for my client once it was shown she had a tear, which is only related to trauma and it was not in the prior MRI. Everything is connected on this case for Ms. ▇▇▇ The offer you were given is a heck of a deal and will save your insured money, which I believe is the intention and reason they have hired a TPA.

Please advise as soon as possible, so I know what to inform my client and how to proceed. I am highly suggesting to offer a counteroffer since receiving the addendum report of the MRI weeks ago.

Thank you in advance for your continued cooperation.

Sincerely,

Vanessa Motta
Attorney at Law
Motta Law, LLC
525 Clay St.
Kenner, LA 70062
PH: 504-670-9490
Facsimile: 504-513-3122

Email: Vanessa@Mottalaw.com
Website: www.mottalaw.com

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may contain attorney-client materials and/or attorney work product, legally privileged and protected from disclosure. This e-mail is intended only for the addressee named above. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it and any and all copies of it. Thank you.

On Oct 15, 2018, at 4:12 PM, ▨▨▨▨▨ <▨▨▨▨▨@▨▨▨▨▨> wrote:

Hi Vanessa,

I just tried to call you, but got your voice mail.

Regarding ▨▨▨ and ▨▨▨ these two claims were settled previously by Ms. ▨▨▨ and we have the executed releases and zero Medicare conditional payment letters so I am in process of preparing the two checks: ▨▨▨ for $130,000 and ▨▨▨ for $11,000. These two checks will be mailed to your office.

Regarding the pending claim for ▨▨▨▨▨, this claim was also settled by Ms. ▨▨▨ and I believe we have the release; however we still need the zero conditional payment letter from Medicare. You mentioned Medicare did not want to issue a zero payment letter, but that is strange because we get those letters all the time and, in fact, we rec'd these letters on the ▨▨▨ and ▨▨▨ claims so we will need one on Mr. ▨▨▨ since he is Medicare eligible. Please provide and, upon receipt, we will honor the previously agreed upon settlement for Mr. ▨▨▨ in the amount of $55,000.

Regarding the pending claim for ▨▨▨▨▨

At last review of this claim, the prior adjuster, ▨▨▨▨▨, had extended an offer of $17,000 to your firm that was rejected by you and your client.

We have recently learned of a suit naming plaintiffs ▨▨▨▨▨ and ▨▨▨▨▨ and defendants Arch Insurance Company, Allstate, et al. This suit appears to arise from a tractor-trailer accident and it appears the defendants have alleged possible/suspicions of fraudulent activity…The case number is 17-242 and filed in the Orleans Parish.

I have copied and pasted below an excerpt from the suit:

"Based upon the suspicious nature of this and the other similar accidents at the same location involving claimants represented by the King Firm, the defendants are exploring the nature, extent and costs of medical treatment provided to the plaintiffs. As part of their investigation, ▨▨▨ and ▨▨▨ have uncovered information that the King Firm, health care providers and litigation finance companies (including ▨▨▨ and ▨▨▨) are possibly inextricably intertwined in a scheme to manufacture unjustifiably high medical bills in order to maximize recovery and share in the proceeds. **The doctors (Drs. ▨▨▨ ▨▨▨ ▨▨▨ and ▨▨▨ and health care facilities (▨▨▨ and ▨▨▨ ▨▨▨**) involved in this case are in the business of charging excessive medical fees, only to later negotiate and sell all of the accounts receivable for a discounted fee to ▨▨▨▨▨ which is an entity related (both by its physical location and its actual staff) to the health care providers rendering treatment, particularly Drs. ▨▨▨, ▨▨▨ and ▨▨▨ and to the facilities at issue (▨▨▨▨▨ and ▨▨▨▨▨ Following the sale of the receivables at a discounted rate, ▨▨▨ maintains a lien for the entire billed amount based upon a loan agreement with a lending company. ▨▨▨ thus, has an interest in the Plaintiff recovering the maximum possible amount from defendants, in order to increase its profits. It is important to note that ▨▨▨ is not a health care provider. So, they do not have a legal right to assert a medical lien. But, they maintain the loan and seek recovery of the full amount billed by the medical providers from defendants in lawsuits even though ▨▨▨ has already reached a separate agreement to accept a lower negotiated amount as full payment for the medical services provided.

I have highlighted in bold the medical providers mentioned in the ▨▨▨ suit and I noted ▨▨▨ ▨▨▨, and ▨▨▨▨▨ were also involved in the treatment of your client, ▨▨▨▨▨ You have filed suit and ▨▨▨ is a named plaintiff and the only one pending a settlement; however, at this time, I plan to discuss the claim with our client and the assigned defense attorney, ▨▨▨▨▨ as we may want to consider discovery and depositions.

If you would like to discuss, please call me. If not, either I or Mr. ▨▨▨ will be in touch.

I have also copied ▨▨▨▨▨ on this email.

Thank you.

▨▨▨▨▨ | Litigation Consultant
▨▨▨▨▨, Inc.

CELL: ▓▓▓▓
OFFICE: ▓▓▓▓
FAX: ▓▓▓▓
EMAIL: ▓▓▓▓▓▓▓▓▓▓
▓▓▓▓ The leader in innovative claims and productivity management solutions

US-072-00241644