**From:** [redacted] <[redacted]@kinginjuryfirm.com>
**To:** Vanessa Motta <vanessa@mottalaw.com>
**Subject:** Re: Louis Fey
**Date:** Fri, 22 Oct 2021 22:05:08 +0000
**Attachments:** Transcript_from_1-25-19_proceedings_(10463305xA8A8F).pdf; FeyLouis010719Mini.pdf; 236_-_Trial_Testimony_of_Louis_Fey.pdf; LouisFey_fey_-_Transcript.pdf
**Inline-Images:** AIOTL-lit-year_2021.png; AIOLA_2021_Elite_Advocate_Badge.png

---

here's what I have on Fey, attached. A court hearing and three transcripts.

On Fri, Oct 22, 2021 at 4:46 PM Vanessa Motta <vanessa@mottalaw.com> wrote:

> [redacted],
>
> Hi there. Hope all is well. I was wondering if you would be so kind and send me the deposition transcript on Mr. Fey? I have a trial coming up November 15th and I need to file additional MIL but be creative as she doesn't want to hear the same argument as before. The judge made a ruling that not only is inconsistent as to whom she is and her opinions, but the defense is clearly doing a back door entrance to fraud when they were denied fraud by changing it to "staged". However, because the judge is allowing them to say there is an affirmative defense to intentional/staging, that is why didn't exclude him and staging is not the same as fraud which is absolute BS.
> Anyways, if you can call me on my cell, when you have a moment, today, If possible, I would really really appreciate it.
>
> Vanessa Motta
> Attorney at Law
> Motta Law, LLC
> 3632 Canal Street
> New Orleans, LA 70119
> PH: 504-670-9490
> Facsimile: 504-513-3122
>
> Email: Vanessa@Mottalaw.com
> Website: www.mottalaw.com
>
> NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may contain attorney-client materials and/or attorney work product, legally privileged and protected from disclosure. This e-mail is intended only for the addressee named above. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it and any and all copies of it. Thank you.
>
> null
>
> On May 20, 2021, at 1:43 PM, @kinginjuryfirm.com> wrote:
>
> last thing-- here is a collection I have of citations on experts talking about fraud, and Daubert issues.

GOVERNMENT EXHIBIT
M

There's no such thing as a "fraud expert." **US v. Long Grove Manor, Inc., 315 F. Supp. 3d 1107 - Dist. Court, ND Illinois 2018**. The court continues:

> "Fraud requires an inference about a defendant's mental state, and it is counsel's job — not an expert witness's — to establish a link, through argument between the evidence and the defendant's intent. See In re Rezulin Products Liability Litigation, 309 F.Supp.2d 531, 545 (S.D.N.Y. 2004). In this case, relator is entitled to present evidence, through Dr. Baer, of CMS's claims review process and the criteria that must be met to establish medical necessity. And while I decline, at this point, to exclude categorically Dr. Bear's testimony about the kinds of fraudulent schemes he and his colleagues uncovered in the course of their professional duties, he may not testify to his abstract judgment that defendants' conduct fits the bill. More specific determinations about the scope of Dr. Baer's proposed testimony are unnecessary at this juncture."

Wayne Winkler prohibited from testifying about other accidents fitting a "pattern" or talking about "fraud indicators" as a result- Judge Zainey said he couldn't talk about other accidents that didn't involve one of the plaintiffs- Terry Baham v. Lovorn & Lovorn Trucking, USDC-EDLA 2:18-cv-08881, Doc. 76 (ruling on Ms in limine), Doc. 93 (ruling on motion to strike- statistics on sideswipes, and NICB fraud indicators)

> **Related**: in CDC, Judge Reese ordered that Ds could not present argument that Ps purposely rammed the D vehicle, as there is no witness to testify to that effect. Kawana Lloyd v. Wal-Mart Inc, 2018-3237, judgment of November 13, 2020.
>
> **This ruling did not involve experts, but check docket, as Ds are likely to retain an expert and Daubert motions are expected.**

US EX REL. DAVIS v. US TRAINING CENTER INCORPORATED, Court of Appeals, 4th Circuit 2012

We also observe that Relators did not cite any cases to the district court supporting their position that an accounting expert may label certain findings "fraud indicators." On appeal, however, Relators cite United States v. Bollin, 264 F.3d 391 (4th Cir. 2001), in support of their argument. We stated in Bollin, in the course of holding that the evidence supported the defendant's conviction, that "[t]he Government's expert testified that there were numerous indicators of fraud" in the documents he reviewed. Id. at 407. Our decision in Bollin did not, however, involve a challenge to the admissibility of testimony concerning "fraud indicators." Accordingly, Relators' reliance on Bollin for the proposition that "[t]his Circuit routinely allows qualified experts to testify about fraud indicators" is misleading and unavailing.

