UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL ACTION NO. 24-105** |
| | * | |
| **VERSUS** | * | **SECTION: "D"(1)** |
| | * | |
| **RYAN HARRIS, ET AL.** | * | **This order pertains to:** |
| | * | **VANESSA MOTTA** |
| | * | |
| **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** | * | |

### ORDER & REASONS

Before the Court is Defendant Vanessa Motta's ("Motta") Motion to Compel (Rec. Doc. 243), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Criminal Rule 5.1 (Rec. Doc. 246). The parties have submitted their briefing, and no hearing is necessary for the Court to reach its decision. For the reasons set forth herein, the Motion to Compel is DENIED.

#### BACKGROUND

This case arises out of an alleged years-long scheme to intentionally stage automobile collisions and file fraudulent insurance claims and lawsuits based on the staged collisions. Rec. Doc. 78. In September 2020, a federal grand jury in the Eastern District of Louisiana charged nine individuals in a seven-count indictment related to the staged collisions. *See United States v. Garrison*, No. 20-cr-92, Rec. Doc. 1 (E.D. La. Sept. 18, 2020). The indictment made references to "Co-Conspirator A" (Sean D. Alfortish, Motta's fiancée) and "Attorney B" (Motta), stating that "Co-Conspirator A solicited and/or referred personal injury clients to Attorney B." *Id.* at p. 2. The Government alleges that certain information in the indictment clearly came from a defendant, Cornelius Garrison, who was charged for his participation in the scheme. Rec. Doc. 249 at p. 2. Four days after the indictment, Garrison was murdered. The Government alleges that Motta and Alfortish instructed another individual to meet with Garrison and convince him not to cooperate

1

and that Garrison's murder was related to his cooperation. *Id.* at pp. 2-3 (citing Rec. Doc. 184 (factual basis as to Ryan Harris); Rec. Doc. 49 (factual basis as to Jovanna Gardner)).

On December 6, 2024, the Government charged Motta, along with other individuals, for the following crimes arising out of the staged collision scheme and the alleged witness tampering of Cornelius Garrison: Count 1 – Conspiracy to Commit Mail Fraud and Wire Fraud; Count 3 – Mail Fraud; Count 4 – Witness Tampering. Rec. Doc. 78. On April 25, 2025, after Motta filed the instant motion to compel, a federal grand jury returned a superseding indictment charging Motta with the following crimes: Count 1 – Conspiracy to Commit Mail Fraud and Wire Fraud; Count 3 – Mail Fraud; Count 4 – Obstruction of Justice; Count 5 – Witness Tampering. Rec. Doc. 256.

LAW AND ANALYSIS

Motta and the Government identify different issues related to Motta's motion to compel. Motta argues that the Government must produce all *Brady* material immediately and certain FBI 302 memoranda qualify as *Brady* evidence subject to immediate disclosure. The Government argues that it is not obligated to index and separately identify *Brady* material nor is it required to immediately produce the requested FBI 302 memoranda, which it contends qualify as Jencks Act material. However, the only issue that is necessary for this Court to address in order to resolve the motion is that of timing: when must the Government disclose these materials?[1] While the parties dispute whether certain FBI 302 memoranda qualify as *Brady* or Jencks Act material (the Government would only be statutorily required to disclose Jencks Act material after the witnesses testify), the Court need not decide that question. The Government has already proposed and

---

[1] The briefing is unclear as to whether Motta takes issue with the government's potential partial production of 302s or merely the government's position on the timing of such production. The briefing is also unclear as to whether the government intends to produce all requested 302s or a select subset. *See* Rec. Doc. 249 at p. 7 n.2 ("The government does not intend to withhold any materials that may be relevant to this case other than agent summaries of witness interviews."); *Id.* at p. 13 ("[T]he government intends to produce its witness interview reports well in advance of the September 8, 2025, trial date."). Because the issue has not properly been raised or briefed, the Court declines to address it in this Order.

