UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO.: 2:24-CR-00105 |
| | CHIEF JUDGE WENDY VITTER |
| VERSUS | SECTION: D |
| | MAGISTRATE JUDGE JANIS VAN MEERVELD |
| RYAN J. HARRIS, ET AL. | DIVISION: 1 |

### VANESSA MOTTA AND MOTTA LAW LLC'S OPPOSITION TO GOVERNMENT'S MOTION TO QUASH SUBPOENAS

The government's Motion to Quash the Rule 17(a) subpoenas to compel the appearance of defendant Ryan Harris and non-party Bradley Egenberg at the upcoming hearing on the government's Motion to Admit Statements Under the Forfeiture by Wrongdoing Exception (the "motion to admit statements") is both procedurally deficient and meritless. First, it is procedurally deficient because Rule 17 of the Federal Rules of Criminal Procedure does not contemplate, let alone permit, a motion to quash a Rule 17(a) subpoena, and because the government lacks standing to quash the subpoenas. Second, it is meritless because Mr. Harris's and Mr. Egenberg's anticipated testimony is undeniably relevant and material to Vanessa Motta and Motta Law LLC's (together, "Ms. Motta") defense against the government's ludicrous position that Mr. Harris's factual basis and Mr. Egenberg's representation of Cornelius Garrison in a civil deposition purportedly show that Ms. Motta intended to make Mr. Garrison unavailable as a witness (by murder), such that Mr. Garrison's statements can be admitted against her.[1] Accordingly, the government's motion to quash must be denied.

---

[1] R. Doc. 227-1 at 21-22 (motion to admit statements).

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of an alleged years-long scheme to intentionally stage automobile collisions and file fraudulent insurance claims and lawsuits based on the staged collisions.[2] In September 2020, a federal grand jury in the Eastern District of Louisiana charged nine individuals in a seven-count indictment related to the staged collisions.[3] The indictment made references to "Co-Conspirator A" (Sean D. Alfortish, Ms. Motta's fiancé) and "Attorney B" (Ms. Motta), stating that "Co-Conspirator A solicited and/or referred personal injury clients to Attorney B." Allegedly, certain information in the indictment clearly came from Mr. Garrison, who was charged for his participation in the scheme. Four days after the indictment, Mr. Garrison was murdered.[4] The superseding indictment charges only Mr. Alfortish and Leon Parker with any involvement in murder.[5]

Against this backdrop, the government now seeks a wholesale and limitless admission of *all* statements attributed to Mr. Garrison against Ms. Motta in its pending motion to admit statements.[6] Central to the government's motion is whether Ms. Motta had the specific intent to make Mr. Garrison unavailable as a witness,[7] as required by Supreme Court precedent. *See Giles v. California*, 554 U.S. 353, 367 (2008). She did not. According to the government, however, Ms. Motta had such specific intent in part because of: (1) her efforts to secure independent counsel for Mr. Garrison in relation to a subpoena to appear at a civil deposition; and (2) Mr. Harris's factual basis.

---

[2] *See, e.g.*, R. Doc. 318.
[3] *See United States v. Garrison,* No. 20-cr-92, Rec. Doc. 1 (E.D. La. Sept. 18, 2020).
[4] *See, e.g.*, R. Doc. 318.
[5] R. Doc. 256 at 20-23.
[6] *See* R. Doc. 227-1 at 21-22.
[7] R. Doc. 227-1 at 21.

Regarding her efforts to secure Mr. Garrison independent counsel, in February of 2020, Ms. Motta represented several individuals in a car accident in which Mr. Garrison was not a passenger. Despite the fact that Mr. Garrison was not involved with that accident, defense counsel served Mr. Garrison with a notice of deposition. Mr. Garrison then reached out to Ms. Motta – not the other way around – for guidance.[8] To ensure Mr. Garrison had legal counsel to assist him in the deposition, Ms. Motta helped secure independent counsel, Mr. Egenberg, to represent him. If called, Mr. Egenberg is expected to testify under oath that he did *not* agree to corruptly represent Mr. Garrison, violate his ethical duties, and commit the federal crime of obstruction of justice. Upon learning that Mr. Garrison would instead be represented by a criminal defense attorney, Chief Federal Public Defender Claude Kelly, Mr. Egenberg withdrew from representation. Accompanied by Mr. Kelly, Mr. Garrison testified at the deposition without obstruction.

