UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 24-105** |
| **v.** | * | **SECTION: "D"(1)** |
| **RYAN HARRIS,** *et al.* | * | |

\*   \*   \*

**GOVERNMENT'S RESPONSE CONCERNING SPECIFIC TRIAL RIGHTS**

The United States of America, through the undersigned attorneys, hereby submits this supplemental brief as ordered by the Court on July 17, 2025. Rec. Doc. 352. In sum, speedy trial rights have been a basis for severance only in unique circumstances that are not present here.

**I.    Courts have cited defendants' speedy trial rights when considering whether to grant motions to sever only in unique circumstances.**

"The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.'" *United States v. George*, No. 17-201, 2019 WL 4194526, at *12 (E.D. La. Sept. 4, 2019) (Africk, J.) (quoting U.S. Const. amend. VI). "While this constitutional right cannot be quantified into a specific number of days or months, the Supreme Court has established a four-factor balancing test to evaluate a defendant's constitutional speedy trial claim. *Id.* (citing *Vermont v. Brillon*, 556 U.S. 81, 89 (2009)). "These factors are: the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *Id.* (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). "The first factor, the length of the delay, serves as a 'screening device' for a full speedy trial analysis under *Barker*." *Id.* (citing *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011)). "'If the delay reaches the threshold level of one year, it is 'presumptively prejudicial' and requires the court to engage in the speedy trial analysis, balancing the remaining [*Barker*] factors.'" *Id.* (quoting

*United States v. Cardona*, 302 F.3d 494, 497 (5th Cir. 2002)). "'[T]he presumption that pretrial delay has prejudiced the accused intensifies over time.'" *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 652 (1992)).

"To overcome the presumption of prejudice, the government must show 'that the presumption is extenuated . . . or rebut[ ] the presumption with evidence.'" *Id.* (quoting *United States v. Frye*, 489 F.3d 201, 209 (5th Cir. 2007)). "If the *Barker* factors 'do not weigh so heavily as to justify a presumption of prejudice, then the defendant bears the burden of both establishing actual prejudice and demonstrating that such prejudice is sufficient to outweigh the other three factors.'" *Id.* (quoting *Frye*, 489 F.3d at 209). "With respect to the prejudice factor, the Supreme Court has identified three interests that the Sixth Amendment was designed to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Id.* (quoting *Barker*, 407 U.S. at 532).

"Under the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, which protects the constitutional right to a speedy trial, a defendant's trial must commence within seventy days of his indictment or initial appearance, whichever is later. *Id.* (citing 18 U.S.C. § 3161(c)(1)). "Section 3161(h) provides for exclusions from the time calculation within which trial must commence." *Id.* "Such exclusions include continuances granted by the court for the 'ends of justice' and delays attributable to a codefendant for whom the time for trial has not run and no motion for severance has been granted." *Id.* (citing *United States v. Stephens*, 489 F.3d 647, 652 (5th Cir. 2007)). "Delays under the Speedy Trial Act are subject to a 'reasonableness inquiry,' which examines both the 'totality of the circumstances of the case prior to trial' and the 'actual prejudice suffered by the [defendant] as a result of the [Section 3161(h)(7)] exclusion.'" *Id.* (quoting *United States*

*v. Bieganowski*, 313 F.3d 264, 283 (5th Cir. 2002)). "Such prejudice may include excessive pretrial incarceration or impairment of the defendant's ability to defend himself.'" *Id.* (quoting *Bieganowski*, 313 F.3d at 283). "In a case with codefendants, courts must weigh these considerations against the 'efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'" *Id.* (quoting *Bieganowski*, 313 F.3d at 283).

In *George*, Judge Africk granted severance for a non-capital defendant (Esteves) in a case involving murder resulting from an armored car robbery. *Id.* at *13-14. Three of Esteves's codefendants were capital-eligible and had received trial continuances "to conduct their mitigation investigations and gather evidence for the penalty phase of the proceedings." *Id.* at *13. Meanwhile, non-capital defendant Esteves was detained pending trial. *Id.* If Esteves's case had continued to be joined with the capital-eligible codefendants, his pretrial detention could have lasted a total of up to 34 months. *Id.* Judge Africk found that, because there was a serious risk that continued joinder would compromise both Esteves's statutory and constitutional speedy trial rights, his case should be severed from those of his capital-eligible codefendants. *Id.* at *13-14; *see also United States v. Peltier*, No. 18-00036-08-CR-W-BCW, 2020 WL 6065555, at *6-7 (W.D. Mo. Oct. 14, 2020) (similarly granting severance for incarcerated non-capital defendant from capital-eligible codefendants); *United States v. Byrd*, 466 F. Supp. 2d 550, 553 (S.D.N.Y. 2006) (same).[1]

The upshot of Judge Africk's decision in *George* to this case is that a defendant's statutory and constitutional speedy trial rights may be the types of "specific trial rights" the compromise of which could support severance under Rule 14. However, in Motta's case, where

---

[1] As the Court is aware, the government does not intend to seek the death penalty against Alfortish and Parker. Rec. Doc. 330. Thus, the capital-specific concerns in the above-cited cases are not present here.

