# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 24-105** |
| **v.** | * | **SECTION: "D"(1)** |
| | | **(Counts 1-10)** |
| **RYAN HARRIS,** *et al.* | * | |

*    *    *

## MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTIONS *IN LIMINE*

The United States of America, through the undersigned attorneys, hereby seeks to exclude certain evidence and argument from the upcoming fraud trial in March 2026. Many of these requests are standard for trials in this district. Others are based on facts specific to this case, including the admissibility of certain testimony from insurance defense attorneys who defended against the defendants' fraudulent lawsuits. For the reasons below, the government's motion should be granted.

## FACTS AND PROCEDURAL BACKGROUND

The defendants are charged in the third superseding indictment with various offenses related to their participation in a broad scheme to intentionally stage collisions with 18-wheeler tractor-trailers and file fraudulent lawsuits based on the staged collisions. Rec. Doc. 517. The Court gave a detailed summary of the allegations in this case in its order granting in part and denying in part the defendants' motions for severance. Rec. Doc. 357.[1] In its order, the Court severed the counts related to Cornelius Garrison's murder from the counts related to the defendants' conspiracy to commit mail and wire fraud, as well as counts related to obstruction of justice, witness tampering, and making false statements to the FBI. Rec. Doc. 357. The fraud

---

[1] Additionally, the government provided a detailed summary of the staged collisions that resulted in fraudulent lawsuits handled by defendant Vanessa Motta in a recent motion to preclude Motta from using an advice of counsel defense at trial. Rec. Doc. 558.

trial against all defendants is currently scheduled to begin on March 2, 2026, and the homicide

trial against Sean D. Alfortish and Leon M. Parker is scheduled to begin on August 10, 2026.

Rec. Docs. 405, 426. The government has suggested that the two additional counts for

obstruction of justice and subornation of perjury (Counts 16 and 17) be tried during the August

2026 homicide trial, although evidence related to those counts would be introduced as relevant

evidence during the March 2026 fraud trial. This motion *in limine* applies solely to the March

2026 fraud trial.

## <u>LAW AND ARGUMENT</u>

I.    **Standard motions *in limine*.**

    a.    **Evidence and argument related to possible punishment or hardship the
defendants face if they are convicted should be excluded.**

"It is well-established that 'the jury [has] no sentencing function and should reach its

verdict without regard to what sentence might be imposed.'" *United States v. Crinel*, No. 15-61,

2016 WL 6441249, at *5 (E.D. La. Nov. 1, 2016) (Morgan, J.) (quoting *Rogers v. United States*,

422 U.S. 35, 40 (1975)) (brackets in original). "'The principle that juries are not to consider the

consequences of their verdicts is a reflection of the basic division of labor in our legal system

between judge and jury.'" *Id.* (quoting *Shannon v. United States*, 512 U.S. 573, 579 (1994)).

"'Information regarding the consequence of a verdict is therefore irrelevant to the jury's task.'"

*Id.* (quoting *Shannon*, 512 U.S. at 579); *see also* Fifth Circuit Pattern Jury Instructions (Criminal)

§ 1.22 (2024) ("If a defendant is found guilty, it will be my duty to decide what the punishment

will be. You should not be concerned with punishment in any way. It should not enter your

consideration or discussion.").

    For these reasons, courts have excluded references not only to any potential sentences

defendants could receive, but also to other personal hardships that could result from a criminal

conviction. *See Crinel*, 2016 WL 6441249, at *6 ("It is ordered that the government's motion *in limine* to exclude the Defendants from informing the jury of potential penalties they face or the hardships that their convictions may place upon their families or third parties is granted."); *United States v. Zuniga-Quezada*, No. 09-102, 2010 WL 152099, at *1 (E.D. La. Jan. 13, 2010) (Berrigan, J.) ("[T]he defense and its witnesses may not *in any way* reference or allude to the possibility that the defendant may be deported, or that he might be separated from his son, as a consequence of a conviction. The consequences of a conviction, just like the sentence to be imposed, are of no concern to the jury.") (emphasis in original).

