**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                        **CRIMINAL ACTION**

**VERSUS**                                          **NO. 24-105**

**RYAN J. HARRIS, ET AL.**                          **SECTION: D (1)**
                                                    **This Order applies to**
                                                    **Vanessa Motta and**
                                                    **Motta Law, LLC**

**ORDER AND REASONS**

In the Third Superseding Indictment that was filed in this case on January 9, 2026, Vanessa Motta and Motta Law, LLC (collectively, the "Motta Defendants"), were charged with several crimes stemming from a years-long scheme to stage fake automobile collisions in the New Orleans metropolitan area and file fraudulent insurance claims and fraudulent lawsuits based on the staged collisions.[1] Those crimes include: (1) conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1341, 1343, & 1349 (Count 1); (2) two counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (Counts 4 and 5); (3) one count of obstruction of justice, in violation of 18 U.S.C. §§ 1503(a) and 2 (Count 6); and (4) one count of witness tampering in violation of 18 U.S.C. §§ 1512(b)(1) and 2 (Count 7).[2]

The Motta Defendants proceeded to trial on all counts on March 2, 2026.[3] On March 19, 2026, at the close of the Government's case and outside the presence of the jury, the Motta Defendants moved for a judgment of acquittal as to all counts (Counts

---

[1] R. Doc. 517.
[2] *Id.*.
[3] R. Doc. 754.

1, 4, 5, 6, & 7) pursuant to Federal Rule of Criminal Procedure 29.[4]  The Court denied the motion as to Counts 1, 5, 6, and 7, for the reasons stated on the record, but deferred ruling on the motion as to Count 4 until after the verdict, pursuant to Rule 29(b).  On March 20, 2026, after a three-week trial, the Motta Defendants were each convicted on all counts.[5]

Based upon the evidence that was before the Court at the time it reserved ruling on the Motta Defendants' Rule 29 motion as to mail fraud set forth in Count 4,[6] the Court finds that there was sufficient evidence to sustain a conviction on Count 4.  As such, the Motta Defendants' Rule 29 motion for judgment of acquittal as to Count 4 is **DENIED.**

### I.    LEGAL STANDARD[7]

Federal Rule of Criminal Procedure 29(a) provides, in pertinent part, that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Rule 29(b) further provides that:

> The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.  If the court reserves decision, it must decide

---

[4] R. Doc. 781.  *See* Trial Transcript from March 19, 2026.

[5] R. Docs. 787 & 852.

[6] *See* Fed. R. Crim. P. 29(b).  The Court considers only the evidence presented in the Government's case in chief.

[7] In the interest of judicial economy, and because the factual background of this case was extensively detailed in several prior Orders and Reasons issued by this Court (*See* R. Docs. 357, 481, 489, 641, 647, & 692), the Court will not repeat it here.

the motion on the basis of the evidence at the time the ruling was reserved.

The Fifth Circuit has held that, "[a] motion for judgment of acquittal challenges the sufficiency of the evidence to convict."[8]  In determining whether there is sufficient evidence to support a conviction, the Fifth Circuit has instructed courts to "determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt."[9]  According to the Fifth Circuit, "[i]t is not necessary that the evidence exclude every rational hypothesis of innocence or be wholly inconsistent with every conclusion except guilt, provided a reasonable trier of fact could find the evidence establishes guilt beyond a reasonable doubt."[10]  Additionally, this Court must "accept all credibility choices that tend to support the jury's verdict," recognizing that the jury was "free to choose among all reasonable constructions of the evidence."[11]  "It is the jury's unique role to judge the credibility and evaluate the demeanor of witnesses and to decide how much weight should be given to their testimony."[12]  "Generally speaking, what a jury is permitted to infer from the evidence in a particular case is governed by a rule of reason, and

---

[8] *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005) (quoting *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998)) (citation modified).

[9] *United States v. Pruneda-Gonzalez*, 953 F.2d 190, 193 (5th Cir. 1992) (citing *United States v. Chavez*, 947 F.2d 742, 744 (5th Cir. 1991)).

[10] *Pruneda-Gonzalez*, 953 F.2d at 193 (citing *Chavez*, 947 F.2d at 744).

[11] *United States v. Sneed*, 63 F.3d 381, 385 (5th Cir. 1995) (quoting *United States v. Chaney*, 964 F.2d 437, 448 (5th Cir. 1992); *United States v. Anderson*, 933 F.2d 1261, 1274 (5th Cir. 1991)) (citation modified).

