**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**

**VERSUS**

**RYAN J. HARRIS, ET AL.**

**CRIMINAL ACTION**

**NO. 24-105**

**SECTION: D (1)**
**This Order applies to**
**Vanessa Motta and**
**Motta Law, LLC**

### ORDER AND REASONS

Before the Court is Vanessa Motta and Motta Law, LLC's Motion for New Trial.[1] The Government opposes the Motion,[2] and the Motta Defendants have filed a Reply.[3] The matter was submitted on the briefs by the parties.[4]

After careful consideration of the parties' memoranda, and the applicable law, the Court **DENIES** the Motion for New Trial.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[5]

This case involves several defendants who were charged with various crimes stemming from a years-long scheme to stage fake automobile collisions in the New Orleans metropolitan area and file fraudulent insurance claims and fraudulent lawsuits based on the staged collisions.[6] That scheme allegedly involved "slammers" who drove automobiles and intentionally collided with 18-wheeler tractor-trailers

---

[1] R. Doc. 789.
[2] R. Doc. 848.
[3] R. Doc. 878.
[4] R. Doc. 889.
[5] In the interest of judicial economy, and because the factual background of this case was extensively detailed in several prior Orders and Reasons issued by this Court (*See* R. Docs. 357, 481, 489, 641, 647, & 692), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.
[6] R. Docs. 1, 78, 256, & 517.

and other commercial vehicles in order to stage collisions. As to Vanessa Motta and Motta Law, LLC (collectively, the "Motta Defendants"), the Government alleged that the Motta Defendants and co-defendant, Sean Alfortish, paid Ryan Harris, Cornelius Garrison, and other slammers for bringing them staged collisions, that the Motta Defendants and Alfortish knew Harris and Garrison were staging collisions, and that the Motta Defendants pursued fraudulent lawsuits knowing they were based on staged collisions.[7] The Government also alleged that Alfortish and the Motta Defendants committed obstruction of justice by offering Garrison payment and to move Garrison outside of the United States if he agreed not to cooperate with the federal criminal investigation, and committed and witness tampering by trying to influence, delay, and prevent Garrison from providing grand jury testimony regarding the staged collision scheme.[8]

After a three week trial, the Motta Defendants were each convicted on all counts: one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, two counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2, one count of obstruction of justice in violation of 18 U.S.C. §§ 1503(a) and 2, and one count of witness tampering in violation of 18 U.S.C. §§ 1512(b)(1) and 2.[9]

The Motta Defendants now seek a new trial pursuant to Federal Rule of Criminal Procedure 33, asserting that five aspects of the trial undermined the fairness of the proceedings and resulted in a miscarriage of justice.[10] The Motta

---

[7] R. Doc. 517 at pp. 6 & 12–16.
[8] *Id*. at pp. 17 & 20–21.
[9] R. Doc. 787. *See* R. Doc. 517.
[10] R. Doc. 789.

Defendants first assert that the Government constrained and controlled their defense by repeatedly "threatening" to introduce evidence of Motta's involvement in Garrison's murder, in violation of its pretrial stipulations.[11]  The Motta Defendants then assert that the Court erred in instructing the jury on the "truth-seeking" affirmative defense to the witness tampering charge because Motta did not present a defense at trial and denied any involvement in Alfortish's offer to move Garrison outside the United States, which is the basis for the witness tampering charge.[12]  The Motta Defendants further assert that co-defendant Jason Giles' closing argument, in which his counsel disparaged Motta and highlighted evidence against her in an attempt to exonerate Giles, resulted in substantial prejudice warranting a new trial.[13] The Motta Defendants then assert that they are entitled to a new trial because the Government was allotted an additional eight minutes of rebuttal time for its closing argument[14]  Finally, the Motta Defendants assert that they are entitled to a new trial because the Court submitted Count 4 (mail fraud in violation of 18 U.S.C. §§ 1341 and 2) to the jury without resolution of the pending Federal Rule of Criminal Procedure 29 motion for judgment of acquittal.[15]

The Government opposes the Motion, asserting that the errors cited by the Motta Defendants do not warrant a new trial in this matter.[16]  The Motta Defendants have filed a Reply brief, in further support of their first two arguments regarding the

---

[11] *Id.* at p. 1; R. Doc. 789-1 at pp. 2–4 & 8–14.
[12] R. Doc. 789-1 at pp. 4–6 & 14–18.
[13] *Id.* at pp. 6–7 & 18–19.
[14] *Id.* at pp. 1, 6–7, & 19–20.
[15] *Id.* at pp. 1, 7, & 20–21.
[16] R. Doc. 848.

Government's threats of introducing evidence regarding Garrison's murder and the improper jury instruction on the "truth-seeking" affirmative defense for which there was no evidentiary basis.[17]

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 33(a) provides, in pertinent part, that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[18]  Rule 33(b) further provides that, "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."[19]  According to the Fifth Circuit, "[t]hese 'interests of justice' may be based on the trial judge's evaluation of witnesses and weighing of the evidence."[20]  The Fifth Circuit has warned that, "[t]he grant of a new trial is necessarily an extreme measure, because it is not the role of the judge to sit as a thirteenth member of the jury."[21]  "A judge's  power to grant a new trial based on a different assessment of the evidence must be exercised with caution and invoked only in exceptional cases."[22]  For this reason, while the decision to grant or deny a motion for new trial is entrusted to the sound discretion of the district court, "motions for new trial are not favored, and are granted only with great caution."[23]  The Fifth Circuit has held that, "the trial court should not grant a

---

[17] R. Doc. 878.
[18] Fed. R. Crim. P. 33(a).
[19] Fed. R. Crim. P. 33(b)(2).
[20] *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997).
[21] *Id.*
[22] *United States v. Crittenden*, 46 F.4th 292, 297 (5th Cir. 2022) (en banc) (quoting *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971)) (citation modified).
[23] *O'Keefe*, 128 F.3d at 898 (citing *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977)).

motion for new trial unless there would be a miscarriage of justice or the weight of the evidence preponderates against the verdict."[24] "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant."[25]

## III.   ANALYSIS

### A. The Government's "threats" to introduce evidence of Motta's involvement in Garrison's murder

The Motta Defendants first assert that the Government's repeated threat of introducing evidence regarding Garrison's murder at trial, despite representing to the Court that it would not introduce such evidence, "was so prejudicial that it substantially affected Ms. Motta's right to a fair trial."[26] The Motta Defendants claim that the Government advised at trial that it would introduce evidence regarding Garrison's murder, and Motta's involvement in or acquiescence to it, if the Motta Defendants called Dane Ciolino as a witness in support of an advice of counsel defense, if Motta testified in her own defense, if Motta's counsel published to the jury an audio recording of Ryan Harris' 2023 statement to Motta that the accidents were not staged, or if Motta's counsel asked about Harris' prior false statements regarding his role in Garrisons murder.[27] The Motta Defendants assert that the Government's decision to abandon its pretrial stipulations "gave it undue influence over Ms. Motta's defense strategy" and "effectively constrained and controlled [Motta's rights] in violation of the Constitution."[28] By way of example, the Motta Defendants claim that

---

[24] *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004) (citing *O'Keefe*, 128 F.3d at 898).
[25] *Wall*, 389 F.3d at 466 (citing *United States v. Rasco*, 123 F.3d 222, 228 (5th Cir. 1997)).
[26] R. Doc. 789-1 at p. 9.
[27] *Id*. at pp. 3–4.
[28] *Id*. at p. 9.

they chose not to call Ciolino as a witness and, therefore, did not put on evidence regarding an advice of counsel defense because the Government threatened to ask him on cross-examination whether his advice to Motta would have changed had he known that she was being investigated for her purported role in Garrison's murder.[29] The Motta Defendants likewise claim that Motta "was effectively compelled not to testify" based upon the Government advising that if she did so, it would introduce evidence of Garrison's murder and her alleged involvement in or acquiescence to it.[30] The Motta Defendants also claim that they did not impeach Ryan Harris regarding prior false statements concerning his role in Garrison's murder because the Government advised it would elicit from Harris during cross-examination that the reason he lied was his fear of Motta harming him the same way that Garrison was harmed.[31]  The Motta Defendants similarly claim that they did not play an audio recording of a conversation between Motta and Harris during which Harris said that the accidents were not staged because the Government advised that Harris was likely to testify on re-direct that his statements to Motta were false because he was afraid Motta would kill or harm him.[32]   The Motta Defendants contend that the Government's decision to introduce murder evidence depending on Motta's defense strategy "was so unfair that the resulting conviction was a miscarriage of justice and an assault on Ms. Motta's rights" and mandates a new trial.[33]

---

[29] *Id*. at p. 10.
[30] *Id*.
[31] *Id*. at p. 11.
[32] *Id*. at pp. 12–13.
[33] *Id*. at p. 14.