See also *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 565 (11th Cir.1998) (finding an expert witness' "characterizations of documentary evidence as reflective of collusion, and his characterizations of particular bids as `signals,'" not appropriate for expert testimony).

**Compare to "gang expert" testimony-- P**eople v. Marcos Arturo Sanchez (2016) 63 Cal.4th 665, limits the ability to use "gang experts" to relating ***case-specific*** facts about which the expert has no independent knowledge. "When an expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay. It cannot logically be maintained that the statements are not being admitted for their truth. If the case is one in which a prosecution expert seeks to relate testimonial hearsay, there is a confrontation clause violation unless (1) there is a showing of unavailability and (2) the defendant had a prior opportunity for cross-examination or forfeited that right by wrongdoing."

Gang, criminal organization testimony- see, US v. Portillo (CA5 2020)- approves experts who use investigative training to testify about organized criminal enterprises (bike gang in this case).

**MOTION *IN LIMINE #5***

**TO PROHIBIT IMPROPER "PROFILE" TESTIMONY AND ARGUMENT**

The plaintiffs allege they were hurt in an accident. The defendants have reconvened, claiming the accident was staged or deliberately caused by the plaintiffs, and are suing them for fraud.
We expect argument from counsel to that effect; in addition, defendants retained a so-called "fraud expert," and may ask other witnesses about various operations of a "fraud conspiracy."
We ask the Court, however, to prohibit any evidence or argument on the subject of linking such hypothetical activities, to the specific alleged actions of the plaintiffs in this case. Such evidence and argument is deemed inadmissible "profiling" evidence which invades the province of the jury.
As an example, this issue often comes up in federal cases involving drug trafficking organizations. The courts, applying the Federal Rules of Evidence, have held that an expert may in some circumstances be allowed to explain the mechanics of such an organization, but ***cannot*** also purport to tell the jury where the accused individual's activities fit within such a scheme.
The ultimate responsibility of linking a party's conduct with the typical characteristics of drug trafficking must be left to the jurors. If the profile testimony itself makes that connection, then it crosses into the forbidden territory in which testimony with the "expert" imprimatur is allowed to opine on the ultimate issue of guilt which is for the "trier of fact alone." *United States v. Medeles-Cab*, 754 F.3d 316, 321 (5th Cir. 2014); *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 364 (5th Cir. 2010); *United States v. Sosa*, __ F.3d. __ (No. 17-40460) (5th Circuit 2018).
In this case, the motion is especially well-founded, since even the defendants' alleged expert, Louis Fey, does not claim to be able to offer an opinion about whether any individual plaintiff committed "fraud" or not, for the good reason that neither he nor anyone else set to testify in this case has the

ability or knowledge to testify to such an allegation. It is, by common agreement, a conclusion the jury must reach.

So to allow any defense witness to evade this limitation, by the mere artifice of saying "Plaintiff A's actions are consistent with the actions of a fraud conspirator" is just another way of the defendants doing what they know they cannot do, and calling it by another name.

Such an attempt at evidence or argument along this line is beyond the scope of permissible evidence, an invasion of the jury's function of determining the ultimate conclusions, and also highly prejudicial and likely to create confusion, and thus should also be barred under Code of Evidence article 403.

On Thu, May 20, 2021 at 1:17 PM Vanessa Motta <vanessa@mottalaw.com> wrote:

> [redacted],
>
> Yes, I used this exact argument, and you are going to laugh. The judge stated he was limited and will not be able to say anything of fraud, BUT he can discuss what was an indicator to "staging". Now here is the million dollar question, what is the difference between staging and fraud?? No one seems to want to answer this question in court and when I state its the same thing when I try to file my 12b6 motion, it is denied because "staging" is the same as "fraud." If you have a reason, please let me know. LOL.
>
> Louis Fey was limited immensely in my case and he is not to testify unless Defense can prove the accident was staged. My trial is in July. I will keep you posted.
>
> Thank you for sharing this.
>
> Vanessa Motta
> Attorney at Law
> Motta Law, LLC
> 3632 Canal Street
> New Orleans, LA 70119
> PH: 504-500-7246
> Facsimile: 504-513-3122
>
> Email: Vanessa@Mottalaw.com
> Website: www.mottalaw.com
>
> NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may contain attorney-client materials and/or attorney work product, legally privileged and protected from disclosure. This e-mail is intended only for the addressee named above. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it and any and all copies of it. Thank you.