2

indicated its intent to produce Jencks Act material no later than three weeks before trial—a schedule that satisfies its obligations under both *Brady* <u>and</u> the Jencks Act. *See* Rec. Doc. 225. In short, the issue is not one of suppression, but timing, and it is easily resolved by applying relevant caselaw from this Circuit.

I.     **Applicable Standards**

A. **Rule 16**

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure entitles a defendant, upon request, to inspect and copy tangible things in the Government's possession, custody, or control, such as books, papers, documents, etc., provided: (1) the item is material to preparing the defense; (2) the government intends to use the item in its case-in-chief at trial; or (3) the item was obtained from or belongs to the defendant. Rule 16 also provides that except as provided in subsections Rule 16(a)(1)(A)-(D), (F), and (G)—provisions which are not applicable here—the rule does not authorize disclosure of reports, memoranda, or internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. FED. R. CRIM. P. 16(a)(2). The rule also specifically provides that it does not require production of statements made by prospective government witnesses except as provided by the Jencks Act, 18 U.S.C. §3500. *Id.* Further, Rule 16 "leaves 'the precise conditions under which the defense may obtain access to discoverable information to the informed discretion of the district court,' provided the time for disclosure is 'sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence.'" *United States v. Williamson*, No. 2024 WL 4581198, at *2 (E.D. La. Oct. 25, 2024) (quoting *United States v. El-Mezain*, 664 F.3d 467, 520 (5th Cir. 2011); FED. R. CRIM. P. 16(a)(1)(G)(ii)) (citing FED. R. CRIM. P. 16.1).

3

**B. *Brady*, *Giglio*, and Jencks Act Materials**

As a general proposition, there is no constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1997). The government has a constitutional duty, however, to disclose evidence that is both favorable to the defendant and material to either guilt or punishment pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Supreme Court has also held that, as part of its obligations pursuant to *Brady*, the government must disclose evidence that would materially impeach a government witness. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Regardless of whether the defendant specifically requests such evidence, "favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Additionally, the Jencks Act requires the government to disclose statements or reports made by government witnesses or prospective witnesses. 18 U.S.C. § 3500(a). The Jencks Act provides, however, that statements made by the government witnesses do not have to be disclosed "until said witness has testified on direct examination in the trial of the case." *Id.*; *see also United States v. George*, No. 17-201, 2019 WL 11865093, at *2 (E.D. La. Oct. 30, 2019) ("Ultimately, '[a] criminal defendant is entitled to rather limited discovery, with no general right to obtain the statements of the government's witnesses before they have testified.'") (quoting *Degen v. United States*, 517 U.S. 820, 825 (1996)).

As to timing for *Brady* and *Giglio* material, caselaw in this Circuit does not mandate a particular time for disclosure. Nor does the Fifth Circuit require disclosure of *Brady* and *Giglio* material before disclosure of Jencks Act material. *See United States v. Brown*, 699 F.2d 704, 709

(5th Cir. 1983) ("[W]hen alleged *Brady* material is contained in Jencks Act material, disclosure is generally timely if the government complies with the Jencks Act.") (quoting *United States v. Anderson*, 574 F.2d 1347, 1352 (5th Cir. 1978); *United States v. Martino*, 648 F.2d 367, 384 (5th Cir. 1981)); *United States v. Hankton*, No. 12-01, 2016 WL 10951283, at *1 (E.D. La. June 17, 2016) (same). To the contrary, "[d]ecisions within this jurisdiction suggest that any decision to allow early production of Jencks Act or *Giglio* material is discretionary." *George*, 2019 WL 11865093, at *2 (collecting cases). As articulated by Judge Vance in a case similar to this one:

> [T]he Court [does not] perceive any requirement that *Brady* or *Giglio* material be produced in pretrial discovery. Under *Brady v. Maryland*, prosecutors have a duty to disclose evidence that is both favorable to the defendant and material to either guilt or punishment. *See Brady*, 373 U.S. at 87. This includes evidence that would materially impeach a government witness, *e.g.*, by showing bias or interest. *See Giglio*, 405 U.S. at 154; *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375 (1985). The Fifth Circuit has stated, **"[ ] *Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation."** *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978) (citing *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392 (1976)). **Therefore, *Brady* "is not a pretrial remedy."** *See United States v. Garrett*, 238 F.3d 293, 303 (5th Cir. 2000) (Fish, J., concurring) (quoting *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975)). Rather, a *Brady* violation becomes a concern for courts only after trial, when courts are able to determine whether a nondisclosure deprived a defendant of a fair trial. *See id.* at 303–04 (citing cases). **The Fifth Circuit has therefore held that "the prosecutor's compliance with the Jencks Act provided timely disclosures under *Brady*."** *United States v. Campagnuolo*, 592 F.2d 852, 860 (5th Cir. 1979) (citing cases). The Fifth Circuit has also held that there was no prejudice to the defendant when the government disclosed *Brady* information to the defendant during its case-in-chief. *See United States v. Neal*, 27 F.3d 1035, 1050 (5th Cir. 1994). Lastly, the Fifth Circuit has held that there is no violation of *Giglio* as long as the evidence is disclosed to the defense before the end of trial. *See Hill v. Black*, 887 F.2d 513, 517 (5th Cir. 1989), *vacated on other grounds by* 111 S. Ct. 28 (1990); *see also United States v. Martinez–Perez*, 941 F.2d 295, 301 (5th Cir.1991) (reaffirming the *Giglio* aspect of *Hill*).

*United States v. Davis*, Cr. A. No. 01-282, 2003 WL 1825602, at *2 (E.D. La. Apr. 8, 2003) (emphasis added). Put simply: there is no precedent within the Fifth Circuit to support Motta's

argument that *Brady* and *Giglio* material must be produced prior to Jencks Act material.[2]

## II.     The Government is Abiding by its Disclosure Obligations

Here, in the proposed scheduling order, the Government has already offered to produce *Brady* material by June 2, 2025, and Jencks Act material by August 18, 2025—three weeks prior to trial. Rec. Doc. 225 at pp. 1-3. And the Government confirms in its opposition that it intends to produce 302 memoranda on the Jencks Act deadline. Rec. Doc. 249 at p. 15, n.4. Although Motta opposes the Government's proposed timeline set forth in the scheduling order and argues that the disclosure should occur earlier, there is no indication that any *Brady* and/or Jencks Act material will be produced any *later* than at least three weeks prior to trial. *See* Rec. Doc. 225 at pp. 2-3, nn.5-6. Therefore, even if this material were to only qualify as Jencks Act material (which Motta opposes), Motta would still receive the material, at the latest, three weeks prior to trial. This is sufficient for purposes of the timing of disclosure—even if the evidence disclosed three weeks prior to trial qualifies as *Brady/Giglio* material, as Motta argues.

The Court takes note that the government's agreement to provide Jencks Act material three weeks in advance of trial is entirely discretionary. *George*, 2019 WL 11865093, at *2 ("Decisions within this jurisdiction suggest that any decision to allow early production of Jencks Act or *Giglio* material is discretionary.") (collecting cases). And it is actually far more favorable than the general practice in this district, which is to wait to produce *Brady*, *Giglio*, <u>and</u> Jencks Act materials until the Friday before a trial starting on Monday. *See, e.g.*, *United States v. Knowles*, No. 15-2, 2015

---

[2] While Motta cites jurisprudence from district courts in Massachusetts, New York, the District of Columbia, New Mexico, and Minnesota, along with the United States Court of Appeals for the District of Columbia Circuit to support her theory, *see* Rec. Doc. 243-1 at pp. 7-8, reliance on this jurisprudence is not necessary here, as there is sufficient precedent within the Fifth Circuit that addresses the issue, as set forth above. Moreover, while Motta does attempt to cite one Fifth Circuit case that she alleges supports her argument, *United States v. Martinez*, 87 F.3d 731 (5th Cir. 1996), the Fifth Circuit's holding in *Martinez* that material qualifying as both Jencks Act and *Brady* material has "to [be] examined within the analytical framework established pursuant to *Brady* and its progeny," does not implicate the timing of disclosure issue that is at the heart of the dispute here. *See* Rec. Doc. 243-1 at p. 8; Rec. Doc. 272 at p. 5.