Regarding Mr. Harris's factual basis, Mr. Harris pleaded guilty to assisting in Mr. Alfortish's and Mr. Parker's scheme to murder Mr. Garrison.[9] According to Mr. Harris's factual basis supporting his guilty plea, "Alfortish, Motta, and Parker commented to HARRIS that Garrison was a 'rat' and a 'snitch' and that it would be better if Garrison were dead."[10]

In support of her defense against the government's baseless motion to admit statements, Ms. Motta requested this Court to issue subpoenas to Mr. Harris and Mr. Egenberg to compel their attendance at the July 15, 2025 hearing on the government's motion under Rule 17(a) of the

---

[8] The government mischaracterized this sequence in its motion to quash. R. Doc. 333-1 at 14-15. The government's description of this issue is illustrative of the government's internal and inherent bias in prosecuting this case. The government correctly states that Mr. Garrison and Mr. Alfortish met at Mr. Garrison's request (and at the government's presumptive direction) to discuss the subpoena. *Id.* The government then notes, which is also true, that after that meeting, Mr. Garrison went with Ms. Motta to meet Mr. Egenberg. Where the government runs off the rails is stating that those two facts establish a "*direct* Alfortish-Motta connection." *Id.* (emphasis added). Yet that is not necessarily the case. It is equally possible – and is in fact the actual truth in this case – that Ms. Motta did not know any accidents were staged and that, had she known they were (which she did not), no reasonable person would have involved an independent attorney who would refuse to violate the law or his ethical obligations.

[9] R. Doc. 184 at 5.
[10] R. Doc. 184 at 4.

Federal Rules of Criminal Procedure.[11] This Court issued the requested subpoenas.[12] The instant motion to quash the Rule 17 subpoenas followed.[13]

## II.  The government's motion is procedurally improper and must be denied.

### A.  Rule 17 does not permit, let alone contemplate, a motion to quash a Rule 17(a) subpoena.

Glaringly absent from the language Rule 17 of the Federal Rules of Criminal Procedure is any authorization of a motion to quash a Rule 17(a) subpoena, *i.e.*, the type of subpoena issued to Mr. Harris and Mr. Egenberg. Rule 17 provides, in pertinent part:

> **(a) Content.** A subpoena must state the court's name and the title of the proceeding, include the seal of the court, and command the witness to attend and testify at the time and place the subpoena specifies. The clerk must issue a blank subpoena--signed and sealed--to the party requesting it, and that party must fill in the blanks before the subpoena is served.
> **(b) Defendant Unable to Pay.** …
> **(c) Producing Documents and Objects.**
>   **(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>   **(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.
>   ….

---

[11] R. Doc. 319.
[12] R. Doc. 329.
[13] R. Doc. 333. Like the government's motion to admit statements, the instant motion to quash is plagued with factual inaccuracies. *Compare* R. Doc. 333-1 at 2 (government's motion to quash) ("Additionally, Garrison reported that, upon Alfortish and Motta's return from a trip to the Bahamas, *Alfortish and Motta offered to pay him $500,000 and move him to there* 'because of the heat from the investigation into the staged accidents.'") (emphasis added), *with* R. Doc. 227-10 at 1 (302 report) ("ALFORTISH offered $500,000 with $100,000 of it up front. … ALFORTISH offered to move CHS to the Bahamas because of the heat from the investigation into the staged accidents, but CHS declined."), *and* R. Doc. 227-1 (government's motion to admit statements) ("For example, Alfortish 'offered to compensate [Garrison] if [Garrison] took the fall for the staged accidents. Alfortish offered $500,000 with $100,000 up front.' Gov. Ex. G, p. 1. Additionally, Alfortish 'offered to move [Garrison] to the Bahamas because of the heat from the investigation into the staged accidents.' Gov. Ex. G, p. 1.") (alterations in original).