3

she would simply prefer to go to trial earlier, is very different. Unlike the defendant in *George*, Motta is not incarcerated and can assist with the preparation of her defense. Moreover, although certain allegations in the indictment occurred as far back as 2011, the December 2024 indictment against Motta was returned less than one year ago, and Motta has not demonstrated any risk that witnesses' memories will fade or evidence will be lost if her codefendants are granted a continuance. Motta has repeatedly cited the "financial ruin" she faces because she can no longer work as an attorney, as well as the burden of raising two young children, "including one with life-threatening illnesses." *See* Rec. Doc. 325, p. 2 (Motta's Opposition to Alfortish and Parker's Motion to Continue Trial). The government has reasons to question the veracity of these claims.[2] But, even accepting them as true, the government has not located any case where an unincarcerated defendant's potential financial ruin because they cannot pursue their chosen profession was the basis of a severance or findings under the Speedy Trial Act.[3]

## II. Courts have cited defendants' rights to effective assistance of counsel, even if indirectly, when considering whether to grant motions to sever.

The government has not located any Fifth Circuit case that has explicitly recognized a defendant's Sixth Amendment right to effective assistance of counsel when granting a severance. However, such a finding is implicit in a case like *George*, where the capital-eligible defendants required more time to effectively represent their clients on capital-specific issues. *See George*,

---

[2] For example, recently-obtained casino records show that Motta has gambled thousands of dollars at a casino, including after she was indicted in this case.

[3] The government has expressed its disagreement with Motta's prediction that "'the evidence introduced at this trial will be largely merely witness testimony.'" Rec. Doc. 332, p. 1 (quoting Rec. Doc. 325, p. 1). As the government explained, "The trial in this case will certainly involve witness testimony, but also numerous exhibits, to include bank records, court filings, emails, notes, video and audio recordings, and other records." Rec. Doc. 332, p. 1. In other words, the trial will "likely be document-heavy." Rec. Doc. 332, p. 2. The government is concerned that Motta is rushing to trial without taking the necessary steps to prepare—for example, the government understands that, despite the voluminous discovery and numerous allegations against her, Motta does not have an electronic discovery platform.

2019 WL 4194526, at *13-14. Outside the Fifth Circuit, courts have granted severances where, for various reasons, certain defendants required more time to prepare for trial than others. *See, e.g.*, *United States v. Poulsen*, No. CR2-06-129, 2008 WL 77745, at *1-2 (S.D. Ohio Jan. 4, 2008) (severing defendant who was added to indictment 14 months after codefendants and whose attorney died two days after initial appearance); *United States v. Ailsworth*, 873 F. Supp. 1450, 1456 (D. Kan. 1994) (severing defendant who changed counsel shortly before one-month trial of codefendants). Although the courts in those cases did not tie their findings specifically to the Sixth Amendment right to effective assistance of counsel, it is not difficult to see how the same rationale would apply in that context.

     In this case, although Alfortish and Parker have not moved for severance, they have argued that, based on the voluminous discovery, they require more time to prepare for trial. Rec. Doc. 323. Counsels' request for more time to prepare is understandable. The government's position is that all defendants should continue to be joined and, if the Court is concerned about Alfortish's and Parker's time to prepare, the trial date for all defendants should be continued. However, in the event the Court is inclined to sever and continue Alfortish's and Parker's cases, it should also sever and continue Motta's and keep her case with theirs. The evidence against Motta, Alfortish, and Parker will be duplicative if they are tried separately. Most significantly, the government will present evidence that Motta was present for at least one meeting where Alfortish spoke to Harris about murdering Cornelius Garrison to prevent Garrison from cooperating against them. That evidence would be relevant even in a separate trial of Motta.

        Respectfully submitted,

        MICHAEL M. SIMPSON
        ACTING UNITED STATES ATTORNEY

        /s/ *Matthew R. Payne*
        MATTHEW R. PAYNE
        BRIAN M. KLEBBA
        MARY KATHERINE KAUFMAN
        Assistant United States Attorneys
        J. RYAN McLAREN
        Trial Attorney

## CERTIFICATE OF SERVICE

      I hereby certify that on July 20, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

        /s/ *Matthew R. Payne*
        MATTHEW R. PAYNE
        Assistant U.S. Attorney