Here, the defendants should be prohibited from introducing evidence or argument concerning punishment or hardships they face if they are convicted. Such argument and evidence invites jury nullification, and, thus, it should be excluded. *See United States v. Melton*, No. 3:08cr107-DPJ-LRA, 2008 WL 4829893, at *2 (S.D. Miss. Nov. 4, 2008) ("The Fifth Circuit Court of Appeals has 'categorically reject[ed] the idea that . . . jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent [it.]") (quoting *United States v. Thompson*, No. 99-41007, 253 F.3d 700, 2001 WL 498430, at *16 (5th Cir. 2001) (unpublished)) (brackets and ellipsis in original); *id.* ("Accordingly, '[a] trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification[.]'") (quoting *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993)) (brackets and ellipsis in original).

**b.    Evidence and argument suggesting civil or administrative punishment would be more appropriate than criminal prosecution should be excluded.**

Similar to evidence and argument related to possible punishment or hardship, evidence and argument concerning the possibility of civil and administrative actions have also been excluded because they invite jury nullification. *See United States v. Nicholson*, No. 2:18-CR-23-

KS-MTP, 2019 WL 339449, at *1 (S.D. Miss. Jan. 28, 2019) ("[T]he Court agrees with the government that the possibility of a civil, rather than criminal, action against Defendant is irrelevant to the charged offenses. . . . [T]he Court generally grants the government's motion as to any evidence or argument regarding the possibility of a civil, rather than criminal, enforcement action—with the caveat that Defendant is free to argue at trial that the government has opened the door."); *United States v. Chen*, No. 17-cr-00603-BLF-1, 2021 WL 2662116, at *5 (N.D. Cal. June 29, 2021) ("The Court finds that arguing that this should have been a civil matter is essentially arguing for nullification. Accordingly, the Court grants the motion to exclude evidence or argument that this should have been a civil case.").

In this case, it is possible that the defendants, particularly the attorneys and law firms, will face civil and administrative penalties even if they are not convicted. The defendants should not be permitted to argue that those civil and administrative penalties, including suspension of their law licenses or permanent disbarment, would be a more appropriate outcome than a criminal conviction. Because such evidence and argument invite jury nullification, they should be excluded. *See Thompson*, 2001 WL 498430, at *2; *Nicholson*, 2019 WL 339449, at *1; *Chen*, 2021 WL 2662116, at *5.

c.    **Evidence and argument related to specific instances of "good deeds" and "law-abidingness" should be excluded.**

"Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." *United States v. Ylda*, 643 F.2d 348, 352 (5th Cir. 1981). However, "[a]n accused may offer evidence of a pertinent character trait to prove action in conformity with that trait." *United States v. Hudson*, No. 09-171, 2011 WL 5331701, at *1 (E.D. La. Nov. 7, 2011) (Vance, J.) (citing Fed. R. Evid. 404(a)(1)). "A pertinent character trait is one that is relevant to the offense charged." *Id.* (quoting *United States v. John*, 309 F.3d 298, 303 (5th Cir. 2002))

(brackets omitted). "When evidence of a pertinent character trait is offered, it must be in the form of either reputation or opinion testimony." *Id.* (citing Fed. R. Evid. 405(a)). "Specific instances of conduct are not permitted unless the pertinent character trait is an essential element of a charge, claim, or defense." *Id.* (citing Fed. R. Evid. 405(b)); *see also United States v. Crinel*, No. 15-61, 2016 WL 5363091, at *2-3 (E.D. La. Sept. 26, 2016) (Morgan, J.) (collecting cases).