[12] *United States v. Layne*, 43 F.3d 127, 130 (5th Cir. 1995) (quoting *United States v. Higdon*, 832 F.2d 312, 315 (5th Cir. 1987)) (citation modified).

juries may properly use their common sense in evaluating that evidence."[13]  Further, "[a]s the United States Supreme Court remarked a long time ago, circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof."[14]

## II.    ANALYSIS

Count 4 of the Third Superseding Indictment charges that on or about March 4, 2022, the Motta Defendants and others:

> for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud, and to obtain money and property by materially false and fraudulent pretenses, did knowingly cause to be delivered by private and commercial interstate carrier, according to the directions thereon, an envelope containing a "special and limited power of attorney," in violation of Title 18, United States Code, Sections 1341 and 2.[15]

As set forth in the Court's Final Jury Instructions, in order to find the Motta Defendants guilty of mail fraud on Count 4, the Government had the burden to prove the following beyond a reasonable doubt: (1) that the Motta Defendants knowingly devised or intended to devise a scheme to defraud, that is, a scheme to obtain money and property from insurance companies and commercial vehicle companies by means of materially false and fraudulent pretenses, representations, and promises; (2) that the scheme to defraud employed false material representations, false material

---

[13] *United States v. Villasenor*, 894 F.2d 1422, 1425 (5th Cir. 1990) (quoting *United States v. Henry*, 849 F.2d 1534, 1536 (5th Cir. 1988)) (citation modified).
[14] *Villasenor*, 894 F.2d at 1425–26 (quoting *United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989)) (citation modified).
[15] R. Doc. 517 at p. 19.

pretenses, or false material promises; (3) that the Motta Defendants mailed something or caused something to be sent or delivered through the United States Postal Service or a private or commercial interstate carrier for the purpose of executing such scheme or attempting so to do; and (4) that the Motta Defendants acted with a specific intent to defraud.[16]   The Final Jury Instructions further explained that:

> To "cause" the mails or private or commercial interstate carrier to be used is to do an act with knowledge that the use of the mails or private or commercial interstate carrier will follow in the ordinary course of business or where such use can reasonably be foreseen even though the defendant did not intend or request the mails or private or commercial interstate carrier be used.[17]

At trial, Bria Henry testified that she participated in a staged collision in December 2021 involving a Toyota Corolla that she had rented from Enterprise.[18] Henry testified that Ryan Harris[19] asked her if she wanted to "make some cash," and when she said "yes," he asked her to rent a car from Enterprise.  Henry testified that Harris paid her about $400 to rent the car, and that she rented a car on the same day that he gave her the money.  Henry confirmed that she rented a Toyota Corolla from Enterprise on December 21, 2021, and that she "drove around in it."[20]  Henry testified that she met up with Harris and gave him the car, and that he was with three people wearing ski masks.  Henry said that she left the car with Harris, that she was picked up, and that she heard a loud boom, "like a car crash," as she was driving away.

---

[16] R. Doc. 783 at p. 35.  *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.56 (2024).
[17] R. Doc. 783 at p. 37.  *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.56 (2024).
[18] *See* Trial Transcript from March 12, 2026.
[19] Henry identified Ryan Harris from a photograph introduced at trial.  *See* Trial Exhibit 378_009.
[20] *See* Trial Exhibit 047_002 at pp. 71–72.

Henry said that she later learned that Harris crashed the Toyota Carolla. Henry testified that Enterprise tried to contact her once about the accident, but that she did not report the accident to Enterprise or return the car to Enterprise because she did not have it.

Henry further testified that she never received notice of the lawsuit filed by Leon Parker against her, EAN Holdings, LLC, and ABC Insurance Company in Civil District Court for the Parish of Orleans, State of Louisiana, No. 2022-11479, Division C, regarding the December 2021 collision.[21] Henry confirmed that the lawsuit alleged that Parker was operating a 2020 Genesis G80 on or about December 22, 2021, and that Henry, who was operating a 2021 Toyota Corolla, "[s]uddenly and without warning . . . crossed over into the petitioner's lane of travel and collided with petitioner's vehicle head on."[22] Henry testified that these allegations were false. Henry also testified that Vanessa Motta filed the lawsuit on behalf of Parker,[23] but that Motta never advised her of the lawsuit. Henry further testified that when she rented the Toyota Corolla, she did not know that Harris would use it in a staged collision, or that she would be named as the driver in a fraudulent lawsuit.