The Government counters that the Motion should be denied because it did not promise that it would never introduce murder-related evidence, and instead advised that it would not seek to admit such evidence unless the defendants opened the door to it.[34]  The Government claims that, true to its word, its case-in-chief remained focused on the fraud and, at certain times during trial, the Government advised Motta's counsel and the Court that certain questions posed by defense counsel could open the door to the murder.[35]  The Government points out that, on more than one occasion, Motta's counsel thanked the Government for flagging the issue.[36]  As such, the Government argues that, rather than putting the Motta Defendants at an unfair disadvantage, the Government "did its best to identify potential landmines."[37]  The Government contends that it did not break any promises and that the Motion for New Trial should be denied.[38]

In response, the Motta Defendants maintain that, "the government substantially interfered with Ms. Motta's constitutional rights to present a defense by leveraging the threat of uniquely prejudicial murder allegations to control whether she testified, presented witnesses, and impeached the government's key witness."[39] The Motta Defendants claim that the Government does not dispute that it made threats at trial, and further assert that the threats were used to circumvent the Court's severance order, wherein the Court concluded that the murder-related

---

[34] R. Doc. 848 at p. 40 (citing *United States v. Age*, 136 F.4th 193, 222–23 (5th Cir. 2025)).

[35] R. Doc. 848 at pp. 40–41 (*citing* R. Doc. 848-3 at pp. 63–64).

[36] R. Doc. 848 at p. 41 (*citing* R. Doc. 848-3 at pp. 63–64).

[37] R. Doc. 848 at p. 41.

[38] *Id.*

[39] R. Doc. 878 at p. 2.

evidence could not be used by the Government to bolster the fraud charges.[40]   The Motta Defendants contend that the Government substantially interfered with Motta's exercise of her constitutional rights "by forcing her to 'choose' between exercising her rights and preserving the protections of the severance order."[41]   As such, the Motta Defendants maintain that they are entitled to a new trial.

The Court finds that the Motta Defendants have failed to show that a new trial is warranted based upon certain warnings provided by the Government during trial. There is no dispute that prior to trial, the Government represented to the Court that, "if left to its own devices, it would not discuss Garrison's murder in front of the jury during the March 2026 fraud trial."[42]   While the Motta Defendants refer to the Government's representations as "pretrial stipulations,"[43] the parties did not file any agreed upon stipulations into the record by the February 16, 2026 deadline imposed by the Court.[44]   The Court agrees with the Government that its pretrial representations did not constitute a binding stipulation that the Government would not, under any circumstances, introduce murder-related evidence, but that it would not do so unless prompted by the defendants if they "opened the door" to such evidence.[45]   The Court rejects as meritless the Motta Defendants' assertion that the

---

[40] *Id.* at pp. 1–3 & n.1.

[41] *Id.* at p. 5.

[42] R. Doc. 726 at pp. 9 & 15.

[43] R. Doc. 789-1 at pp. 1 & 14.

[44] *See* R. Doc 676 at p. 8 (*citing* R. Doc. 405).

[45] *See United States v. McKinney*, 785 F.2d 1036, 1046 (5th Cir. 1985) ("Our review of the record reveals that the district court made an implicit finding, which is amply supported by the record, that the Government did not agree to refrain from using the extraneous-offense evidence for any purpose.").

Government's "decision to abandon its prior agreement was so prejudicial that it substantially affected Ms. Motta's right to a fair trial."[46]

To the extent the Motta Defendants complain that their defense was prejudiced by certain warnings from the Government's counsel that defense counsel was nearing "opening the door," the Court finds that any changes in their defense strategy were driven not by the statements of the Government's counsel but by a pretrial determination from the Court.  Although not mentioned in the instant Motion, the Court made a pretrial determination that certain statements made by Garrison to law enforcement were admissible against the Motta Defendants under the forfeiture by wrongdoing exception set forth in Federal Rule of Evidence 804(b)(6) because the Government had shown by a preponderance of the evidence that the Motta Defendants acquiesced in causing Garrison to be unavailable and did so intending that result.[47]  The Court finds that the Motta Defendants likely altered their defense strategy based upon this ruling because, as the Government correctly points out, "[i]t is well-settled in this Circuit that a defendant may not complain on appeal he was prejudiced by evidence relating to a subject which he opened up at trial."[48]  With respect to the audio recording of Harris' conversation with Motta, before the recording was played for the jury counsel for the Government advised the Court that the evidence "is going to be opening the door to some issues we discussed this morning."[49]

---

[46] *See* R. Doc. 789-1 at p. 9 (citing *United States v. McKinney*, 785 F.2d 1036, 1046–47 (5th Cir. 1985)).
[47] R. Doc. 692 at pp. 26–31 & 34–36.
[48] *United States v. Age*, 136 F.4th 193, 222–23 (5th Cir. 2025) (quoting *United States v. Kiekow*, 872 F.3d 236, 252 (5th Cir. 2017)) (citation modified).
[49] R. Doc. 848-3 at p. 61.

Counsel for the Motta Defendants stated on the record, "I appreciate him interjecting and informing me that if I play the recording and if he's asked . . . it's opening the door to everything I've been trying to keep out," "I'm glad he stopped me, I am trying to on the fly make some very hard decisions in real time,"[50] and "thanks for telling me that. I did not appreciate or anticipate that that would be the answer that may be lurking behind."[51] These statements make clear that certain decisions made by defense counsel, including the decision to not question Harris about the recording, to not present an advice of counsel defense, to not impeach Harris' credibility, and to not have Motta testify in her defense, were part of the defense strategy to avoid "opening the door" to evidence regarding Garrison's murder.