AMERICAN INSTITUTE
LITIGATOR
OF THE YEAR
2021
OF TRIAL LAWYERS

US-072-00919483



On May 20, 2021, at 1:01 PM, [redacted] [redacted]@kinginjuryfirm.com> wrote:

as discussed- look carefully at what he claims in his CV.
in the past, he has misrepresented his history as an expert:

**A.**

**Contrary to His Claim, Louis G. Fey, Jr. Has Never Been Accepted As An "Expert" on "Red Flags" or "Fraud Indicators"**

Mr. Fey's CV claims that he testified as an expert in federal court on topics including "**red flags, fraud indicators** involved in the handling of 3rd party liability and UM/UIM claims." Specifically, Mr. Fey represents the following:

> Antoine M. Saacks, Jr. & Kim Saacks, Plaintiffs Versus Privilege Underwriters Reciprocal Exchange, Defendant. United States District Court Eastern District Of

Louisiana, Civil Action No. 16-01149. Defense expert on bad faith, industry standards, **red flags, fraud indicators involved in the handling of 3rd party liability and UM/UIM claims**. (Trial testimony 2-6-17)

Exhibit 1, Fey CV, page 13. (Emphasis added.)

That is not true. Defendants are attempting to stretch his prior testimony in the *Saacks* case to fit their needs in this case. The court record in the *Saacks* case shows that the case was a first-party UM bad faith case, ***not a third party liability case***. It is correct that Mr. Fey was offered as an expert by the defense - but only with regard to claims handling in UM claims in defense of a plaintiff's bad-faith claim against the UM insurer. To be clear, Mr. Fey was offered to defendant against allegations of bad faith on behalf of the insurer; he was not offered and did not testify as an expert as to "red flags and/or fraud indicators" when it comes to the sort of fraud alleged by defendants ***against plaintiffs*** in this case.

He did not hold himself out as a "fraud" expert of any kind. He was not offered as an expert in "red flags" or "fraud indicators." Further, the *Saacks* litigation appears to have had nothing to do with "3rd party liability" claims, as it was UM claim only. Mr. Fey's report in that case defined the scope of his alleged expertise:

> I will act as an expert witness with regard to the insurance industry standards, customs, and practice involved in handling underinsured motorist claims in the state of

> Louisiana.
> Specifically, Privilege Underwriters Reciprocal Exchange (herein after referred to as "PURE") has retained me to evaluate its handling of the underlying Underinsured Motorist (UIM) claim made by Mr. and Mrs. Antoine Saacks, and to compare that handling to the universally accepted insurance industry standards that apply to such matters.

Exhibit 2, Expert Report of Louis Fey, Jr. in *Saacks v. Pure*.

When the plaintiffs in the *Saacks* case sought to exclude Mr. Fey on *Daubert* grounds in federal court, the defendants in that case made clear the very limited purpose for his testimony:

> PURE intends to offer the opinion testimony of its expert, Mr. Louis G. Fey, Jr., **<u>on the limited issue of whether PURE's handling of Plaintiffs' uninsured motorist ("UM") claim meets insurance industry standards</u>**.
> PURE submits that the expert opinion testimony of Mr. Fey will assist the jury in determining if PURE's handling of Plaintiffs' UM claim complied with industry standards for UM claims or was in bad faith. As will be shown, Plaintiffs' motion in limine to exclude Mr. Fey as an expert witness should be denied, with Mr. Fey **<u>only being allowed to present his limited opinion on UM claims handling in the insurance industry and by PURE in this case</u>**.

Exhibit 3, Defense memorandum in *Saacks v. Pure*, page 1 (emphasis added).

The defense also made clear that their only purpose for Fey's testimony, was describing technical matters involving UM claims:

> Defendant's expert, Mr. Fey, offers opinion testimony to assist the jury on several technical matters unknown to the average juror:

-

The general nature of the claims handling process used to handle a UM claim like the Saacks made;

- The applicable industry standards that define the proper way to handle a UM liability claim;

- The nature of a UM claim and why it is more complicated than a typical homeowner's claim or other auto liability claim to adjust, e.g., PURE "stands in the shoes" of the liability insurer for the other driver; and

- Whether the claims handling by PURE complied with industry standards for proper UM claims handling.