WL 3466011, at *4 (E.D. La. June 1, 2015) ("[T]he government will provide defendants with all *Brady* and *Giglio* material no later than 5:00 p.m. on the Friday before trial, as is the practice in this circuit. Nothing more is required."); *United States v. Mitchell*, No. 10-297, 2013 WL 5755627, at *2 (E.D. La. Oct. 23, 2013) (Wilkinson, J.) ("For the 33 years during which I have worked in or around this court, its judges have engaged in the salutary practice of requiring early disclosure of [*Brady*, *Giglio*, and Jencks Act] materials by including a provision in their final pretrial orders requiring government production to defendant on the Friday before a Monday trial."). Motta has not provided any persuasive reasoning for why this discretionary timeline that is more favorable than the general practice in this district would run afoul of any constitutional due process concerns.

      Moreover, the Government's proposal is practical and appropriate. It balances valid witness safety concerns with Motta's trial preparation needs. While the government has not presented evidence of an immediate threat to the relevant witnesses' safety, given the allegations in the indictment—specifically those including Motta's alleged witness tampering and the murder of a key witness in this case—the Court finds the Government is reasonable to have some concern for witness safety.[3] Three weeks in advance will also still provide Motta and defense counsel sufficient time to review the materials and prepare accordingly.[4] The Court also notes that it has no reason to suspect that the Government is not complying with its obligations under *Brady* and *Giglio*. To the contrary, the Government has confirmed that it is aware of its obligation to produce exculpatory and impeachment evidence under *Brady* and *Giglio* and has confirmed that it does not intend to

---

[3] This finding is applicable to disclosure under both the Jencks Act and *Giglio*, which allow restrictions on the production of materials if disclosure may expose a witness to possible tampering or danger. *See United States v. Rentfrow*, No. 20-128, 2022 WL 1462968, at *2-3 (S.D. Miss. May 9, 2022) (restricting the disclosure of Jencks Act and *Giglio* materials because "[t]here are serious security concerns with permitting defendants, . . . charged with violent crimes, to have unfettered access to these materials.").

[4] Although Motta makes a request for the immediate disclosure of all *Brady* material that also qualify as Jencks Act material, the universe of specifically identified documents, *i.e.* the requested FBI 302 memoranda, is relatively small. *See* Rec. Doc. 243-1 at p. 15, nn.3-5 (indicating Motta's "belief" that documents related to 29 witnesses could be relevant to her defense).

withhold any such materials. *See* Rec. Docs. 249 at pp. 7-8, n.2; Rec. Doc. 225 at p. 2. On balance, disclosure of these materials three weeks in advance of trial is sufficient.

In short, Motta's speculation that exculpatory and impeachment evidence may exist in certain FBI 302 memoranda and that the Government has not yet provided those memoranda is insufficient to warrant the Court to order the immediate disclosure of any *Brady*/*Giglio* material, including the specifically requested FBI 302 memoranda—regardless of whether it qualifies as *Brady*, *Giglio*, or Jencks Act material. The Government's agreement to produce the *Brady*, *Giglio*, and Jencks Act material well in advance of trial exceeds its legal obligations, and the Court does not agree that Motta is entitled to more.

CONCLUSION

For the foregoing reasons, the Motion to Compel filed by Defendant Vanessa Motta's (Rec. Doc. 243) is DENIED.

New, Orleans, Louisiana, this 4th day of June, 2025.

_____<br>
Janis van Meerveld<br>
United States Magistrate Judge