-4-

Fed. R. Crim. Proc. 17 (emphasis in original).[14]  Unlike Rule 17(c), which governs subpoenas duces tecum, Rule 17(a), which governs subpoenas ad testificandum, "contains no language authorizing the court to quash a subpoena issued in compliance with its minimal requirements." *United States v. Vaughan*, No. 4:22-CR-00162-ALM-BD, 2025 WL 77382, at *6 (E.D. Tex. Jan. 10, 2025).[15]

Therefore, it follows that "if the drafters of Rule 17 had wanted to authorize courts to quash both subpoenas duces tecum and subpoenas ad testificandum, they would have crafted the rule some other way – such as by including the equivalent of Rule 17(c)(2) in Rule 17(a) or by placing that authorization in a part of the rule that applies to both types of subpoenas." *Vaughan*, 2025 WL 77382, at *6 (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) (explaining that where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") and *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) (applying the *expressio unius est exclusio alterius* canon to a federal rule)); *see also United States v. Adams*, No. 3:11-CR-54-02, 2011 WL 13115427, at *2 (N.D.W. Va. Nov. 10, 2011) ("Rule 17(a) addresses subpoenas to testify, and there is no similar provision on a motion to quash with regard to subpoenas to testify.") (alterations and internal quotation marks omitted).  But the drafters did not.  While neither the Fifth Circuit nor any section of this Court has ruled on whether the very language of Rule 17 permits a party to

---

[14] The government does not dispute that, in compliance with Rule 17(a), the subpoenas requested by Ms. Motta stated the court's name and the title of the proceeding, included the seal of the court, and commanded the witness to attend and testify at the time and place the subpoena specifies.

[15] "The Sixth Amendment's guarantee that, "in all criminal prosecutions, the accused shall enjoy the right to have compulsory process for obtaining witnesses in his favor,' might explain the silence." *Vaughan*, 2025 WL 77382, at *6 (alterations omitted). "Even if all of Rule 17 is properly viewed as implementing that constitutional guarantee, the ability to secure witness testimony is closer to the heart of the constitutional text than the ability to secure 'any books, papers, documents, data, or other objects' that a witness might bring with him" under Rule 17(c). *Vaughan*, 2025 WL 77382, at *6 (internal citations omitted).

move to quash a Rule 17(a) subpoena under the language of Rule 17, a strict textualist interpretation of the Rule prohibits such a motion. *See* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93–100, 107-111, 167–169, 428 (2012) (explaining that the expression of one thing implies the exclusion of others). The government's motion, therefore, should be denied based on the text of Rule 17.

Some courts recognizing the textualist conundrum, however, forgo interpretation principles and instead simply "follow the advice of a leading treatise: 'the better practice in ordinary cases is to require the witness to appear and claim any privilege or immunity he may have.'" *Vaughan*, 2025 WL 77382, at *6 (quoting 2 C. Wright & A. Miller, Federal Practice and Procedure § 274 (4th ed. Supp. 2024)); *see also United States v. Barrett*, 698 F. Supp. 3d 921, 926 (M.D. La. 2023) (same); *Adams*, 2011 WL 13115427, at *2 (denying motion to quash Rule 17(a) subpoena because "although courts have granted motions to quash subpoenas to testify, the better practice in ordinary cases is to require the witness to appear and claim any privilege or immunity he may have.") (citation and alterations omitted). Courts applying this alternative do so without engaging in any analysis of the relevance or materiality of the anticipated testimony. *See, e.g.*, *Vaughan*, 2025 WL 77382, at *6; *Adams*, 2011 WL 13115427, at *2. Considering this "better practice," the government's motion should be denied based on this alternative ground, too.

> **B. Even if a motion to quash a Rule 17(a) subpoena were an appropriate procedural mechanism, the government lacks standing to move to quash the Rule 17(a) subpoenas.**

This Court issued Rule 17 subpoenas to Mr. Harris and Mr. Egenberg, not to the government. Neither Mr. Harris nor Mr. Egenberg has challenged the subpoenas. "[C]ourts have routinely found that the Government does not have the ability to stand in another's shoes and move to quash a subpoena." *United States v. Williams*, No. CIV.A CR 07-35, 2007 WL 2287819, at *3 (E.D. La. Aug. 8, 2007) (citing *United States v. Nachamie,* 91 F.Supp.2d. 552, 560 (S.D. N.Y.