In cases involving crimes of dishonesty, courts have held that evidence related to specific instances of "good deeds" or "law-abidingness" was inadmissible. For example, in *United States v. Marrero*, 904 F.2d 251 (5th Cir. 1990), the defendant was a psychologist who was charged with making false insurance claims to an agency of the United States and theft of government property. *Marrero*, 904 F.2d at 254-56. At trial, the defendant "sought to prove that her good character was inconsistent with criminal intent by introducing evidence of specific acts of good character," specifically "evidence which showed that she provided more services to some clients than they were actually billed for and that sometimes she rendered services free of charge." *Id.* at 259-60. The defendant argued the evidence was admissible because it "was essential to her defense of lack of motive or intent." *Id.* at 260. The Fifth Circuit disagreed, stating that the defendant's character "was simply not an essential element of the charges against her." *Id.* Further, with respect to the defendant's arguments that she lacked intent and motive, she "sought at trial to use specific acts circumstantially to prove lack of intent." *Id.* "Such a tactic is not only disfavored, it is not permitted under Rule 405(b)." *Id.* As the Fifth Circuit held, "The fact that Marrero did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment." *Id.*

Similarly, in *United States v. Kahn*, 768 F. App'x 266 (5th Cir. 2019), the defendant was charged with conspiracy to commit health care fraud and conspiracy to receive health care

kickbacks. *Kahn*, 768 F. App'x at 267. The defendant argued "that he should have been allowed to introduce specific-act evidence to prove his law-abiding character and to demonstrate he did not act with the necessary criminal intent for the charged offenses." *Id.* at 270. However, as the defendant conceded, "controlling precedent preclude[d] his claim," because his "character was not an essential element of the charges against him." *Id.* (citing *Marrero*, 904 F.2d at 260); *see also Crinel*, 2016 WL 5363091, at *2 (in health care fraud prosecution, excluding specific instances of conduct, such as "the admission of worthy patients into home health care, evidence of Defendants' certification of home care services at other businesses, evidence of specific instances of uncharged proper Medicare billing, and evidence of community service or other good works such as charitable donations, the provision of free or low-cost medical services, the payment of tithes to religious organizations, charity work, admirable family life, or other evidence of their standing in the community"); *United States v. Nagin*, No. 13-11, 2013 WL 5532516, at *1 (E.D. La. Oct. 4, 2013) (Berrigan, J.) (in wire fraud prosecution, stating, "The Court also disagrees that there is a relevant issue whether the defendant ever provided honest services 'during his tenure' as mayor, as argued by the defense.").

This Court should follow the Fifth Circuit's rulings in *Marrero* and *Kahn* and exclude evidence and argument that the defendants committed "good deeds," including volunteer or charity work by the defendants and their law firms or specific "legitimate" cases that resulted in large damages awards for their clients. *See Marrero*, 904 F.2d at 260; *Kahn*, 768 F. App'x at 270.

### d.   The defendants may not elicit testimony about their own hearsay statements to witnesses or other third parties.

"The hearsay rule, Fed. Rule Evid. 802, is premised on the theory that out-of-court statements are subject to particular hazards." *Williamson v. United States*, 512 U.S. 594, 599

(1994). "The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; [and] his words might be misunderstood or taken out of context by the listener." *Id.* While the Federal Rules of Evidence recognize that some types of out-of-court statements are "less subject to these hearsay dangers, and therefore exempt them from the general rule that hearsay is inadmissible . . . [s]elf-exculpatory statements are exactly the ones which people are most likely to make even when they are false," and are thus not excepted from Rule 802's prohibition against hearsay. *Id.* at 599-600; *see also United States v. Hale*, 685 F.3d 522, 540 (5th Cir. 2012) (holding out-of-court statements by the defendant's father that directed potential liability away from the defendant's father and toward the defendant and a known drug dealer were inadmissible).