Ryan Harris testified that he staged accidents with Cornelius Garrison for Sean Alfortish and Vanessa Motta and that Alfortish paid them $1,000 per passenger for staged collisions.[24] Harris testified that Motta was involved because she was present when Alfortish paid them for staged collisions and that she sometimes paid

---

[21] *See* Trial Exhibit 047_002 at pp. 66–70.
[22] *See Id*. at p. 67, ¶ 5.
[23] *Id*. at p. 69.
[24] R. Doc. 848-3 at pp. 22–23.

them when Alfortish was unavailable.[25]  Harris testified that Motta knew the crashes were staged because he and Garrison advised her in advance that they would be back with more accidents and she would sometimes tell them to put more damage on the vehicle.[26]  Harris estimated that he and Garrison brought "probably over 80" staged collisions to Alfortish and Motta.[27]  Harris testified about several collisions that he and Garrison staged, as well as collisions that he staged without Garrison, which resulted in lawsuits filed by the Motta Defendants.[28]  Harris testified that when he started staging collisions without Garrison, he continued to bring Motta and Alfortish staged collisions involving 18-wheelers and "car-on-car crashes" into 2023, including a staged collision involving a Genesis G80.[29]  Harris recalled that the collision involved a car rented from Enterprise and that it involved Leon Parker and a girl whose name he forgot.[30]  Harris further testified that, like the staged collisions involving 18-wheelers, he told Motta in advance that he would be back with another staged "car-on-car" collision, and she told him "to make sure I hit them right, make sure the policy's high and stuff like that."[31]

Jay Hebert, who has been a claims specialist for State Farm for 38 years, also testified at trial.[32]  Hebert testified regarding State Farm records that had been subpoenaed by the Government, including a claim file for Claim No. 18-28R2-94N,

---

[25] *Id*. at pp. 23–24.
[26] *Id*. at pp. 24–25, 41–42, & 88–89.
[27] *Id*. at p. 26.
[28] *Id*. at pp. 27–35 & 37–41.  *See also Id*. at pp. 81–82.
[29] *Id*. at pp. 40–41.
[30] *Id*. at p. 41.
[31] *Id*. at pp. 41–42.
[32] *See* Trial Transcript from March 18, 2026.

which lists Leon Parker as the insured and the date of loss as December 22, 2021.[33] The claim file includes an "Auto Claim File Print General Information" document, which lists Parker as the driver of a 2020 Genesis G80 and identifies Motta Law, LLC as Parker's attorney.[34] The claim file also includes an email sent by someone at Motta Law to State Farm's claims department on January 7, 2022, regarding Claim No. 18-28R2-94N.[35] The email included an attachment, which is a January 7, 2022 letter from Motta Law, LLC to State Farm's claims department regarding Claim No. 18-28R2-94N, advising that it "represents Leon Parker for injuries and damages sustained in an accident that occurred on December 22, 2021, relative to the above claim."[36] Motta Law specifically requested that State Farm provide a copy of the declaration page for the "**STATE OF LOUISIANA UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE FROM AND MED PAY COVERAGE**."[37] Hebert testified that State Farm replied to Motta Law, LLC's letter, advising that Parker did not carry uninsured/underinsured or med pay coverage.

According to Hebert, State Farm ultimately determined that Parker's vehicle was a "total loss" as a result of the collision in December 2021. Hebert explained that, in order to get paid by State Farm for the loss, Parker had to complete a "Total Loss Package," which included a "Special and Limited Power of Attorney" form and a

---

[33] *See* Trial Exhibit 083_002.  *Id*. at p. 145.
[34] *Id*. at p. 149.
[35] *Id*. at p. 41.
[36] *Id*. at p. 42.
[37] *Id*. (emphasis in original)

"Total Loss Instructions Checklist."[38]   The "Total Loss Package" was emailed to Parker on March 4, 2022.[39]  The "Total Loss Instructions Checklist" specifies for the insured to, "Promptly return all original paperwork and/or items using the enclosed UPS shipping label.  If not available, please send paperwork to: State Farm Insurance Companies, IAA-Louisiana Service Center, 29000 S Forst Rd, Livingston, LA 70754."[40]  The attached UPS label had a tracking number of 1Z377AA70193290634.[41]  The "Special and Limited Power of Attorney" form that was sent to Parker listed the vehicle "Year/Make/Model" as "2020 Gene G80 AWD," and Hebert testified that this was for the "Genesis G80."