In light of the Court's pretrial ruling and defense counsel's statements on the record, the Court agrees with the Government that any such statement did not put the Motta Defendants at an unfair disadvantage. First and importantly, the Court points out that the Government did not put on any evidence whatsoever imputing Motta to Garrison's murder. Further, each time that Garrison's murder was brought up during trial, the Court very clearly instructed the jury that none of the defendants on trial were charged with his murder and that it was not to be considered by the jury as evidence for the crimes charged against the defendants on trial. Addressing the Motta Defendants' arguments that the Government made statements in private to counsel about evidence that would potentially "open the door" to additional incriminating evidence against the Motta Defendants, the Court finds that such

---

[50] *Id.* at p. 63.
[51] *Id.* at p. 64.

statements were just that—putting counsel on alert on what may occur if the defendant "opened the door" to potential evidence. Counsel for the Motta Defendants recognized similarly by thanking the Assistant U.S. Attorney for pointing out this issue. While defense counsel's Affidavit, submitted as an exhibit to the Motta Defendants' Reply brief, uses the word "threat,"[52] the record does not support any threats made by the Government. Further, to be clear, any statements from the Government about possibly "opening the door" were made at a sidebar—out of the presence of the jury. Thus, the jury did not hear and was not prejudiced by any such statements. To the extent that the Motta Defendants decided on a trial strategy to avoid "opening the door" to further incriminating evidence, that appears to be the result of informed trial strategy. Nothing in the record suggests that this is an "exceptional case" that would support granting a new trial.[53] The Court therefore disagrees with defense counsel's assertion that the Government's tactics impinged upon the Motta Defendants' constitutional right to present a complete defense.[54] Instead, the record supports that the Motta Defendants launched a vigorous and impassioned defense throughout the trial. Accordingly, the Motion is denied to the extent the Motta Defendants seek a new trial based upon the Government's statements, outside the presence of the jury at a sidebar with the Court and counsel,

---

[52] *See* R. Doc. 878-1 at pp. 2–4, ¶¶ 7, 8, 10, 13, 21, 22, & 24.

[53] *United States v. Crittenden*, 46 F.4th 292, 297 (5th Cir. 2022) (en banc) (quoting *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971)) (citation modified).

[54] *See* R. Doc. 789-1 at p. 9 (citing *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986)).

that certain testimony elicited by defense counsel at trial may open the door to murder-related evidence.

### B. The jury instructions on witness tampering.

The Motta Defendants next assert that the Court erred by instructing the jury on the truth-seeking affirmative defense to the witness tampering charge in Count 7 of the Third Superseding Indictment. The Motta Defendants claim that they included this "and other instructions regarding potential affirmative defenses . . . to prevent any waiver of Ms. Motta's ability to assert the defenses at trial."[55] The Motta Defendants assert that they did not initially object to the inclusion of this instruction before the Government rested, but their counsel requested a sidebar in the middle of the jury charge and advised the Court that the burden of proof set forth in the instruction "may not be correct."[56] According to the Motta Defendants, the Court correctly pointed out that counsel was using an earlier, non-final version of the jury instructions to follow along as the Court orally charged the jury, and that the language read to the jury was from the Fifth Circuit's Pattern Jury Instructions.[57] The truth-seeking affirmative defense instruction given by the Court was that, "[t]he defendant has the burden of proving, by a preponderance of the evidence, that her conduct consisted solely of lawful conduct and that her sole intention was to encourage, induce, or cause the other person to testify truthfully."[58]

---

[55] R. Doc. 789-1 at p. 5 (*citing* R. Doc. 694 at p. 42; R. Doc. 679 at p. 2). *See* R. Doc. 789-1 at pp. 14–15 (citing *United States v. Branch*, 91 F.3d 699, 711-12 (5th Cir. 1996)).
[56] R. Doc. 789-1 at p. 5.
[57] *Id.* at pp. 5–6. The Court had met with all counsel several times to discuss and refine the jury instructions, with counsel being given several updated versions, including the Final Jury Instructions.
[58] *Id.* at p. 5 (*quoting* R. Doc. 783 at p. 47).

The Motta Defendants now argue that this instruction should not have been given because Motta did not present a defense at trial and denied any involvement in Alfortish's offer to move Garrison outside of the United States, which is the basis for the witness tampering charge.[59]  The Motta Defendants claim that this error was "constitutionally significant" because the instruction places the burden of proof on the defendant and it was "legally impossible" for the jury to acquit Motta based on this instruction because she did not put on any evidence regarding the affirmative defense.[60]  The Motta Defendants contend that this error "effectively ensured a guilty verdict and undermined the fundamental fairness of the trial."[61]  The Motta Defendants further assert that although the Court properly instructed the jury that the Government bears the burden of proof on the witness tampering charge, the inclusion of the correct burden of proof "elsewhere in the 61-pages [sic] of jury instructions does not cure this defect."[62]  Relying upon *United States v. Wolffs*, the Motta Defendants argue that the general jury instructions regarding the burden of proof and the defendant having no duty to put on evidence, which are located 40 pages prior to the erroneous affirmative defense instruction, do not cure the error in the witness tampering instruction.[63]

The Government asserts that the Court did not err in giving the truth-seeking affirmative defense instruction because Motta pursued a truth-seeking defense,

---

[59] R. Doc. 789-1 at p. 15 (*citing* "Rough Transcript of Special Agent Smith's testimony on cross examination by Mr. Toomey (14:44:48; 14:44:08)").
[60] R. Doc. 789-1 at p. 16.
[61] *Id.*
[62] *Id.* (*citing* R. Doc. 783 at pp. 3 & 7).
[63] R. Doc. 789-1 at pp. 16–17 (citing *Wolffs*, 594 F.2d 77, 83 (5th Cir. 1979)).

particularly through cross-examination of FBI Special Agent Matthew Smith.[64]  The Government points out that counsel for the Motta Defendants elicited testimony at trial that Motta told Charlette Jones "not to lie" during a covert recorded phone call,[65] and that Motta procured Bradley Egenberg to represent Garrison in connection with a deposition subpoena.[66]  The Government avers that a juror could have interpreted counsel's questions as presenting a defense that Motta tried to help Garrison comply with a subpoena instead of tamper with him.[67]  The Government also points out that Motta's surreptitious recording of former client, Demetra Henderson-Burkhalter, in 2025, which her counsel presented as impeachment evidence, suggested that Motta was "avoiding tampering with a witness by telling her that she could not talk to Henderson-Burkhalter after she had received a grand jury subpoena."[68]  The Government asserts that the Court was within its discretion to give the truth-seeking instruction in light of Motta's trial tactics.[69]

The Government notes that, even if Motta failed to present enough evidence to warrant the affirmative defense instruction, the instruction was initially included *at Motta's behest* and her failure to remove it or even object to it in a timely fashion invited error.[70]  The Government further asserts that the *Wolffs* case is distinguishable because the Fifth Circuit reversed a narcotics conviction where the

---

[64] R. Doc. 848 at p. 48.

[65] *Id.* at pp. 48–49 (*quoting* R. Doc. 848-2 at p. 234 ("Q: So you would agree she is telling her not to lie, correct? A. Yes.").

[66] R. Doc. 848 at pp. 49–50 (*quoting* R. Doc. 848-2 at p. 239).

[67] R. Doc. 848 at p. 50.

[68] *Id.* (*citing* R. Doc. 848-5 at p. 37).

[69] R. Doc. 848 at p. 50.

[70] *Id.*

district court's entrapment instruction did not mention the burden of proof required and upon whom the burden falls.[71]  The Government claims that, unlike in *Wolffs*, there was no confusion about which party carried the burden of proof because the witness tampering instruction made clear that the Government had to prove each element of the crime beyond a reasonable doubt, while only the final paragraph stated that Motta had the burden of proving by a preponderance of the evidence that her conduct consisted solely of lawful conduct and that her sole intention was to encourage, induce, or cause the other person to testify truthfully.[72]  The Government contends that even if Motta did not pursue the truth-seeking affirmative defense, the jury understood that the Government bore the burden of proving Motta's guilt beyond a reasonable doubt.[73]  The Government further asserts that any error in giving the truth-seeking affirmative defense instruction was harmless because overwhelming evidence supported the conclusion that Motta was a knowing participant in the staged collision scheme, and the jury could have concluded that Motta was involved in Alfortish's offer to pay Garrison and move him out of the country.[74]

In response, the Motta Defendants maintain that Motta's position at trial was that she never offered to move Garrison to the Bahamas as Count 7 alleges, and that Alfortish made that offer without her knowledge.[75] The Motta Defendants assert that the evidence relied upon by the Government – cross examination testimony – is