With Mr. Fey's opinion testimony, the jurors will have insights into and be able to understand the technical process and standards that PURE, like any other insurer, is required to follow to properly handle a UM claim. When they are asked to determine if PURE was in bad faith in this case, the jury will have the "tools" based on Mr. Fey's testimony to decide how PURE's conduct stacks up with what the rest of the insurance industry considers proper claims handling, embodied in industry standards.

Defendant **shall not offer the opinion testimony of Mr. Fey on any legal conclusions**, including whether PURE's conduct was in good faith, it rose to the level of bad faith, whether PURE acted in accordance with its duty of good faith and fair dealing, or whether PURE's claims handling of the Saacks UIM claim was arbitrary and capricious. This limitation is in accordance with case law in this Court that has considered the testimony of bad faith experts.

Exhibit 3, Defense memorandum in *Saacks v. Pure*, pages 8-9 (emphasis added).

Indeed, the defense in the *Saacks* case went on to acknowledge several instances in which Mr. Fey's testimony had been limited by the courts, and he had been prohibited from testifying to legal conclusions. Instead, his testimony was

limited to testifying about industry standards only. Exhibit 3, Defense memorandum in *Saacks v. Pure*, pages 10-11. Mr. Fey himself submitted a declaration under penalty of perjury in the *Saacks* case in connection with the motion to exclude him. He claimed only to be an expert in "insurance matters" and "claims handling:"

Exhibit 4, declaration under penalty of perjury of Louis G. Fey, Jr. in *Saacks v. Pure*, pages 1-2. He never claimed to be an expert in "red flags" or "fraud indicators."

The federal court ultimately accepted Mr. Fey as an expert only as to insurance company procedures. Mr. Fey was unequivocally **<u>not</u>** accepted as an expert as to fraud, "red flags" and/or "fraud indicators." Critically, he was prohibited from testifying to legal conclusions:

> while Mr. Fey may testify <u>regarding standard practices and procedures within the insurance industry</u>, he may not testify regarding Plaintiff's medical condition **or offer legal conclusions**.

Exhibit 5, court ruling in *Saacks v. Pure*, pages 5-6 (emphasis added).

The minute entry of the federal court for the day of Mr. Fey's testimony confirms the subject on which he testified:

> Louis Fey, Jr. sworn, offered as an expert in the field of insurance industry standards as it applies to U.M. standards – accepted and testified

Exhibit 6, minute entry in *Saacks v. Pure*.

While it does appear that there was some reference in Mr. Fey's report in the *Saacks* case to "red flags" and fraud - the UM insurer claimed the accident was not legitimate - it is beyond question that Mr. Fey was never offered as an "expert" regarding "red flags" or fraud in the case.

We return to Mr. Fey's representation in his CV of what he claims to have been an expert witness on in that case:

> Antoine M. Saacks, Jr. & Kim Saacks, Plaintiffs Versus Privilege Underwriters Reciprocal Exchange, Defendant. United States District Court Eastern District Of Louisiana, Civil Action No. 16-01149. Defense expert on bad faith, industry standards, **red flags, fraud indicators involved in the handling of 3rd party liability and UM/UIM claims**. (Trial testimony 2-6-17)

Exhibit 1, Fey CV, page 13. (Emphasis added.)

That

is not true. He was never offered, nor did he testify, as an "expert" in " red flags, fraud indicators

involved in the handling of 3rd party liability and UM/UIM claims." This is very important in our case,

because he is apparently seeking to bolster that

"experience" in an entirely new

topic for him. He bootstraps into a claim of a new field of "expertise" that as far as we can tell from his

CV, he has never actually been offered as an expert in:

1.
I will act as an expert witness with regard to the investigation of auto insurance claims.
First Coast Logistics ("FCL") has retained me to evaluate the underlying claim made
by Jessica Francis ("Francis"), **and to opine on**
**the various fraud indicators or "red flags" that have become apparent from FCL's investigation**.

Exhibit 7,

Fey report in our case.

--

**The King Firm, LLC**
2912 Canal Street
New Orleans, Louisiana 70119
Phone 504-909-5464
Direct Dial 504-304-2360
Fax 800-901-6470

--

**The King Firm, LLC**
2912 Canal Street
New Orleans, Louisiana 70119
Phone 504-909-5464
Direct Dial 504-304-2360
Fax 800-901-6470

--

**The King Firm, LLC**
2912 Canal Street
New Orleans, Louisiana 70119
Phone 504-909-5464
Direct Dial 504-304-2360
Fax 800-901-6470