2000) (finding government had no standing to move to quash subpoenas for doctors reluctant to reveal their status as government witnesses)). However, the government may have "standing to move to quash [the] subpoena addressed to another if [the] subpoena infringes on [the] movant's legitimate interest." *United States v. McClure*, No. CRIM.A. 10-028, 2010 WL 3523030, at *3 (E.D. La. Sept. 1, 2010) (quotation omitted). "The prosecution's legitimate interests in quashing include preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on the witness's credibility." *McClure*, 2010 WL 3523030, at *3; *see also United States v. Robinson*, No. 19-CR-363-1, 2020 WL 2309568, at *2 (W.D. La. May 8, 2020) (same). The government has made no such argument here.[16] Neither the possibility of a privilege being raised nor the government's list of evidence upon which it intends to rely show that the subpoenaed testimony infringes on any of its legitimate interests regarding trial length, witness harassment, or witness credibility. *See McClure*, 2010 WL 3523030, at *3. Therefore, the government's motion should be denied based on its lack of standing.

**III.    The government's motion is meritless and must be denied.**

Generally, Rule 17(a) subpoenas may issue when a defendant seeks testimony that is material to the issue being litigated and not cumulative to the defense. *See United States v. Beasley*, 479 F.2d 1124, 1128 (5th Cir. 1973). Put differently, "a subpoena ad testificandum survives scrutiny if the party serving it can show that the testimony sought is both relevant and material." *United States v. Rosenschein*, No. CR 16-4571 JCH, 2020 WL 4275670, at *1 (D.N.M. July 24, 2020) (quotation omitted) (denying motion to quash Rule 17(a) subpoena).[17] For the reasons set

---

[16] The government's statement that "Testimony from Harris and Egenberg will turn this limited evidentiary hearing into an unnecessary and time-consuming mini-trial," R. Doc. 333-1 at 1, with no explanation offered in support, does not show that the subpoenaed testimony infringes on any of the government's legitimate interests regarding trial (not pre-trial hearing) length, witness harassment, or witness credibility. *See McClure*, 2010 WL 3523030, at *3.

[17] In its motion to quash, the government recites the inapplicable Rule 17(b) standard. R. Doc. 333-1 at 7-8. That standard requires the defendant to demonstrate the necessity of the subpoenaed witnesses' testimony, which

-7-

forth below, the subpoenas issued to compel Mr. Harris's and Mr. Egenberg's attendance seek testimony that is both relevant and material to Ms. Motta's defense against the government's motion to admit statements. And none of the government's arguments to the contrary has merit. Therefore, the government's motion should be denied.

> **A.    That the government intends to bear the burden of proof for its motion to admit statements by evidence already presented does not warrant quashal of the anticipated testimony in support of Ms. Motta's defense against the motion.**

The government intends to bear the burden of proof required for its motion to admit statements "through evidence already presented and the testimony of the lead FBI agent regarding the homicide."[18] So, says the government, this Court need not consider any evidence Ms. Motta could present; therefore, it seeks to limit the entire universe of evidence this Court could consider to just that evidence "already presented" and upon which the government intends to rely, namely: (1) the documents attached to the government's motion to admit statements; (2) testimony from Special Agent Heimbach;[19] (3) recordings of a meeting between Mr. Garrison and Mr. Alfortish and a meeting between Mr. Garrison and Ms. Motta;[20] and (4) Mr. Harris's factual basis and minute entry noting his guilty plea.[21] This the Court should not allow.

"It is well established that a criminal defendant is entitled to present his theory of defense, including witnesses, testimony, and exhibits." *United States v. Lowery*, 135 F.3d 957, 959 (5th

---

includes anything "relevant, material, and useful to an adequate defense," when the defendant shows an inability to pay the witness fees. *Id.* (citing *United States v. Howard*, No. CRIM.A. 12-1, 2014 WL 1249512, at *1 (E.D. La. Mar. 26, 2014)). Because the subpoenas to Mr. Harris and Mr. Egenberg were issued under Rule 17(a), not Rule 17(b), the government's description of the legal standard should be ignored. *See* R. Doc. 319 (no mention of inability to pay). In any event, due to the substantial overlap between the Rule 17(a) and Rule 17(b) standards, Ms. Motta's subpoenas satisfy the defense's burden under either standard. And further, the subpoenas must issue because, even if the Rule 17(b) standard applied, the government does not argue, as *Howard* requires, that: (1) Ms. Motta's averments are untrue; or (2) that the request is otherwise frivolous. *See* 2014 WL 1249512, at *1.

[18] R. Doc. 333-1 at 11.
[19] R. Doc. 333-1 at 11 ("The government intends to bear its burden through the evidence already presented and the testimony of the lead FBI agent regarding the homicide.").
[20] R. Doc. 333-1 at 12 ("These recordings, which will be presented at the upcoming hearing ….").
[21] R. Doc. 333-1 at 12.