Further, the fact that a defendant made self-serving exculpatory statements during an interview in which the defendant also made self-inculpatory statements does not support the admission of self-serving exculpatory statements, because "proximity to other, self inculpatory, statements does not increase the plausibility of the self exculpatory statements." *Williamson*, 512 U.S. at 600. For these reasons, courts have held that the hearsay rule prohibits defendants from attempting to "place [their own] exculpatory statements before the jury" by eliciting testimony about their own prior statements from other witnesses. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (holding exculpatory statements were inadmissible hearsay, and that rule of completeness did not require admission of oral hearsay statements to law enforcement because Federal Rule of Evidence 106 does not apply to oral statements or require admission of hearsay portions of written statements); *see also United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014) (holding the district court correctly rejected "a party's attempt to introduce his or her own statements through the testimony of other witnesses" as inadmissible hearsay); *United*

*States v. Wilkerson*, 84 F.3d 692, 697 (4th Cir. 1996) ("The Rules do not . . . provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party."). "Indeed, if such statements were deemed admissible . . . parties could effectuate an end run around the adversarial process by, in effect, testifying without swearing an oath, facing cross examination, or being subjected to first hand scrutiny by the jury." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).[2]

Accordingly, the Court should prohibit the defendants from attempting to elicit or admit at trial their own self-serving statements made to law enforcement agents, government investigators, or other witnesses.

**e.     The defendants may not use interview reports prepared by law enforcement agents to impeach government witnesses.**

By the time the trial begins, the government will have produced interview reports prepared by law enforcement agents to the defendants pursuant to the Jencks Act deadline in the scheduling order. The defendants should be precluded from introducing interview reports to impeach a witness as a prior inconsistent statement, because the interview reports are not the statements of the witness. The reports are the statements of their authors (the investigators), not of the interviewees themselves. The government also requests that this Court preclude the

---

[2] This prohibition does not apply to statements by the defendants that will be introduced by the government, as those statements are by party opponents. *See* Fed. R. Evid. 801(d)(2). Further, the prohibition does not apply to statements by third parties that are offered to place the defendants' statements in context. For example, the government may introduce emails between certain defendants and other witnesses who will not be testifying. While the witnesses' statements will not be offered for the truth of the matter asserted, their statements are nonetheless admissible to place the defendants' responses in context. *See United States v. Rios*, 298 F. App'x 312, 313-14 (5th Cir. 2008) (holding that "the statements of the confidential informant on the recording and transcript were admitted to provide context to Rios's statements, were not admitted to prove the truth of the matters asserted therein, and did not violate the Confrontation Clause or the hearsay rule."); *United States v. Stevens*, 778 F. Supp. 2d 683, 701 (W.D. La. 2011) ("Typically, statements that are 'part of a reciprocal and integrated conversation' with a defendant are not hearsay because they are not offered for their truth.") (citations omitted).

defendants from publishing the contents of the interview reports to the jury or otherwise suggesting to the jury that the interview report is a statement of the witness.

It is well-settled that interview reports are not prior statements of a witness unless they contain a verbatim recital of the witness's statement or are signed or otherwise adopted by the witness, neither of which occurred in this case. *See Palermo v. United States*, 360 U.S. 343, 349-52 (1959); *Goldberg v. United States*, 425 U.S. 94, 110 n. 19 (1976); *United States v. Merida*, 765 F.2d 1205, 1215 (5th Cir. 1985) (holding that interview reports were not statements of the witness subject to the Jencks Act because they did not contain any "substantially verbatim recital of an oral statement," and were not "signed or otherwise adopted by the witness") (citing *Goldberg*, 425 U.S. at 94). As a result, courts have also held that such interview reports may not be used to impeach that witness "unless the witness has subscribed to or otherwise adopted the statement as his own." *United States v. Saget*, 991 F.2d 702, 710-11 (11th Cir. 1993); *see also United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it"). As the Supreme Court emphasized in *Palermo*, it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations." *Palermo*, 360 U.S. at 350.

The defendants are, of course, free to ask witnesses whether they made statements that are reflected in interview reports. The government, however, requests that the Court enter an

order precluding the defendants from publishing or introducing the contents of interview reports as prior inconsistent statements if they are not satisfied with the witnesses' answers.