According to a February 25, 2022 letter sent from State Farm to Parker, State Farm determined that the total net amount payable to Parker for the damage to the 2020 Genesis G80 was $46,625.40.[42]  The claim file includes a payment log regarding Parker's claim, showing that Parker was paid $46,625.40 on March 9, 2022.[43]  Hebert testified that State Farm would not have paid the claim if it knew the underlying accident had been staged.  The claim file also includes the "Special and Limited Power of Attorney" signed by Parker and dated March 4, 2022,[44] which Hebert said would have been mailed to State Farm.  During cross-examination by counsel for the Motta Defendants, Hebert confirmed that State Farm emailed the "Total Loss Package" to

---

[38] *Id*. at pp. 197–199.
[39] *Id*.  The Court notes that Count 4 of the Third Superseding Indictment alleges that the Motta Defendants committed mail fraud on or about March 4, 2022.  *See* R. Doc. 517 at p. 19.
[40] Trial Exhibit 083_002 at pp. 199–200.
[41] *Id*. at p. 204.
[42] *Id*. at pp. 201–202.
[43] *Id*. at p. 144.
[44] *Id*. at p. 267.

Parker,[45] that Parker signed the "Special and Limited Power of Attorney,"[46] and that he assumed that Parker returned the documents to State Farm. During redirect, Hebert testified that it is typical for State Farm to communicate directly with the insured even if they are represented by counsel.

Donna Green, a defense attorney, also testified at trial.[47] Green testified that she usually represents people who were involved in auto accidents while driving rental cars owned by Enterprise, Alamo, and National through a Louisiana entity called EAN Holdings, LLC. Green testified regarding documents she produced in response to a grand jury subpoena, which concern a lawsuit filed in the Civil District Court for Orleans Parish entitled *Leon Parker v. EAN Holdings, LLC, et al.*, No. 2022-11479, Div. C,[48] including printed emails that she saved as part of the case file.[49] Green testified that Vanessa Motta was the attorney who filed the personal injury lawsuit on behalf of Leon Parker on December 20, 2022. Green also testified that one of the vehicles allegedly involved in the accident at issue in the lawsuit was a Genesis G80.[50] Green explained that this was a car accident case with Leon Parker as the named plaintiff and against EAN Holdings, LLC and Bria Henry involving a car owned by EAN Holdings, LLC and rented by Bria Henry, who allegedly caused the accident.[51] The lawsuit was filed on December 20, 2022.[52] Green testified that an

---

[45] *Id*. at p. 197.
[46] *Id*. at p. 267
[47] *See* Trial Transcript from March 12, 2026.
[48] Trial Exhibit 047_002.
[49] *See Id*. at pp. 5–43.
[50] Trial Exhibit 047_003.
[51] *See Id*. at p. 66; Trial Exhibit 047_003.
[52] Trial Exhibit 047_002 at p. 66.

Enterprise Rental Agreement dated December 21, 2021 lists Henry as the renter of a 2021 Toyota Corolla.[53]  Green testified regarding her interactions with Motta during the litigation, and how Motta ultimately dismissed EAN Holdings, LLC from the litigation.

At the close of the Government's case, the Motta Defendants moved for a judgment of acquittal as to all counts, including the mail fraud count set forth in Count 4 of the Third Superseding Indictment.[54]  Counsel for the Motta Defendants argued that a State Farm employee had testified that Parker had received the email containing the "Special and Limited Power of Attorney" form at issue in Count 4, and had said that Parker put the document into a UPS envelope and mailed it back to State Farm.  In response, counsel for the Government asserted that the mail fraud charge is "an aiding and abetting allegation."  Counsel for the Government stated that Parker mailed the signed document in order to obtain money as a result of the fraudulent accident, but that Motta had a role in it because she represented Parker and sent a letter to State Farm requesting documents on behalf of Parker regarding Parker's insurance coverage.  Counsel for the Government argued that Motta assisted and aided Parker in obtaining documents from State Farm, and pointed out that Donna Green testified regarding Motta's filing of the fraudulent lawsuit on Parker's behalf based upon the staged collision.