---

[71] *Id*. (citing *United States v. Wolffs*, 594 F.2d 77, 83 (5th Cir. 1979)).
[72] R. Doc. 848 at p. 51 (*quoting* R. Doc. 783 at pp. 46–47).
[73] R. Doc. 848 at p. 51.
[74] *Id*. (citing *United States v. Cessa*, 785 F.3d 165, 185 (5th Cir. 2017); R. Doc. 848-2 at pp. 56–57).
[75] R. Doc. 878 at p. 8.

insufficient to supply an evidentiary foundation for the defense.[76]    The Motta Defendants claim that it was fundamentally unfair to instruct the jury that Motta had the burden of establishing an affirmative defense when the Government prevented her from presenting the evidence necessary to do so by threatening to introduce evidence related to Garrison's murder.[77]  The Motta Defendants argue that the instruction was not "invited error," as alleged by the Government, because Motta "timely objected during the jury charge, once at an unrecorded sidebar between Ms. Motta's counsel and the Court, and once again at a partially-recorded sidebar in front of all counsel."[78]

In Count 7 of the Third Superseding Indictment, the Motta Defendants and Alfortish are charged with witness tampering in violation of 18 U.S.C. §§ 1512(b)(1) and 2 for knowingly corruptly persuading, and attempting to corruptly persuade, Cornelius Garrison on January 9, 2020, with the intent to influence, delay, and prevent Garrison's testimony in the Grand Jury's investigation into the staged collision scheme.[79]  The Government's position is that Alfortish and Motta offered to pay Garrison money to not cooperate with the grand jury investigation and offered him money to move to the Bahamas if he refused to cooperate with the investigation.[80] Special Agent Matthew Smith testified at trial that he met with Garrison on January 9, 2020, and that Garrison advised that he had met with Alfortish earlier that day

---

[76] *Id*. at pp. 8–9 (citing *United States v. Stone*, 960 F.2d 426, 433 n.2 (5th Cir. 1992)).
[77] R. Doc. 878 at p. 9.
[78] *Id*. at p. 10 (*citing* R. Doc. 878-1 at ¶¶ 28, 31; R. Doc. 878-5 at p. 17).
[79] R. Doc. 517 at pp. 20–21.
[80] *See* R. Doc. 789-1 at p. 4 (*citing* R. Doc. 517 at pp. 20–21).

and that Alfortish and Motta wanted to pay him $500,000 to move to the Bahamas.[81] Agent Smith testified that by January 15, 2020, Garrison had been served with a subpoena to testify at a deposition in a civil case, and that Garrison recorded two conversations that he had with Alfortish that day to discuss the subpoena.[82] Those recordings were played at trial.[83] According to Agent Smith, Garrison said that Alfortish and Motta advised him that they were going to get an attorney to represent him for the deposition, and Motta arranged for Garrison to meet the attorney, Bradley Egenberg.[84] Garrison made three recordings of the meeting between himself, Motta and Egenberg, which were played during the trial.[85] In those videos, Motta told Garrison that Egenberg knew about "the construction," which was a reference to the cover-up story for the payments made to Garrison for the staged accidents.[86]

The Motta Defendants have repeatedly argued to this Court that Motta's actions, which include helping Garrison secure another attorney to represent him in the civil matter, demonstrate her intent to ensure that Garrison was an available witness and able to provide deposition testimony.[87] During trial, the following

---

[81] R. Doc. 848-2 at pp. 57–58. *See* Government's Exhibit 11, introduced during the December 5, 2025 hearing on the Government's Motion to Admit Statements Under the Forfeiture by Wrongdoing Exception (R. Doc. 502 at p. 3) ("Government offers and introduces Exhibits 1-31 – FD 302 and FD 1023 of Cornelius Garrison. Court admits into evidence Government's Exhibits 1-31 without objection by any defendant.").

[82] R. Doc. 848-2 at pp. 61–64.

[83] Trial Exhibits 054_003, 054_003A, 054_004, & 054_004A.

[84] R. Doc. 848-2 at pp. 65–66.

[85] Trial Exhibits 054_001, 054_006, & 054_007. *See* Trial Exhibits 054_001A, 054_006A, & 054_007A.

[86] R. Doc. 848-2 at pp. 66–67. *See* Trial Exhibits 054_001 & 054_001A at pp. 1 & 9.

[87] R. Doc. 692 at p. 8 (*citing* R. Doc. 262 at pp. 4 & 7–8).

exchange occurred between counsel for the Motta Defendants and Agent Smith:

> Q: Do you have any evidence that Vanessa Motta was in a conspiracy with Mr. Egenberg to, I don't know what, corruptly represent Mr. Garrison in this - - in all of this?
> A: No.
> Q: In fact, it's true that Ms. Motta had an arm's-length relationship with Mr. Egenberg in connection with Mr. - - her helping Mr. Garrison get representation?
> A: I believe that was what Mr. Egenberg said.
> Q: Would you have any reason to doubt it?
> A: No.
> Q: Do you have any reason to think that Mr. Egenberg, he was going to do something shady, he was going to violate his legal ethics and get Mr. Garrison to lie, did you have any reason to think that?
> A: No.
> Q: Did you think Mr. Egenberg was going to get him to go leave town, take off, get out of here, we don't want you being deposed, do you have any reason to think that?
> A: No.
> Q: So as far as you know, Mr. Egenberg was going to represent Mr. Garrison the way he would represent anybody, which presumably would be the lawful way, correct?
> A: Correct.[88]

Counsel for the Motta Defendants also questioned Agent Smith about an apparent contradiction between his trial testimony and an FBI 1023 report that he authored regarding who offered to pay Garrison to move to the Bahamas in exchange for not providing grand jury testimony.[89] Counsel pointed out that Agent Smith had testified that, "they wanted to pay him to move to the Bahamas with 100k up front, $100,000 up front," and counsel confirmed that "they" meant Alfortish and Motta.[90] Counsel for the Motta Defendants then asked Agent Smith about an FBI 1023 report from his contact with Garrison on January 9, 2020, in which Agent Smith wrote,

---

[88] R. Doc. 848-2 at pp. 239–240.
[89] *See* R. Doc. 848-2 at pp. 247–251.
[90] *Id*. at p. 248.

"Alfortish again offered to compensate Garrison if Garrison took the fall for the staged

accidents. Alfortish offered $500,000 and 100 grand of it up front."[91]  When pressed

by counsel for the Motta Defendants to explain why his report only referenced

Alfortish and not Alfortish and Motta, Agent Smith testified that, "[Garrison] was

talking about a conversation that he had with Alfortish, but it was clear then, like in

many of the other instances, that it was the collective."[92]  Unsatisfied with this

answer, counsel for the Motta Defendants concludes his discussion of the Bahamas

with the following exchange:

> Q:Well, let me ask you this.  Next paragraph and I am quoting.
> "Alfortish and Vanessa Motta," and you do use (Motta) so you do know
> how to use parentheses.  "Alfortish and Vanessa Motta recently went to
> the Bahamas."  True.  So that's true.  And you didn't say Alfortish and
> assumed he meant the - - the "they," right, think that through.  So in
> this first sentence you're saying Alfortish and Vanessa Motta recently
> went to the Bahamas, but you don't just say Alfortish wink wink nod
> nod, we know he means both.  You actually spell it out, correct?
> A: Yes.
> Q: And in the very next sentence, you write, "Upon returning, Alfortish
> offered to move Garrison to the Bahamas because of the heat from the
> investigation into he staged accidents, but Garrison declined."  Correct,
> you wrote that?
> A: Yes.
> Q: So the first sentence you're definitely Alfortish Motta [sic], second
> sentence, you're back to just Alfortish, and you want us to believe that
> you really knew that he was talking about, meant to be both but you
> can't even keep it straight over two sentences?
> A: (No Response.)[93]

Based on these exchanges, the Court finds that the evidence supports that the

Motta Defendants did present a defense at trial to the witness tampering charge.