Cir. 1998) (citing *United States v. Partin,* 493 F.2d 750, 763 (5th Cir. 1974)). "The Constitution, [the United States Supreme Court's] decisions indicate, protects a defendant against a conviction based on evidence of questionable reliability, *not by prohibiting introduction of the evidence*, but by affording the defendant means to persuade the [Court] that the evidence should be discounted as unworthy of credit." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012) (emphasis added).

In light of this precedent, the government's requested limitation would impermissibly divest Ms. Motta of her right to introduce relevant and material evidence to aid in her defense against the motion. To safeguard Ms. Motta's constitutional rights, this Court should reject the government's attempt to prevent Ms. Motta from introducing additional evidence in support of her defense outside of the universe of "evidence already presented." As explained below, the anticipated testimony Ms. Motta seeks to present is relevant and material to her defenses, *see Beasley*, 479 F.2d at 1128, and her constitutional right to present it should not be prohibited preemptively at the government's request, *Perry*, 565 U.S. at 237. The motion to quash, therefore, must be denied. *See Beasley*, 479 F.2d at 1128.

> **B.      The anticipated testimony is not a discovery device or "end-run around" a Court order.**

Without any meaningful explanation, the government summarily states in its introduction that "the proposed subpoenas for testimony to Ryan Harris and Bradley Egenberg are being improperly used as discovery devices and a means for Motta to circumvent Judge van Meerveld's order denying early production of witness statements under the Jencks Act."[22] It then walks back this conclusory statement, later arguing as to Mr. Harris only that the purpose of subpoenaing him is a "discovery device" "to essentially depose him prior to trial"[23] and an "end-run around Judge

---

[22] R. Doc. 333-1 at 1.
[23] R. Doc. 333-1 at 13.

van Meerveld's order denying early production of Jencks Act Materials"[24] – again without meaningful explanation. The government makes no such argument as to Mr. Egenberg.[25] Contrary to the government's baseless contentions, Mr. Harris's anticipated testimony is not a "discovery device" or an "end-run around" a Court order.

First, as set forth in Ms. Motta's request for the Rule 17 subpoenas, Mr. Harris's anticipated testimony will not invite an unbridled inquiry into all trial-related issues; instead, it will be cabined to Ms. Motta's defense against the motion to admit statements, nothing more.[26] The anticipated testimony, therefore, is not an impermissible "discovery device" or "deposition,"[27] as the government contends, but material evidence in maintaining Ms. Motta's defense that she did not have the requisite intent of "ha[ving] as in mind the particular purpose of making [Mr. Garrison] unavailable" as a witness. *Giles v. California*, 554 U.S. 353, 367 (2008). So, it should be heard, not preemptively quashed. *See Beasley*, 479 F.2d at 1128.

Second, the Rule 17(a) subpoena to compel Mr. Harris's attendance does not circumvent Judge van Meerveld's order denying Ms. Motta's request for immediate disclosure of purported Jencks Act material:[28] *i.e.*, specific FBI 302 memoranda of individuals similarly situated to Ms. Motta.[29] The subpoena issued at Ms. Motta's request did not seek any documents, solely attendance.[30] Further, Ms. Motta has never contended that Mr. Harris (or Mr. Egenberg, for that matter) are "*similarly situated* individuals (e.g., plaintiff personal injury attorneys, treating physicians, secretaries, paralegals, etc.) that, like Ms. Motta, claim they were also oblivious to the

---

[24] R. Doc. 333-1 at 11.
[25] *See* R. Doc. 333- at 14-15.
[26] *See* R. Doc. 319.
[27] R. Doc. 333-1 at 13.
[28] R. Doc. 318 at 8.
[29] R. Doc. 243-1 at 13.
[30] *See* R. Doc. 319.

staged accidents."[31] Accordingly, the limited testimony sought from Mr. Harris does not run afoul of the Court's order; therefore, it should be heard, not quashed.

### C. The possibility that Mr. Harris could claim his Fifth Amendment right does not cast the whole of his anticipated testimony as "unnecessary."