> **f.    Evidence and argument suggesting selective prosecution should be excluded.**

"In our criminal justice system, the government retains broad discretion to prosecute individuals." *United States v. Sterling*, No. 20-00052-BAJ-RLB, 2021 WL 3271596, at *4 (M.D. La. July 29, 2021) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)). "'[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)) (brackets in original). "Therefore, a selective prosecution claim is not a defense on the merits to the criminal charge, but instead, an independent claim that the prosecutor brought a charge for reasons forbidden by the Constitution." *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 463 (1996)). "A motion to dismiss is the proper vehicle for raising a claim of selective prosecution." *Id.*

"Courts have consistently excluded evidence and argument by defendants seeking to attack the prosecution's motives in initiating prosecution." *United States v. Cleveland*, No. 96-207, 1997 WL 253124, at *2 (E.D. La. May 14, 1997) (Vance, J.) (collecting cases); *see also Crinel*, 2016 WL 6441249, at *14-15 (excluding evidence and argument suggesting selective prosecution); *United States v. Impastato*, No. 05-325, 2007 WL 2463310, at *5 (E.D. La. Aug. 28, 2007) (Duval, J.) (same); *United States v. Starks*, No. 2:10-CR-0160-SA-JMV, 2012 WL 12878587, at *1 (N.D. Miss. July 20, 2012) (same); *United States v. Fontenot*, No. 10-65-JJB, 2010 WL 4056194, at *1 (M.D. La. Oct. 14, 2010) ("The United States correctly asserts that

charges of selective prosecution are matters for the court and should not be mentioned in the presence of the jury.").

Courts have extended these restrictions to evidence and argument suggesting that the defendant was "persecuted" or "singled out," *see United States v. Smith*, No. 3:14-CR-99-JHMCHL, 2016 WL 589890, at *6 (W.D. Ky. Feb. 11, 2016); *United States v. Barreiro*, No. 13-CR-00636-LHK, 2015 WL 7734139, at *1 (N.D. Cal. Dec. 1, 2015), or that others engaged in the same conduct as the defendant but were not charged. *See Impastato*, 2007 WL 2463310, at *5; *United States v. Auzenne*, No. 2:19-CR-53-KS-MTP, 2020 WL 6438665, at *2 (S.D. Miss. Nov. 2, 2020) ("The Fifth Circuit has held that a trial court has discretion to prohibit a defendant's attorney from comparing his client's conduct 'with that of uncharged or immunized witnesses,' because the purpose of such arguments is to encourage nullification and 'tempt jurors to violate their oaths.'") (quoting *Thompson*, 2001 WL 498430, at *16.)

Here, the defendants should be precluded from claiming that they were "singled out" for prosecution, including claims that other attorneys paid illegal runners but were not charged in this case. Such argument at trial would improperly suggest selective prosecution and potentially confuse the jury. As such, it should be excluded. *See Thompson*, 253, 2001 WL 498430, at *16; *Impastato*, 2007 WL 2463310, at *5; *Smith*, 2016 WL 589890, at *6; *Barreiro*, 2015 WL 7734139, at *1; *Auzenne*, 2020 WL 6438665, at *2.

## II.    Motions *in limine* based on facts specific to this case.

### a.    The government should be permitted to ask "what-if-you-had-known" questions to witnesses.

The government anticipates that it will call as witnesses representatives of the victim insurance, trucking, and transportation companies, including, primarily, insurance defense attorneys who litigated against the defendants' fraudulent lawsuits. In addition to questioning

these witnesses about their experiences defending against the fraudulent lawsuits, the government intends to question the witnesses about information the defendants intentionally concealed from them and then inquire if they would have acted any differently if they had known about the concealed information. For example, in its motion to preclude Motta from arguing an advice of counsel defense, the government described multiple instances when Motta failed to disclose to her opposing counsel and the Court that she and Alfortish paid Garrison thousands of dollars in exchange for Garrison's bringing them passengers from staged collisions. *See* Rec. Doc. 558. The government expects that the insurance defense attorneys will testify that they did not know about Motta and Alfortish's payments to Garrison and that, if they had known, they would have behaved differently during the lawsuits, including by advising their clients not to agree to settlements with the passengers.