Viewing the evidence presented at the time the Court deferred ruling on the Motta Defendants' motion, as the Court is required to do under Fed. R. Crim. P. 29(b),

---

[53] *Id.* at p. 71.
[54] *See* Trial Transcript from March 19, 2026.

the Court finds that there was sufficient evidence to support the Motta Defendants' mail fraud conviction on Count 4 of the Third Superseding Indictment.  The jury heard evidence directly from  Ryan Harris that he staged the underlying accident that occurred on December 22, 2021 involving the 2020 Genesis G80 and the 2021 Toyota Corolla rented by Bria Henry, and that Alfortish and Motta paid Harris for these types of collisions.  The jury also heard evidence, through the testimony of Jay Hebert and Donna Green, that Leon Parker filed an insurance claim with State Farm based upon the December 22, 2021 collision, that the Motta Defendants represented Parker in a personal injury lawsuit that was based upon the staged collision, and that the Motta Defendants reached out to State Farm to advise that Motta Law, LLC was representing Parker in connection with his insurance claim that was based upon the staged collision (Claim No. 18-28R2-94N).  The evidence reflected that Leon Parker received an email on March 4, 2022 from State Farm containing a "Total Loss Package," which included a "Special and Limited Power of Attorney" form and a UPS shipping label to return the signed document to State Farm.[55]  The parties also agree that Parker returned the signed "Special and Limited Power of Attorney" to State Farm.[56]

The Court finds that a rational jury could have found that the Motta Defendants knowingly devised a scheme to defraud State Farm, that the scheme employed false material representations regarding the staged collision, that the Motta Defendants caused something to be mailed by UPS for the purpose of executing

---

[55] *See* Trial Exhibit 083_072 at pp. 197–204.
[56] *See* Trial Transcript from March 19, 2026.

the scheme, and that the Motta Defendants acted with a specific intent to defraud.[57] Determination of whether there was an underlying fraudulent scheme is somewhat based on credibility determinations, namely, whether the jury found the testimony of Bria Henry and Ryan Harris credible. "It is the jury's unique role to judge the credibility and evaluate the demeanor of witnesses and to decide how much weight should be given to their testimony."[58] In ruling on the Motta Defendants' Rule 29 Motion, the Court accepts the "credibility choices that tend to support the jury's verdict," recognizing that the jury was "free to choose among all reasonable constructions of the evidence."[59] The trial evidence[60] included a January 7, 2022 letter from Motta Law, LLC to State Farm's claims department advising that it "represents Leon Parker for injuries and damages sustained in an accident that occurred on December 22, 2021, relative to the above claim"[61] and requesting that State Farm provide a copy of the declaration page for Parker's insurance.[62] As to the Motta Defendants "causing" something to be mailed by UPS, and allowing for the credibility determinations made by the jury, the Court finds that the trial testimony and evidence supports that Motta, the attorney representing Parker in the fraudulent lawsuit, either knew or it was reasonably foreseeable that Parker would mail documents to State Farm in support of his fraudulent insurance claim, which was

---

[57] *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.56 (2024).

[58] *United States v. Layne*, 43 F.3d 127, 130 (5th Cir. 1995) (quoting *United States v. Higdon*, 832 F.2d 312, 315 (5th Cir. 1987)) (citation modified).

[59] *United States v. Sneed*, 63 F.3d 381, 385 (5th Cir. 1995) (quoting *United States v. Chaney*, 964 F.2d 437, 448 (5th Cir. 1992); *United States v. Anderson*, 933 F.2d 1261, 1274 (5th Cir. 1991)) (citation modified).

[60] *See* Trial Transcript from March 18, 2026 (Jay Hebert's testimony).

[61] Trial Exhibit 083_002 at p. 42.

[62] *Id.* (emphasis in original).

based upon a staged collision.[63]  The Court further recognizes the significant trial evidence of Motta's role representing numerous individuals in fraudulent staged accidents.  The Court finds the overwhelming testimony and evidence during trial is sufficient to show that Motta would have known that the use of the mails would follow when she represented Parker in the staged accident, was aware that it was a fraudulent accident, and reached out to Parker's insurer to pursue the fraudulent claim.  Accordingly, viewing the trial evidence in the light most favorable to the verdict, the Court finds that there was sufficient evidence for a rational jury to find the essential elements of the mail fraud in Count 4 beyond a reasonable doubt.[64]  The Motta Defendants' Rule 29 motion for acquittal as to Count 4 is therefore denied.

## III.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Vanessa Motta and Motta Law, LLC's oral motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 is **DENIED.**

New Orleans, Louisiana, July 20, 2026.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[63] *See Id.* ("To 'cause' the mails [private or commercial interstate carrier] to be used is to do an act with knowledge that the use of the mails [private or commercial interstate carrier] will follow in the ordinary course of business or where such use can reasonably be foreseen even though the defendant did not intend or request the mails [private or commercial interstate carrier] to be used.").
[64] *United States v. Pruneda-Gonzalez*, 953 F.2d 190, 193 (5th Cir. 1992) (citing *United States v. Chavez*, 947 F.2d 742, 744 (5th Cir. 1991)).