---

[91] *Id*. at p. 249.
[92] *Id*. at p. 250.
[93] *Id*. at p. 251.

Specifically, the Motta Defendants raised a truth-seeking affirmative defense, with defense counsel arguing that Motta had no involvement in Alfortish's offer to move Garrison outside of the United States and that she helped Garrison retain an attorney to facilitate his deposition testimony in a civil matter.  To the extent the Motta Defendants cite *United States v. Stone* to suggest that cross-examination testimony is not a sufficient evidentiary foundation for an affirmative defense, such reliance is misplaced.  Nothing in the *Stone* decision supports the Motta Defendants' position. The defendants in *Stone* argued that a defendant "is entitled to have the jury instructed on a theory of the defense for which there is any foundation in the evidence."[94]  The Fifth Circuit disagreed, explaining that, "the defendants' contention is not a completely accurate statement of the law; in order for a defendant to be entitled to an instruction, '*any evidence* in support of a defensive theory must be sufficient for a reasonable jury to rule in favor of the defendant on that theory."[95]  In the footnote cited by the Motta Defendants in their Reply brief, the Fifth Circuit noted that neither the defense *nor the Government* had presented any evidence to support the defendants' defensive theory.[96]  Finally, while the Motta Defendants rely on the Fifth Circuit's decision in *United States v. Wolffs*, the Court points out that the Fifth Circuit made clear in that decision that, "[e]ven evidence presented in the prosecution's case may go toward satisfaction of defendant's production burden."[97] Accordingly, the Court finds there was no error in giving the truth-seeking

---

[94] *United States v. Stone*, 960 F.2d 426, 432 (5th Cir. 1992).
[95] *Id.* (quoting *United States v. Stowell*, 953 F.2d 188, 189 (5th Cir. 1992)) (emphasis added).
[96] *Stone*, 960 F.2d at 432, n.2.
[97] *United States v. Wolffs*, 594 F.2d 77, 80 (5th Cir. 1979).

affirmative defense instruction, as there was sufficient evidence to charge the jury on that defense.

The Court further finds the Motta Defendants' reliance upon the Fifth Circuit case *United States v. Wolffs* is misplaced for other reasons, as that case is factually distinguishable from this case.[98]  As the Government correctly points out, the *Wolffs* court held that the district court's jury instruction on the issue of entrapment was "prejudicially erroneous" because the instruction "never mentions the quantum of proof required (beyond a reasonable doubt) and upon whom this burden falls."[99] Unlike in *Wolffs*, the jury instructions given in this case clearly, and correctly, provided that in order to find the Motta Defendants guilty of witness tampering, the jury "must be convinced that the government has proved each of the following beyond a reasonable doubt."[100]  The jury instruction then listed the three elements that the Government must prove beyond a reasonable doubt and defined three phrases included within those elements, all as set forth in Fifth Circuit Pattern Jury Instruction 2.64.[101]  As the Motta Defendants acknowledge in their Motion,[102] Fifth Circuit Pattern Jury Instruction 2.64 provides that:

> When the defendant raises the "truth-seeking" affirmative defense under 18 U.S.C. § 1512(e), add the following: The defendant has the burden of proving, by a preponderance of the evidence, that his [her] conduct consisted solely of lawful conduct and that his [her] sole

---

[98] 594 F.2d 77 (5th Cir. 1979).
[99] *Id*. at 83.
[100] R. Doc. 783 at p. 45.
[101] Fifth Circuit Pattern Jury Instructions (Criminal Cases) (2024).
[102] R. Doc. 789-1 at pp. 4–5.

intention was to encourage, induce, or cause the other person to testify truthfully.[103]

In accordance with that instruction, after setting forth the burden of proof, the elements of the crime that the Government must prove beyond a reasonable doubt, and defining certain phrases, the Court instructed the jury as to the truth-seeking affirmative defense, using the same language set forth above from the Fifth Circuit Pattern Jury Instructions for criminal cases.[104]  As the Motta Defendants correctly point out, the Court's general instructions, which appear earlier in the Court's 60-page Jury Instructions, also specify that the Government "has the burden of proving each defendant guilty beyond a reasonable doubt."[105]  Contrary to the Motta Defendants' position, however, and as set forth above, this was not the *sole* reference to the Government's burden of proof in the jury instructions.  Indeed, the record reflects that the Court instructed the jury venire during voir dire that each defendant was presumed innocent, that only the Government had a burden, and that the Government's burden was proof beyond a reasonable doubt.  The Court instructed the jury similarly when they were sworn in, using the Fifth Circuit Pattern Instructions and particularly instructing on the "Rules for Criminal Cases,"[106]

---

[103] Fifth Circuit Pattern Jury Instructions (Criminal Cases) (2024).

[104] R. Doc. 783 at p. 46.

[105] *Id*. at p. 3.

[106] Fifth Circuit Pattern Jury Instructions (Criminal Cases) (2024), § 1.01 ("As you know, this is a criminal case.  There are three basic rules about a criminal case that you must keep in mind. *First*: the defendant is presumed innocent until proven guilty.  The indictment brought by the government against the defendant is only an accusation, nothing more.  It is not proof of guilt or anything else. The defendant therefore starts out with a clean slate. *Second*: the burden of proof is on the government until the very end of the case.  The defendant has no burden to prove his or her innocence, or to present any evidence, or to testify.  Since the defendant has the right to remain silent, the law prohibits you from arriving at your verdict by considering that the defendant may not have testified. *Third*: the government must prove the defendant's guilt beyond a reasonable doubt.  I will give you further

through the Preliminary Instructions.[107]  The Court then instructed the jury in the Final Instructions regarding the presumption of innocence and the burden of proof.[108] Finally, following the jury instructions and before discharging the jury to begin deliberations, the Court inquired with all counsel if anything had been missed or if there were any objections.  There were no objections to the jury instructions raised at that time—nor any objections raised when the Court instructed the jury.

To the extent the Motta Defendants claim that the affirmative defense instruction was not "invited error" because their counsel raised objections to the instruction several times,[109] neither the March 19, 2026 transcript submitted by the Motta Defendants[110] nor the audio recording of the trial support their assertion.[111] Notedly, after the close of the evidence but before the Court began instructing the jury, and out of the presence of the jury, the Court inquired whether there were any objections to the final jury instructions that had previously been provided to all counsel. The only objection was to the Court giving an instruction on deliberate ignorance, which the Court ultimately determined was not appropriate to give. No

---

instructions on this point later but bear in mind that in this respect a criminal case is different from a civil case.") (emphasis in original).

[107] *See* R. Doc. 755 at p. 2 ("Jurors sworn on Oath to Truly Try Case.  Jurors instructed by the Court without objection.").

[108] R. Doc. 781 at p. 2 ("Jury charged and instructed by the Court.").  *See* R. Doc. 783.

[109] R. Doc. 878 at p. 10 (citing *United States v. James*, 177 F.4th 642, 652 (5th Cir. 2026)).

[110] *See* R. Doc. 878-5 at p. 17 ("(WHEREUPON, THE FOLLOWING SIDE BAR CONFERENCE WAS HELD:) THE COURT: Truth seeking defense, no.
MS. DAVIS: No.  What she read was about - -
THE COURT: She's following the right one.
MS. DAVIS: It was the - -
MR. TOOMEY: Okay.  My bad.
THE COURT: Okay.  Jurors are worried, they need parking.").