While the government recognizes that "Harris does not intend to invoke his Fifth Amendment privilege if called to testify at the hearing,"[32] it simultaneously requests this Court to preemptively quash Mr. Harris's anticipated testimony due to the possibility that he could "render his testimony unnecessary"[33] by claiming his Fifth Amendment privilege.[34] But because "the better practice [for a court] in ordinary cases is to require the witness to appear [under a Rule 17(a) subpoena] and claim any privilege or immunity he may have" at the hearing, *Vaughan*, 2025 WL 77382, at *6, the chance that Mr. Harris could claim Fifth Amendment privilege is not grounds to grant a motion to quash.

In addition, the government's unsolicited advice that "[t]he most prudent thing by far for Harris or any cooperating defendant to do in this situation would be to put himself in the best possible situation at sentencing by limiting the number of times he is questioned under oath by hostile defense attorneys seeking to discredit him,"[35] does not warrant quashal, either. The government does not own or control Mr. Harris. The government is not Mr. Harris's attorney. The government's position in this instant motion – that Mr. Harris truthfully testifying at this hearing might upset the government and diminish his expected 5K reduction – could be interpreted as a veiled threat to cause Mr. Harris to invoke his Fifth Amendment right, to the extent he has not waived that right by pleading guilty to the *same exact facts*. Accordingly, this Court should not

---

[31] R. Doc. 243-1 at 13 (emphasis in original).
[32] R. Doc. 333-1 at 11.
[33] R. Doc. 333-1 at 11.
[34] *See* R. Doc. 333-1 at 8.
[35] R. Doc. 333-1 at 10-11.

quash Mr. Harris's testimony before he reaches the stand due to the possibility that he might claim a Fifth Amendment privilege.

      **D.    Because Mr. Harris's anticipated testimony would clarify the factual ambiguities identified by the parties in his factual basis, it is not cumulative, but material.**

According to its motion to admit statements, Mr. Harris's factual basis reflects Ms. Motta's specific intent to make Mr. Garrison unavailable as a witness by murder.[36] It then argues in the instant motion that Mr. Harris's testimony about his factual basis would be "cumulative"[37] of the "evidence already presented and the testimony of the lead FBI agent regarding the homicide."[38] But, considering that the government and Ms. Motta continue to highlight the ambiguities present in Mr. Harris's factual basis that the "evidence already presented" cannot resolve,[39] Mr. Harris's direct testimony would not be cumulative.

For example, the parties' advance conflicting interpretations of a certain representation in Mr. Harris's factual basis, which the government relies in support of its motion to admit statements: "Alfortish, Motta, and Parker commented to HARRIS that Garrison was a 'rat' and a 'snitch' and that it would be better if Garrison were dead."[40] It is Ms. Motta's plain understanding of that statement that Mr. Harris asserted *under oath* that there was a joint meeting attended by Ms. Motta, Mr. Harris, Mr. Alfortish, and Mr. Parker, where those parties made statements that Mr. Garrison was a rat who was better off dead. And the government, for its part, tacitly acknowledge the possibility that the comments were "not necessarily [made] at the same time,"[41] but presumably could have been. But now, for the first time, the government is taking the position

---

[36] *See* R. Docs. 227-1 at 21-22; 262 at 8.
[37] R. Doc. 333-1 at 11.
[38] R. Doc. 333-1 at 11.
[39] *See* R. Docs. 262 at 8, 333-1 at 10.
[40] R. Doc. 184 at 4.
[41] R. Doc. 333-1 at 10 n.3

that this statement really means that "Motta had commented to Harris at some point later on" that Garrison was a rat who was better off dead.[42] At best, Mr. Harris' factual basis is confused. At worst, it is intentionally false or misleading. In either case, this ambiguity illustrates the need to call Mr. Harris as a witness at this hearing.

Mr. Harris's anticipated testimony will clarify the correctness of these competing interpretations, and this Court can judge Mr. Harris's credibility in person, instead of by the "evidence already presented" – *i.e.*, the four corners of the factual basis drafted by the government on his behalf in connection with him securing a plea deal and the corresponding minute entry. Whether Ms. Motta ever met with Mr. Harris, Mr. Alfortish, and Mr. Parker together (or as the government now claims "at some point later on") and made comments about Mr. Garrison's cooperation is directly relevant to Ms. Motta's defense that she did not have the requisite intent to make Mr. Garrison unavailable as a witness by murdering him. Therefore, this anticipated testimony is not unnecessary or cumulative, but new and material. It should be heard, not quashed. *See Beasley*, 479 F.2d 1128 (observing that Rule 17(a) subpoenas may issue when a defendant seeks testimony that is material to the issue being litigated).