These types of "what-if-you-had-known" questions are common in fraud cases, and, accordingly, courts routinely permit them. For example, in *United States v. Hill*, 643 F.3d 807 (11th Cir. 2011), the Eleventh Circuit affirmed the district court's "permitting the witnesses who had personally dealt with the fraudulent loan transactions at issue to respond to the government's questions about what would have happened if the facts had been different." *Hill*, 643 F.3d at 842. Similarly, in *United States v. Jennings*, 487 F.3d 564 (8th Cir. 2007), the Eighth Circuit held that, when a defendant is charged with a crime that has materiality as an element, "The government would be hard pressed to prove this element without asking whether the undisclosed information would have affected the decision maker's analysis." *Jennings*, 487 F.3d at 582. And, in *United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013), the Second Circuit held, "[A] witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior." *Cuti*, 720 F.3d at 459; *see also*

*id.* ("As this case illustrates, 'what-if-you-had-known' questions that present withheld facts to a witness are especially useful to elicit testimony about the impact of fraud. Although we have not addressed the issue squarely, other circuits have permitted the use of hypothetical questions to inquire into the effect of a fraud.") (collecting cases).

Defendants sometimes object to these questions based on the general rule that only experts can answer hypothetical questions. However, to the extent answers to "what-if-you-had-known" questions to fact witnesses in fraud cases are hypotheticals at all, they are based on the witnesses' firsthand experiences with the people and events in the case. In other words, they do not require any scientific, technical, or other specialized knowledge. *See Hill*, 643 F.3d at 842 ("Most of the lay witnesses who answered hypothetical questions in this case did not do so based on any 'scientific, technical or other specialized knowledge,' but instead based their testimony on their personal experiences as officers of financial institutions with knowledge of their companies' policies and of the specific transactions at issue."); *see also id.* ("[I]t does not take any specialized or technical knowledge to realize that lending institutions would be reluctant to approve a loan application if they knew that it contained false statements about material facts."). The government's "what-if-you-had-known" questions to witnesses such as the insurance defense attorneys should be admitted.

> **b.    The government should be permitted to elicit lay opinion testimony from witnesses who work on personal injury cases.**

The government also plans to question witnesses, primarily attorneys who worked on cases as co-counsel with the defendants or opposing the defendants, about how personal injury cases work and the context in which they litigated the fraudulent lawsuits, including the professional rules that apply to personal injury attorneys and the strategic decisions they make when litigating cases. The government does not intend to elicit technical or sophisticated

testimony from these witnesses, nor does it intend for these witnesses to opine in the abstract about whether the defendants' conduct conformed with best practices. Rather, the witnesses will be speaking from experience and drawing common sense conclusions based on their day-to-day work as attorneys and their interactions with the defendants.

This type of boots-on-the-ground testimony from witnesses who interacted with the defendants is admissible as lay testimony. Under Federal Rule of Evidence 701, "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [governing the admission of expert testimony]." Fed. R. Evid. 701. Admissible lay opinion "must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury." *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997) (quotation marks omitted). "[T]he modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Id.* at 429.

The Fifth Circuit has "allowed lay witnesses to express opinions that required specialized knowledge," particularly when "[n]o great leap of logic or expertise was necessary." *Id.* at 428; *see Sanjar*, 876 F.3d at 738 ("[E]ven if such testimony requires some specialized knowledge, it is admissible so long as the lay witness offers straightforward conclusions from observations informed by his or her experience."). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Ebron*, 683 F.3d 105, 136-37 (5th Cir. 2012) (quotation marks and

brackets omitted). "[A]n officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert." *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003).