[111] The Court respectfully disagrees with any suggestion that the Motta Defendants objected to the giving of the instruction.

other objections were raised to the instructions.[112] The jury was then brought in, closing arguments were made, and the Court then gave the final jury instructions. After the reading of the instructions, the Court again inquired of counsel anything that was missed. Counsel voiced no objection. Moreover, the Fifth Circuit has held that, "[a]s we have made clear, a defendant who simply fails to object–or even answers, 'No, Your Honor' when asked whether he objects to the court's proposed charge–has not necessarily invited error.  But a defendant who asks the district court to give the very instruction he later challenges stands differently."[113]  As in the *James* case, the Court finds that the Motta Defendants fall "on the invited-error side of that line," as they did not merely fail to object to the proposed affirmative defense instruction, they proposed the instruction that they now attempt to attack.[114]  The record speaks for itself.

For these reasons, the Court finds that the Motta Defendants are not entitled to a new trial based upon the Court's legally correct jury instruction regarding the "truth-seeking" affirmative defense to the witness tampering charge.

---

[112] *See* Trial Transcript from March 19, 2026. (The Court: "At the request of the court, counsel provided proposed joint jury instructions a couple of weeks ago. We have met, I met with counsel and went over the court's proposed jury instructions and, for the most part, relied on the Fifth Circuit Pattern Jury Instructions and discussed with counsel the reasons for my jury instructions. Yesterday evening I sent the jury instructions to counsel. Are there any objections by the government to any jury instructions?" Government: "Only to the extent your honor that you want to hear argument about deliberate ignorance. Other than that, no, there is not." The Motta Defendants replied that "we object to inclusion of a deliberate ignorance instruction." The Motta Defendants raised no other objection. The Court did not give the deliberate ignorance instruction.).

[113] *James*, 177 F.4th at 652 (citing *United States v. Lerma*, 877 F.3d 628, 632–33 (5th Cir. 2017)) (internal citation omitted).

[114] *James*, 177 F.4th at 652.

### C. Jason Giles' closing argument.

In their third assignment of error, the Motta Defendants assert that they are entitled to a new trial based upon Jason Giles' prejudicial closing argument in which his counsel disparaged Motta and highlighted the evidence against her in an attempt to exonerate Giles.[115] The Motta Defendants point to Giles' counsel's statements that, "things that happened at the Motta firm did not happen at The King Firm," and that "Ms. Motta is a nice lady" but that counsel was "throwing Ms. Motta under the bus" and would "back the bus up and roll over her again."[116] Asserting that these remarks "were a central feature of Mr. Giles's defense strategy," the Motta Defendants assert that a new trial is warranted under *United States v. Romanello* because the antagonism between Motta and Giles rendered trial conditions so prejudicial as to deny the Motta Defendants a fair trial.[117] The Motta Defendants contend that Giles' closing argument aided the prosecution by highlighting and amplifying the evidence against Motta, and urging the jury to view her, and not Giles, as the culpable actor, thereby bolstering the Government's case against Motta.[118]   While the Motta Defendants acknowledge that the Court instructed the jury that counsel's arguments are not evidence, the Motta Defendants argue the instruction "cannot cure emphatic attacks that reshape the jury's perception of culpability."[119] As such, the Motta Defendants assert that Giles' closing argument poisoned the jury against Motta,

---

[115] R. Doc. 789-1 at p. 18.  The Motta defendants did not cite to any statements made in closing arguments that "highlighted evidence against her" in an attempt to exonerate Giles.

[116] *Id.*

[117] *Id.* (quoting *Romanello*, 726 F.2d 173, 182 (5th Cir. 1984)).

[118] R. Doc. 789-1 at p. 19.

[119] *Id.* (*citing* R. Doc. 783 at p. 4; R. Doc. 357).

undermined the fundamental fairness of her trial, and requires a new trial in the interest of justice.[120]

The Government asserts that the Motta Defendants' arguments typically arise in the context of severance and claims of antagonistic defenses, noting that the *Romanello* case is a severance case.[121] The Government contends that the Fifth Circuit "has consistently affirmed district courts' decisions to remedy potential prejudice with instructions to consider the evidence as to each defendant separately and individually, and not to consider comments made by counsel as substantive evidence [as sufficient] to cure any prejudice caused when co-defendants accuse each other of the crime."[122] The Government claims that the Fifth Circuit has even suggested that *Romanello* may not be good law considering the emphasis placed on jury instructions by the Supreme Court since the case was decided.[123] Nonetheless, the Government argues that the Motta Defendants have not demonstrated that any comments by Giles' counsel during closing argument were prejudicial and inflammatory to the extent that the jury could not follow its instructions, as they are presumed to do.[124]

The Court finds that the Motta Defendants' reliance upon the *Romanello* case is misplaced. While the Motta Defendants acknowledge that the *Romanello* case addressed severance, they fail to mention that the *Romanello* court was "concerned

---

[120] R. Doc. 789-1 at p. 19.
[121] R. Doc. 848 at p. 44 (*citing* R. Doc. 789-1 at p. 20 (citing *Romanello*, 726 F.2d 173, 182 (5th Cir. 1984))).
[122] R. Doc. 848 at p. 44 (quoting *United States v. Warren*, 728 Fed.Appx. 249, 256 (5th Cir. 2018)) (citation modified).
[123] R. Doc. 848 at pp. 44–45 (citing *Warren*, 728 Fed.Appx. at 256 n.7).
[124] R. Doc. 848 at p. 45 (citing *United States v. Reed*, 908 F.3d 102, 115 n.42 (5th Cir. 2018)).

with the specific prejudice that results when defendants become weapons against each other, clawing into each other with antagonistic defenses.  Like wretches in Dante's hell, they may become entangled and ultimately fuse together in the eyes of the jury, so that neither defense is believed and all defendants are convicted."[125]  Such is not the case here.  The Motta Defendants make no argument that their defense at trial ever fused with Giles' defense or that these defendants presented antagonistic defenses; nor does the record support that.  Instead, the Motta Defendants complain that several handpicked statements in Giles' closing argument to the jury disparaged Motta in an attempt to benefit Giles.

As the Government correctly points out, the issue of antagonistic defenses primarily arises in the context of severance motions.  This Court is no stranger to the issue of severance.[126]  According to the Fifth Circuit, "the defense of a defendant reaches a level of antagonism (with respect to the defense of a co-defendant) that compels severance of that defendant, if the jury, in order to believe the core of testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant."[127]  "In such a situation, the co-defendants do indeed become the government's best witnesses against each other.  Where two defendants present defenses that are antagonistic at their core, a substantial possibility exists that the jury will unjustifiably infer that this conflict

---

[125] *United States v. Romanello*, 726 F.2d 173, 174 (5th Cir. 1984).

[126] *See* R. Docs. 216, 271, 287, 288, 311, 357, 539, 600, 626, 661, 702, 726, & 742.  The Court further notes that counsel for The King Firm orally moved for severance several times during the trial in this matter.

[127] *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir. 1981).

alone demonstrates that both are guilty."[128]  Here, the Motta Defendants have failed to show that Giles and the Motta Defendants presented antagonistic defenses at trial or that the jury, in order to believe the testimony offered in support of Giles necessarily had to disbelieve the testimony offered on behalf of the Motta Defendants, nor does the record support such an argument.  To be clear, Giles' closing argument was over 45 minutes long.  Within that time, counsel made two passing references to Motta.[129]  Giles' counsel merely drew a distinction between her client and Motta, as well as the evidence put forth at trial regarding Giles and Motta.

Since *Zafiro*, the Fifth Circuit "has consistently affirmed district courts' decisions to remedy any potential prejudice with instructions to consider the evidence as to each defendant separately and individually, and not to consider comments made by counsel as substantive evidence as sufficient to cure any prejudice caused when co-defendants accuse each other of the crime."[130]  Here, the Court repeatedly instructed the jury that the Government must prove the guilt of each defendant beyond a reasonable doubt,[131] and that, "[e]ach count, and the evidence pertaining to it, should be considered separately.  The case of each defendant should be considered

---

[128] *Id*. (quoting *United States v. Eastwood*, 489 F.2d 818, 822 n.5 (5th Cir. 1973)) (citation modified).