**E.     Because Mr. Egenberg's anticipated testimony would clarify the purpose of his representation and dispute the government's allegation that it was to make Mr. Garrison unavailable for a deposition, it is necessary and material.**

According to the government's motion to admit statements, Ms. Motta securing Mr. Egenberg as independent counsel for Mr. Garrison in connection with a civil deposition reflects Ms. Motta's specific intent to make Mr. Garrison unavailable as a witness by murder.[43] It then argues in the instant motion that Mr. Egenberg's anticipated testimony is not "necessary"[44] because

---

[42] R. Doc. 333-1 at 12.
[43] *See* R. Docs. 227-1 at 21-22; 262 at 8.
[44] R. Doc. 333-1 at 14. It is possible that the government attempts to argue that "[t]he direct Alfortish-Motta connection," R. Doc. 333-1 at 15, usurps the need for Mr. Egenberg's testimony. Yet, as set forth more fully in Ms.

-13-

a recording of Ms. Motta purportedly telling Mr. Garrison that Mr. Egenberg "knows about the 'construction with Sean'" exists.[45] However, a recording of a conversation between Ms. Motta and Mr. Garrison about what they thought Mr. Egenberg purportedly knew cannot circumvent the relevance and materiality of Mr. Egenberg's live and clarifying testimony concerning his representation. For example, the recording cannot definitively establish whether Mr. Egenberg knew about an alleged (and nonexistent) "cover story" to protect the conspiracy.[46] Nor can it establish whether Mr. Egenberg's purpose in representing Mr. Garrison was to carry out Ms. Motta's purported intent "that Garrison would not be deposed or, at a minimum, the deposition would not be at the federal court."[47]

Mr. Egenberg's anticipated testimony will clarify the statements allegedly made in the recording and the purpose of his representation, and this Court can judge Mr. Egenberg's credibility in person, instead of by the "evidence already presented" – *i.e.*, one recorded statement. Therefore, this anticipated testimony is not unnecessary or cumulative, but new and material. It should be heard, not quashed. *See Beasley*, 479 F.2d 1128.

## IV. CONCLUSION

The government's motion to quash is procedurally infirm: the text of Rule 17 does not contemplate a motion to quash a Rule 17(a) subpoena and, even if it did, the government lacks standing to move to quash the subpoenas issued to Mr. Harris and Mr. Egenberg. Moreover, the government's motion to quash lacks merit: consistent with the Rule 17(a) standard, Mr. Harris's and Mr. Egenberg's anticipated and clarifying testimony is relevant and material to Ms. Motta's

---

Motta's opposition to the government's motion to admit statements, the mere existence of her former relationship with Mr. Alfortish does not establish Ms. Motta's purported intent to make Mr. Garrison unavailable as a witness by murder. R. Doc. 333-1 at 15.

[45] R. Doc. 333-1 at 15.
[46] R. Doc. 333-1 at 15.
[47] R. Doc. 333-1 at 12.

defense against the government's motion to admit statements – a defense she has a constitutional right to present (despite the government's attempt to curtail it) – namely, that she lacked the requisite intent to make Mr. Garrison unavailable as a witness. *See Beasley*, 479 F.2d 1128. It is not a "discovery device" or "end-run around" a Court order. And it should not be excluded simply because the government intends to rely on its "already presented" evidence. Considering the above, the government's motion to quash must be denied.

What's more, denial of the government's motion to quash does not leave the government without recourse for its sought-after relief of quashing testimony. That's because, as opposed to preemptively quashing the witness's testimony, "the better practice in ordinary cases is to require the witness to appear and claim any privilege or immunity he may have," *Vaughan*, 2025 WL 77382, at *6. Any disagreement as to the testimony's relevance and materiality can be addressed in real time at the hearing on the motion to admit statements. For this additional reason, Ms. Motta's Rule 17(a) subpoenas to compel Mr. Harris's and Mr. Egenberg's attendance must not be quashed, and the government's motion must be denied.

Respectfully submitted,

*/s/ Sean M. Toomey*
Sean M. Toomey (La. Bar #36055)
Hancock Whitney Center
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
Email: stoomey@liskow.com

**Attorney for Defendants Vanessa Motta and Motta Law, LLC**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 9th day of July, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

*/s/ Sean M. Toomey*