The Fifth Circuit has routinely approved lay opinion testimony based on a witness's training and experience, including testimony from the former chief risk officer for a natural gas trading company, *see United States v. Valencia*, 600 F.3d 389, 413-16 (5th Cir. 2010); a health care fraud investigator, *see United States v. Chikere*, 751 F. App'x 456, 460 (5th Cir. 2018); a special investigator at a prison, *see United States v. Jackson*, 549 F.3d 963, 975 (5th Cir. 2008); the vice president of a research foundation, *see Texas A&M Research Found.*, 338 F.3d at 403; a corporate claims manager, *see Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 551-52 (5th Cir. 2005); and a janitor. *See Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 330 n.1 (5th Cir. 2017) ("We conclude that a janitor with fifteen years' experience is competent to testify about the effectiveness of cleaning products and methods.").

For example, in *Valencia*, the Fifth Circuit approved the admission of lay opinion testimony from the former chief risk officer for a natural gas trading company. *Valencia*, 600 F.3d at 413-16. During his testimony, the risk officer "recreated much of the analysis he regularly performed when evaluating risk tolerances." *Id.* Because the risk officer's "knowledge and analysis were derived from his duties he held" at the company, "his opinions were admissible as testimony based upon personal knowledge and experience gained while employed" there. *Id.* The risk officer "engaged in precisely the kind of analysis he regularly performed as chief risk officer; the fact that he drew particular opinions and projections for the purposes of this case does not make him an 'expert' within the meaning of Federal Rule of Evidence 702." *Id.*

Moreover, in *United States v. Moparty*, the Fifth Circuit approved the admission of lay opinion testimony from representatives of health insurance companies "largely related to the procedures, policy terms, and fraud prevention protections at each insurance company." *Moparty*, 11 F.4th 280, 295-96 (5th Cir. 2021). For example, a representative from Blue Cross Blue Shield "addressed how the company would handle various situations, how it interpreted terms and policies, and how their policies compared to those of the industry." *Id.* Additionally, an Aetna representative's testimony "focused on Aetna's policies and practices." *Id.* "These witnesses' admissible testimony provided factual information about the circumstances of the case." *Id.* at 295-96 (quotation marks omitted). In its analysis, the Fifth Circuit cited the Sixth Circuit's decision in *United States v. Kerley*, 784 F.3d 327 (6th Cir. 2015), which observed, "In a number of decisions from other circuits, courts have permitted witnesses to give lay opinion testimony about a business's policies, practices, or procedures, based on an after-the fact review or analysis of documents or facts, if the witness's testimony derived from personal knowledge gained through participation in the business's day-to-day affairs." *Kerley*, 784 F.3d at 337 (collecting cases); *see also Moparty*, 11 F.4th at 295.

Here, the witnesses will similarly be drawing on their day-to-day experiences as personal injury attorneys, and their testimony about the practice of personal injury law will provide crucial context for understanding the defendants' fraudulent lawsuits. As the government's motion concerning Motta's advice of counsel defense made clear, much of the evidence in this case will be related to motions, depositions, and other litigation events from the fraudulent lawsuits. *See* Rec. Doc. 558. The insurance defense attorneys do not need to be experts to talk about the significance of these litigation events and why they were surprised, confused,

frustrated, or angered at the defendants' conduct. As a result, their lay testimony is admissible, and the government's motion should be granted.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant the above-described motions *in limine*.

Respectfully submitted,

MICHAEL M. SIMPSON
Attorney for the United States
Acting under authority conferred
by 28 U.S.C. § 515

/s/ *Matthew R. Payne*
MATTHEW R. PAYNE
BRIAN M. KLEBBA
MARY KATHERINE KAUFMAN
Assistant United States Attorneys
J. RYAN McLAREN
SAMIR PAUL
Trial Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Matthew R. Payne*
MATTHEW R. PAYNE
Assistant U.S. Attorney