[129] *See* Trial Transcript from March 19, 2026 ("Now, I think Ms. Motta's a nice lady, but unfortunately I'mma have to throw her under the bus today, and I'mma back up and I'mma do it again.  Because at the end of the day, you heard about stuff that happened at the Motta Firm and you heard about things that happened at The King Firm.  But the things that you heard about at the Motta firm did not happen at The King Firm.  So remember we talked about the people who were involved in the accidents?  All those people pled guilty. . . . And so I am going to ask you to find my client not guilty of the conspiracy, because the stuff that was happening at the Motta firm has nothing to do with us, and you didn't hear any of the things that happened at the Motta firm happen over at The King Firm.  Remember I told you it was going to be like night and day, it was going to be two different firms.  And that's what you heard.").

[130] *United States v. Warren*, 728 Fed.Appx. 249, 256 (5th Cir. 2018) (quoting *United States v. Richards*, 204 F.3d 177, 195 (5th Cir. 2000)) (citation modified).

[131] R. Doc. 783 at pp. 3, 6, & 17.

separately and individually. . . . You must give separate consideration to the evidence as to each defendant."[132]  The Motta Defendants acknowledge in their Motion that the Court gave this instruction.[133]  The Court also instructed during the Preliminary Jury Instructions at the start of trial, several times during the trial, and in the Final Jury Instructions that, "[t]he questions, statements, objections, and arguments made by the lawyers are not evidence."[134]  According to the Fifth Circuit, such instructions "have been held to be sufficient to cure the possibility of prejudice because the court presumes that the jury followed the court's instructions."[135]  The Court points out that it also instructed the jury many times during the trial to consider certain evidence only against certain defendants and to consider other evidence only for limited purposes.  The Motta Defendants offer only a conclusory assertion that despite these instructions, the jury could not separately consider the evidence as to Motta and Giles.  The Court finds that the Motta Defendants have failed to demonstrate that any passing comments by Giles' counsel during closing argument were prejudicial or inflammatory to such an extent that the jury could not follow its instructions.  As such, the Court concludes that the Motta Defendants are not entitled to a new trial based upon remarks made by Giles' counsel during closing argument.

---

[132] *Id.* at p. 16.
[133] *See* R. Doc. 789-1 at p. 21.
[134] R. Doc. 783 at p. 4.
[135] *United States v. Posada-Rios*, 158 F.3d 832, 864 (5th Cir. 1998) (citing *United States v. Faulkner*, 17 F.3d 745, 759 (5th Cir. 1994)).

**D. The time allotted for closing argument**

The Motta Defendants next assert that they suffered substantial and unfair prejudice as a result of the Court giving the Government an additional eight minutes for its rebuttal closing argument. The Motta Defendants explain that the Court allotted 60 minutes for the Government's closing argument, 60 minutes for the Motta Defendants' closing argument, and 60 minutes for Giles and The King Firm's closing arguments, which they presumably divided in half.[136] The Motta Defendants claim that the Government's initial closing argument lasted approximately 53 minutes, leaving approximately 7 minutes remaining for rebuttal, and that the Motta Defendants' closing argument lasted only 43 minutes.[137] The Motta Defendants assert that because Giles' closing argument exceeded 30 minutes, the Court permitted the Government to extent is rebuttal time to 15 minutes total and the rebuttal lasted approximately 14 minutes.[138] The Motta Defendants contend that they were penalized for the actions of another party over whom they had no control, as the additional time granted to the Government "afforded it a materially enhanced opportunity to shape the jury's deliberations at the most critical stage of the trial. The resulting prejudice was concrete and measurable."[139] The Motta Defendants point out that the Government addressed Motta only briefly during the first portion of its rebuttal, but at roughly ten minutes into the rebuttal – time the Government would not have otherwise had – the Government shifted its focus and argued

---

[136] R. Doc. 789-1 at p. 6.
[137] *Id.*
[138] *Id.* at p. 7.
[139] *Id.* at pp. 19–20.

extensively against Motta, emphasizing incriminating evidence.[140]    The Motta Defendants assert that Motta became the primary target of the Government's additional rebuttal time, which created a structural imbalance in favor of the Government that was manifestly unfair and warrants a new trial.[141]

The Government asserts that the Court was well within its discretion to manage closing arguments, as Fed. R. Crim. P. 29.1 provides only that closing arguments should proceed in the following order: "the government argues; the defense argues; and the government rebuts."[142]   The Government claims that the Supreme Court and the Fifth Circuit have held that district courts are given broad discretion in controlling the duration and scope of closing arguments.[143]    The Government points out that the Motta Defendants do not cite any jurisprudence supporting their position that the Court abused its discretion by granting the Government additional rebuttal time, and that Rule 29.1 does not place any restriction on the length of closing arguments.[144]   The Government claims that the Fifth Circuit routinely defers to the district court's management of closing arguments.[145]   The Government argues that the Court did not exceed its discretion by granting the Government an additional eight minutes for rebuttal, and that Motta

---

[140] *Id*. at p. 20.

[141] *Id*.   Counsel's Affidavit states, "Beginning roughly ten minutes into rebuttal, the government focused extensively on Ms. Motta."   *See* R. Doc. 878-1 at p. 6, ¶ 43.   Even if the Court were to accept this statement as accurate, the Trial Transcript from March 19, 2026 confirms that the Government's entire rebuttal argument was 14 minutes.   This would mean that only four minutes of the Government's rebuttal was focused on Motta.   The Trial Transcript fails to support this argument.

[142] R. Doc. 848 at p. 45 (*quoting* Fed. R. Crim. P. 29.1) (citation modified).

[143] R. Doc. 848 at pp. 45–46 (quoting *Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *United States v. Gray*, 105 F.3d 956, 963 (5th Cir. 1997)) (citation modified).

[144] R. Doc. 848 at p. 46.

[145] *Id*. (citing authority).

did not suffer undue prejudice because she was not the sole focus of the Government's rebuttal.[146]  The Government contends that the Court would have been well within its discretion in giving the Government the additional rebuttal time even if Giles had not exceeded his time limit, since the Government was responding to 1.5 hours of closing arguments from four different attorneys.[147]

Although not addressed by the parties, the jurisprudence cited by the Government indicates that criminal defendants often argue that the district court erred in *limiting* their closing argument time.[148]  In contrast, the Motta Defendants argue that the Court erred in giving the Government an additional eight minutes for rebuttal when a co-defendant's counsel exceeded her time for closing argument.  The Fifth Circuit has held that, "in multiple-count, multiple-defendant criminal cases tried *en masse,* especially those involving complex factual scenarios, trial courts should be mindful that each defendant should be given adequate time in closing argument to mete out the evidence and issues particular to that defendant and individualize his/her defense to the jury."[149]  The Motta Defendants have not argued that they were not given adequate time in closing argument.

---

[146] *Id.* at p. 47.

[147] *Id.*

[148] *See United States v. Gray*, 105 F.3d 956, 962–63 (5th Cir. 1997) (finding no plain error in the district court limiting each defendant to three minutes for closing argument where "the subject matter was not terribly complex" and "the only real issue facing the jury was whether the defendants had the requisite intent to defraud"); *United States v. Okoronkwo*, 46 F.3d 426,436–37 (5th Cir. 1995) (finding the district court did not abuse its discretion in giving the defendant fourteen minutes to present a closing argument, where defendant was only charged with one conspiracy count); *United States v. Moye*, 951 F.2d 59, 63 (5th Cir. 1992) (finding the district court did not abuse its discretion in limiting the defendant's closing argument to ten minutes in a "single-issue case that was tried in two days").

[149] *United States v. Okoronkwo,* 46 F.3d 426, 437 (5th Cir. 1995).

Indeed, the record reflects that the Court advised all counsel, *before* the Motta Defendants' closing arguments, "Look, I haven't cut anyone off, so I just want to be clear on yours either.  If somebody asks for additional time, I'm usually open to it."[150] Even after the Court's invitation to ask for additional time, the Motta Defendants declined to do so.  The Court nonetheless finds that the Motta Defendants were given adequate time for closing argument, and that their counsel advocated vigorously and passionately on their behalf.[151]  Moreover, the Motta Defendants did not raise a contemporaneous objection to the Court granting the Government an additional eight minutes for its rebuttal when the issue was raised during a sidebar discussion at trial.  The Motta Defendants have not argued, nor does the Court find, that the time allowed for closing arguments hampered the jury's ability to understand the information and issues a trial.[152]  Accordingly, the Court finds that the Motta Defendants were not substantially or unfairly prejudiced by the Court granting the Government an additional few minutes for its rebuttal.  The Court therefore denies the Motion for New Trial to the extent it is premised upon the minimal additional time granted by the Court for the Government's rebuttal closing argument.

### E. The submission of Count 4 to the jury without resolution of the Fed. R. Crim. P. 29 motion.

Finally, the Motta Defendants assert that at the close of the Government's case, they moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal on all counts, and that the Court denied the motion as to Counts 1, 5, 6, and

---

[150] *See* Trial Transcript from March 19, 2026.
[151] *Gray*, 105 F.3d at 963.
[152] *Id.* (quoting *Sims v. ANR Freight System, Inc.*, 77 F.3d 846, 849 (5th Cir. 1996)).

7, but deferred ruling on the motion as to Count 4.[153] The Motta Defendants claim that by submitting Count 4 to the jury despite the unresolved Rule 29 motion, the jury deliberated on several counts "including one the legal sufficiency of which remained unresolved."[154] The Motta Defendants contend that Motta was prejudiced because she faced "a broader array of criminal liability than the law may have permitted, reinforcing a perception of pervasive misconduct."[155] Although the Motta Defendants acknowledge that the Court instructed the jury to consider each count and the evidence pertaining to each count separately, they assert that limiting instructions are not a cure-all, especially "in a lengthy trial involving inflammatory allegations."[156] The Motta Defendants claim that the extra count, which lacked a sufficiency determination, heightened the risk that the jury would evaluate the case cumulatively rather than on a count-by-count basis, and the verdict confirms that risk.[157] The Motta Defendants assert that the submission of Count 4 to the jury without resolving the Rule 29 motion created a substantial risk that the jury's verdict was driven, at least in part, by the cumulative effect of the charges, which undermines the confidence in the verdict and warrants a new trial in the interest of justice.[158]

---

[153] R. Doc. 789-1 at p. 7. The Court has since issued an Order on the Rule 29 motion finding that the evidence at the close of the Government's case overwhelmingly supported the jury's verdict. R. Doc. 918.

[154] R. Doc. 789-1 at p. 21.

[155] *Id.*

[156] *Id.* (*citing* R. Doc. 783 at p. 16; R. Doc. 357 at p. 65).

[157] R. Doc. 789-1 at p. 21.

[158] *Id.*

The Government asserts that Rule 29 explicitly permitted the Court to reserve its decision on Motta's motion until after the jury rendered a verdict, and that it is unclear how Motta was prejudiced by the Court's adherence to the rule.[159]   The Government claims that the Motta Defendants do not cite, and the Government has not located, any case where a court was found to have prejudiced a defendant by reserving its ruling on a Rule 29 motion and allowing the jury to deliberate on the challenged count.[160]   Nonetheless, the Government asserts that any error was harmless considering the overwhelming evidence that Motta was a knowing participant in the staged collision scheme, including through her participation in the conduct related to the December 2021 collision described in Count 4.[161]   As such, the Government argues the Motion for New Trial should be denied.[162]

"A motion for judgment of acquittal challenges the sufficiency of the evidence to convict."[163]   Federal Rule of Criminal Procedure 29(a) provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."[164]   Rule 29(b) further provides that, "[t]he court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict

---

[159] R. Doc. 848 at p. 52.
[160] *Id.* (*quoting* R. Doc. 789-1 at p. 21).
[161] R. Doc. 848 at p. 52.
[162] *Id.*
[163] *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005) (quoting *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998)) (citation modified).
[164] Fed. R. Crim. P. 29(a).

of guilty or is discharged without having returned a verdict."[165]  As the Government correctly points out, Rule 29(b) specifically authorizes courts to defer ruling on a motion for acquittal until after the jury returns a guilty verdict.[166]  The Motta Defendants fail to cite, and the Court has not located, any jurisprudence to support their assertion that a criminal defendant is prejudiced by a court's decision to reserve its ruling on a motion for acquittal until after the jury renders a verdict.

The Court is aware of at least one other case from this Circuit in which the district court denied a criminal defendant's similar motion for new trial that was based in part on the court's decision to delay ruling on a motion for acquittal until after the jury rendered its verdict on the claims at issue.[167]  Moreover, the Fifth Circuit has held that, "[t]he failure to grant the motion [for acquittal] by deferring a ruling does not necessarily require a reversal."[168]  Relying upon one of its earlier decisions, the Fifth Circuit explained that the "deferred-ruling doctrine" means that a defendant "is entitled to a judgment of acquittal if the evidence at the close of the Government's case is insufficient, and that the trial judge may not, be (Sic) deferring decision on the defendant's motion, allow sufficient evidence to be supplied by the defense or by the prosecution on rebuttal."[169]  Thus, "[i]f the evidence is sufficient

---

[165] Fed. R. Crim. P. 29(b).

[166] *Id.*

[167] *United States v. Udoh*, Crim. A. No. 04-60060-001, 2006 WL 2078195 (W.D. La. July 24, 2006) (Doherty, J.).  The Court notes that the defendant in *Udoh* did not raise this issue on appeal.  *See United States v. Udoh*, 270 Fed.Appx. 361 (5th Cir. 2008), *cert. denied Udoh v. United States,* 555 U.S. 910, 129 S.Ct. 253, 172 L.Ed.2d 191 (2008).

[168] *United States v. Cook*, 586 F.2d 572, 576 (5th Cir. 1978) (citing *Montoya v. United States*, 402 F.2d 847 (5th Cir. 1968)).

[169] *Cook,* 586 F.2d at 576 (quoting *United States v. Guinn*, 464 F.2d 29, 33 (5th Cir. 1972)) (citation modified).

when the prosecution rests, as it is in the instant case, any error in failing to rule promptly on the motion is harmless."[170]  In light of the clear language of Fed. R. Crim. P. 29 and the foregoing authority, the Court finds that the Motta Defendants have failed to show that the Court's decision to defer ruling on their motion for acquittal of Count 4 in the Third Superseding Indictment requires a new trial.

Because "[t]he grant of a new trial is necessarily an extreme measure,"[171] and mindful of the fact that motions for new trial are disfavored in this Circuit and should only be granted "with great caution,"[172] the Court concludes that the Motta Defendants have failed to carry their burden of proving that a new trial is warranted based upon the five errors raised in their Motion.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Vanessa Motta and Motta Law, LLC's Motion for New Trial[173] is **DENIED.**

New Orleans, Louisiana, July 20, 2026.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[170] *Guinn*, 464 F.2d at 33.
[171] *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997).
[172]*Id.* (citing *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977)).
[173] R. Doc. 789.